Brandon S. Reif, Esq. (State Bar No. 214706)
E-Mail: BReif@ReifLawGroup.com
**REIF LAW GROUP, P.C.**
1925 Century Park East - Suite 1700
Los Angeles, California 90067
Telephone: (310) 494-6500

F. Jason Seibert, Esq. (*Pro Hac Vice application forthcoming*)
E-Mail: Jason@seibert-law.com
**SEIBERT LAW**
6007 Greenway Manor Lane
Spring, Texas 77373
Telephone: (971) 235-5764

*Attorneys for Defendant David C. Silver*

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NANO FOUNDATION, LTD., a New York non-profit corporation; and COLIN LeMAHIEU, an individual; <br><br> Plaintiffs, <br><br> v. <br><br> DAVID C. SILVER, an individual; <br><br> Defendant. | Case No. 2:19-cv-04237-SVW-PJW <br><br> **MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DAVID C. SILVER'S SPECIAL MOTION TO STRIKE COMPLAINT PURSUANT TO CAL. CODE CIV. PROC. § 425.16** <br><br> Date:    August 5, 2019 <br> Time:    1:30 p.m. <br> Judge:  Hon. Stephen V. Wilson <br> Crtrm  10A - 10th Floor |

## TABLE OF CONTENTS

**Page**

I.   FACTUAL AND PROCEDURAL BACKGROUND ........................................ 1

   A.  A Brief Primer on Alternative Currencies, including Nano ................. 1

   B.  The First NANO Lawsuit ........................................................ 1

   C.  The May 2018 Blockchain Law Summit ...................................... 2

   D.  Settlement of the First NANO Lawsuit and Release of All Claims ........ 2

   E.  The Second NANO Lawsuit .................................................... 3

   F.  The Instant SLAPP Lawsuit against Attorney Silver ....................... 6

II.  ARGUMENT ......................................................................... 6

   A.  Plaintiffs' Lawsuit Is Nothing More Than A Classic "SLAPP" Suit ..... 6

   B.  Prong One of the Anti-SLAPP Statute is Satisfied: The Challenged Claims Arise from Activity Protected by the Anti-SLAPP Statute ...... 9

   C.  Under Prong Two of the Anti-SLAPP Suit Statute, Plaintiffs Cannot Satisfy Their Burden of Proving the "Probability of Prevailing" on Any Cause of Action Alleged in the Complaint .............................. 10

      1.  Plaintiffs' Defamation Claims (Counts I and II) Are Meritless ......... 11

      2.  Plaintiffs' Trade Libel Claim (Count III) Is Meritless ................. 14

      3.  Plaintiffs' "Business Interference" Claim (Count IV) Is Meritless ........... 14

   D.  Section 425.16(c) Entitles a Prevailing Defendant to an Award of Attorneys' Fees ................................................................ 15

III.  CONCLUSION ..................................................................... 15

i

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DAVID C. SILVER'S
SPECIAL MOTION TO STRIKE COMPLAINT
PURSUANT TO CAL. CODE CIV. PROC. § 425.16

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alpha & Omega Dev. Co. LP v. Whillock Contracting, Inc.*
  200 Cal.App.4th 656 (2011) ........................................................... 10

*Ampex Corp. v. Cargle*
  128 Cal.App.4th 1569 (2005) ................................................. 10, 12, 13

*Baral v. Schnitt*
  1 Cal.5th 376, 205 Cal.Rptr.3d 475, 376 P.3d 604 (2016) ............ 9

*Briggs v. Eden Council for Hope & Opportunity*
  19 Cal.4th 1106 (1999) ........................................................... 7, 9, 12

*Church of Scientology v. Wollersheim*
  42 Cal.App.4th 628 (1996) ...................................................... 7, 11, 15

*ComputerXpress, Inc. v. Jackson*
  93 Cal.App.4th 28 993 (2001) ..................................................... 10, 11

*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*
  47 Cal.App.4th 777 (1996) .................................................................. 7

*Du Charme v. Int'l Brotherhood of Electrical Workers*
  110 Cal.App.4th 107 (2003) ................................................................. 8

*Equilon Enterprises LLC v. Consumer Cause, Inc.*
  29 Cal.4th 53 (2002) ....................................................................... 7, 8

*Gilbert v. Sykes*
  147 Cal.App.4th 13 (2007) ................................................................ 10

*Healthsmart Pacific, Inc. v. Kabateck*
  7 Cal.App.5th 416 (2016) .................................................................. 13

*Isuzu Motors Ltd. v. Consumers Union of United States, Inc.*
  12 F.Supp.2d 1035 (C.D. Cal. 1998) .............................................. 14

*Jarrow Formulas, Inc. v. LaMarche*
  31 Cal.4th 728, 3 Cal.Rptr.3d 636, 74 P.3d 737 (2003) ............ 7, 8, 9

*Kibler v. No. Inyo County Local Hosp. Dist.*
  39 Cal.4th 192 (2006) ...................................................................... 14

*Kyle v. Carmon*
  71 Cal.App.4th 901 (1999) ................................................................ 15

ii

*Lafayette Morehouse, Inc. v. Chronicle Publishing Co.*
  37 Cal.App.4th 855 (1995) ................................................................. 12, 13

*Liu v. Moore*
  69 Cal.App.4th 745 (1999) ........................................................................ 15

*Ludwig v. Superior Court*
  37 Cal.App.4th 8 (1995) ........................................................................... 12

*Nygard, Inc. v. Uusi-Kerttula*
  159 Cal.App.4th 1027, 72 Cal.Rptr.3d 210 (2008) ................................ 8, 10

*Optinrealbig.com, LLC v. Ironport Sys., Inc.*
  323 F.Supp.2d 1037 (N.D. Cal. 2004) ...................................................... 14

*Pacific Gas & Electric Co. v. Bear Stearns & Co.*
  50 Cal.3d 1118 (1990) .............................................................................. 14

*Pettit v. Levy*
  28 Cal.App.3d 484 (1972) ................................................................... 11, 12

*Rosenthal v. Irell & Manella*
  135 Cal.App.3d 121 (1982) ....................................................................... 11

*Rubin v. Green*
  4 Cal.4th 1187 (1993) ..................................................................... 11, 12, 14

*Rusheen v. Cohen*
  37 Cal.4th 1048 (2006) .......................................................................... 9, 11

*Seelig v. Infinity Broadcasting Corp.*
  97 Cal.App.4th 798 (2002) ....................................................................... 13

*Simmons v. Allstate Ins. Co.*
  92 Cal.App.4th 1068 (2001) ..................................................................... 11

*Taus v. Loftus*
  40 Cal.4th 683, 54 Cal.Rptr.3d 775, 151 P.3d 1185 (2007) ...................... 8

*Thayer v. Kabateck, Brown & Kellner LLP*
  207 Cal.App.4th 141 (2012) ....................................................................... 9

*Tuchscher Develop. Enterps., Inc. v. San Diego Unified Port Dist.*
  106 Cal.App.4th 1219 (2003) .................................................................... 15

iii

Case No. 2:19-cv-04237-SVW-PJW

**Statutes**

15 U.S.C. § 77l(a)(1) ............................................................................................ 2

15 U.S.C. § 77o(a) ................................................................................................ 2

Cal. Code Civ. Proc. § 425.16 ....................................................................... *passim*


**Rules**

Fed.R.Civ.P. 11 ................................................................................................... 6


**Articles**

E. Pritzker & M. Goldowitz, *Guarding Against the Chill: A Survival Guide for SLAPP Victims*, First Amendment Project/California Anti-SLAPP Project (1994) ................................................................. 7

Morgan Van Buren, *Defamation Suit Defeated With 'Slam Dunk' Anti-SLAPP Defense*, Tyson & Mendes blog (May 6, 2015), https://www.tysonmendes.com/blog-slam-dunk/ .................................. 9


**Other**

*Brola v. Nano, et al.* ("First NANO Lawsuit")
     U.S. District Court - E.D.N.Y. - Case No: 1:18-cv-02049-NG-RML ................................ *passim*

*Fabian v. Nano, et al.* ("Second NANO Lawsuit")
     U.S. District Court - N.D. Cal. - Case No.: 4-19-cv-00054-YRG ....................................... *passim*

*Healthsmart Pacific, Inc. v. Kabateck*
     Superior Court - State of California - County of Los Angeles - Case No. BC566549 .................. 9

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DAVID C. SILVER'S
SPECIAL MOTION TO STRIKE COMPLAINT
PURSUANT TO CAL. CODE CIV. PROC. § 425.16

Case No. 2:19-cv-04237-SVW-PJW

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

A.  **A Brief Primer on Alternative Currencies, including Nano**

According to *Bitcoin Magazine*, any type of cryptocurrency other than bitcoin is known as an "altcoin."  Nano (f/k/a RaiBlocks) [XRB] is one such cryptocurrency alternative to bitcoin.  Altcoins can differ from bitcoin in a variety of ways.  Nano's creators, for instance, claim they developed their coin to be different from other cryptocurrencies (including bitcoin) to solve two problems identified in bitcoin transactions: (1) lengthy transaction times, and (2) unnecessary costs.  By addressing, and purporting to solve, those problems, the principals behind Nano strive to make their coin the global digital currency.

Regardless of the nature in which Nano's developers would like to perceive their coin and its popularity, the U.S. Securities and Exchange Commission (SEC) has stated that blockchain and distributed ledger technology are subject to governmental oversight.  Any cryptocurrency technologies that have purported to create financial instruments -- sometimes in the form of tokens or coins that can provide investment opportunities like those offered through more traditional forms of securities -- are subject to government investigation, oversight, and regulation.  As financial technologies, methods of capital formation, and market structures continue to evolve, market participants like the team behind Nano engage in a variety of activities that have exposed them to civil investigations and lawsuits.

B.  **The First NANO Lawsuit**

In a class action lawsuit commenced in April 2018 and concluded in October 2018 -- the law firms Silver Miller -- of which Defendant DAVID C. SILVER (hereinafter "Defendant" or "Attorney Silver") is a Founding Partner -- and The Braunstein Law Firm, PLLC represented the plaintiff and putative plaintiff class against NANO f/k/a RAIBLOCKS f/k/a HIEUSYS, LLC, a Texas company ("NANO") and the following key members of NANO's core team of developers and executives: COLIN LEMAHIEU, an individual; MICA BUSCH, an individual; ZACH SHAPIRO, an individual; and TROY RETZER, an individual (collectively, "the NANO Core Team").  The action (the "First NANO Lawsuit")[1] was brought under the Private Securities Litigation Reform Act of 1995, as amended

---

[1] *Brola v. Nano, et al.*, U.S. District Court - E.D.N.Y. - Case No: 1:18-cv-02049-NG-RML.

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DAVID C. SILVER'S
SPECIAL MOTION TO STRIKE COMPLAINT
PURSUANT TO CAL. CODE CIV. PROC. § 425.16

(the "PSLRA"), and alleged violations of Sections 12(a)(1) and 15(a) [15 U.S.C. §§ 77l(a)(1), 77o(a)] of the Securities Act of 1933 (the "Securities Act") stemming from the alleged sale of unregistered securities in the form of Nano (f/k/a RaiBlocks) [XRB], which was developed and promoted by the NANO Core Team but never registered with, or exempted from registration by, any regulatory authority.[2]

On April 9, 2018, a PSLRA-required press release was issued to notify members of the putative class of the First NANO Lawsuit, inform them of the allegations, and to advise them of their opportunity to serve as the lead plaintiff in the lawsuit. As alleged in the lawsuit, the harm flowing to certain XRB investors from the NANO Core Team's acts and omissions from January 1, 2015 to March 31, 2018 arose from, *inter alia*:

➤ The NANO Core Team's failure to register XRB (or secure exemption from registration) with any securities regulatory authority[3];

➤ The NANO Core Team's work in conceiving, developing, promoting, and selling XRB to the public, while withholding for themselves millions if not tens of millions of XRB, most of which are owned by LᴇMAHIEU[4];

➤ The NANO Core Team publicly promoting BitGrail as a safe and reliable place for XRB holders to stake and exchange their XRB, and XRB holders relying on that endorsement in choosing the exchange[5];

➤ BitGrail announcing in February 2018 that it had "lost" $170 Million worth of XRB from its exchange[6]; and

➤ The fact that the most direct solution to the XRB investors' problems resides squarely within the NANO Core Team's hands, yet the NANO Core Team refused to rewrite the XRB code and simply restore ownership to the investors. In crypto terms, the NANO Core Team could have

---

[2] *See*, June 12, 2019 Declaration of David C. Silver ("Silver Decl."), filed in conjunction herewith, at ¶ 3 and Exhibit "A" thereto.

[3] First NANO Lawsuit - Class Action Complaint [DE 1] at ¶ 55.

[4] *Id*. at ¶ 2.

[5] *Id*. at ¶ 5.

[6] *Id*. at ¶ 47.

Case No. 2:19-cv-04237-SVW-PJW

created a "rescue fork" to protect investors, but the NANO Core Team refused to implement that strategy because it is not in their own best interests.[7]

### C.  The May 2018 Blockchain Law Summit

In early-2018, Attorney Silver was asked to be a featured speaker at the May 24, 2018 Blockchain Law Summit in Los Angeles, California; and Attorney Silver accepted that invitation.[8]  At the conference, he discussed before an audience of approximately thirty (30) people numerous cryptocurrency lawsuits on which his law firm was working, including the then-pending First NANO Lawsuit.  About a third of the way into his presentation, Attorney Silver specifically stated: "*What's another lawsuit we are doing?  NANO, I forgot about NANO.  NANO is one of my favorites.*"  Attorney Silver then proceeded to talk about the First NANO Lawsuit.  In the course of his presentation, Attorney Silver also posed some hypothetical questions and presented some factual statements that were an outgrowth of the PSLRA-required press release and the allegations in the publicly-filed Complaint in the First NANO Lawsuit.  At no point during his presentation did Attorney Silver ever mention the NANO FOUNDATION, LTD. which, according to records maintained by the New York State Department of State's Division of Corporations[9], only came into existence on March 15, 2018, which was after the conclusion of virtually all of the events of which Attorney Silver spoke at the conference.

Following his live presentation at the conference, a video recording of Attorney Silver's comments -- along with the rest of the Blockchain Law Summit presentations -- were uploaded to YouTube by the conference's organizers.  According to statistics compiled by YouTube, Attorney Silver's presentation was only viewed over the ensuing twelve months eighty-seven (87) times.[10]

---

[7] *Id*. at ¶ 9.

[8] Attorney Silver has been featured on CNBC, Fox Business News, *The Wall Street Journal*, *Reuters*, *Fortune*, and *Bloomberg* amongst other media outlets to discuss different cryptocurrency regulation and litigation matters.

[9] *See*, Silver Decl. at ¶ 4 and Exhibit "B" thereto.

[10] Silver Decl. at ¶ 5 and Exhibit "C" thereto.

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DAVID C. SILVER'S
SPECIAL MOTION TO STRIKE COMPLAINT
PURSUANT TO CAL. CODE CIV. PROC. § 425.16

### D. <u>Settlement of the First NANO Lawsuit and Release of All Claims</u>

In late-September 2018, the First NANO Lawsuit was settled; and the parties to that dispute memorialized their negotiated settlement in a Confidential Settlement Agreement and Release. Included within that Confidential Settlement Agreement and Release was a provision under which the NANO Core Team (including their parent, subsidiary, affiliated, related, or predecessor entities) released the plaintiff as well as his past and present agents from any and all claims, actions, causes of action, and suits whatsoever that the NANO Core Team had as of the date of the Agreement.[11]

### E. <u>The Second NANO Lawsuit</u>

On January 3, 2019, a second class action lawsuit (the "Second NANO Lawsuit") was filed by Silver Miller and Levi & Korsinsky, LLP on behalf of a different claimant harmed by the NANO Core Team's acts.[12]  The named plaintiff in the Second NANO Lawsuit is unknown to the named plaintiff in the First NANO Lawsuit.  The only bond they share is that they were similarly injured by the NANO Core Team relating to the development, promotion, and sale of XRB.

On January 7, 2019, a PSLRA-required press release was issued to notify members of the putative class of the Second NANO Lawsuit, inform them of the allegations, and to advise them of their opportunity to serve as the lead plaintiff in the lawsuit.  Much like in the First NANO Lawsuit, the Second NANO Lawsuit presents allegations that the NANO Core Team failed to register XRB (or secure exemption from registration) with any securities regulatory authority; the NANO Core Team improperly promoted investments in XRB and questionably ushered investors to open and maintain accounts at BitGrail without performing proper due diligence into BitGrail's operations, safety, and reliability; and the plaintiff and putative class members suffered losses of more than $170 Million as a result of the NANO Core Team's acts and omissions.  For example, Paragraph 101 of the Complaint in the Second NANO Lawsuit succinctly states:

---

[11] A Motion to Dismiss filed simultaneously herewith addresses how all of these claims have been released and are barred from being litigated.

[12] *Fabian v. Nano, et al.*, U.S. District Court - N.D. Cal. - Case No.: 4-19-cv-00054-YRG.  *See also*, Silver Decl. at ¶ 7, which attaches as Exhibit "E" thereto a true and correct copy of the Class Action Complaint from the Second NANO Lawsuit.

Case No. 2:19-cv-04237-SVW-PJW

> *Simply stated, the Nano Defendants created the XRB currency, they directed XRB investors to place their assets at BitGrail (an exchange that they essentially controlled); and when nearly all of the XRB purportedly safeguarded at BitGrail disappeared, Defendants disavowed any responsibility for the harm the XRB investors suffered.*[13]

In March 2019, the NANO Core Team moved to dismiss the Second NANO Lawsuit.[14]  Shortly thereafter, the Court in the Second NANO Lawsuit appointed Silver Miller and Levi & Korsinsky, LLP as Co-Lead Counsel for the plaintiff and putative plaintiff class in the lawsuit.[15]

It is important to note that no discovery ever took place in the First NANO Lawsuit, and no discovery has yet taken place in the Second NANO Lawsuit.  Nevertheless, the following factual assertions -- based, in large part, on information published by members of the NANO Core Team -- are matters of public record:

➤ LEMAHIEU is responsible for developing at least 90% of all of NANO's underlying coding[16];

➤ LEMAHIEU was the lone developer for a few years and had the majority of commits [*i.e.*, coins][17];

➤ The NANO Core Team and other insiders, reportedly nine (9) other representatives, comprise ownership of over 96 percent of the total voting power [over Nano][18];

➤ In return for having XRB listed for purchase and sale at BitGrail, the NANO Core Team was compensated – first, with the ability to liquidate the XRB; and second, upon information and belief, as a source of referrals[19];

➤ [T]he NANO team, especially COLIN LEMAHIEU, had complete access to [BitGrail's] servers for a while as [BitGrail] gave him direct access to the database and servers.  That is how close [BitGrail and the NANO Core Team] worked as a team and as a preferred exchange . . . .[20]

---

[13] Second NANO Lawsuit - Class Action Complaint [DE 1] at ¶ 101.

[14] Second NANO Lawsuit at DE 33.

[15] Second NANO Lawsuit at DE 38.

[16] Second NANO Lawsuit - Class Action Complaint [DE 1] at ¶ 65.

[17] *Id.*

[18] *Id.* at ¶ 66.

[19] *Id.* at ¶ 93.

[20] *Id.* at ¶ 100.

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DAVID C. SILVER'S
SPECIAL MOTION TO STRIKE COMPLAINT
PURSUANT TO CAL. CODE CIV. PROC. § 425.16

### F.  The Instant SLAPP Lawsuit against Attorney Silver

On May 15, 2019 -- just two days before a response to the NANO Core Team's Motion to Dismiss was due in Second NANO Lawsuit -- Plaintiffs NANO FOUNDATION, LTD. and COLIN LeMAHIEU initiated this SLAPP suit against Attorney Silver, one of the attorneys representing the plaintiff and putative plaintiff class in the Second NANO Lawsuit.  Plaintiffs are suing Attorney Silver for: (1) defamation, (2) trade libel, and (3) intentional interference with a prospective economic advantage -- all relating to the comments he made at the May 24, 2018 Blockchain Law Summit about his law firm's work on the First NANO Lawsuit.

As demonstrated below, Plaintiffs' lawsuit is frivolous, wastes valuable judicial resources in a misguided attempt to exact a vendetta against an attorney who represents numerous parties harmed by the NANO Core Team, and must be stricken.[21]

### II.   ARGUMENT

### A.  Plaintiffs' Lawsuit Is Nothing More Than A Classic "SLAPP" Suit

The theories asserted by the NANO FOUNDATION, LTD. and COLIN LeMAHIEU[22] in this "defamation," "libel," and "wrongful interference" action embody the classic SLAPP: a "Strategic Lawsuit Against Public Participation" that is designed to chill and punish Attorney Silver's exercise of

---

[21] In addition to the instant motion and the Motion to Dismiss, Attorney Silver has also served upon Plaintiffs and Plaintiffs' counsel, but has not yet filed with this Court, a Motion for Sanctions pursuant to Fed.R.Civ.P. 11 against Plaintiffs and their counsel (Ryan M. Lapine, Esq., Joshua H. Herr, Esq., and the law firm of Pierce, Rosenfeld, Meyer & Sussman, LLP) which demonstrates that the Complaint is legally and factually baseless from an objective perspective, and that Plaintiffs' counsel failed to conduct a reasonable and competent inquiry into the allegations asserted in the Complaint before signing and filing it.  As of the date of this filing, Attorney Silver is awaiting either Plaintiffs' withdrawal of their Complaint or expiration of the "safe harbor" period required by Fed.R.Civ.P. 11(c)(2) before filing the Motion for Sanctions -- whichever occurs first.

[22] Both Plaintiffs, the NANO FOUNDATION, LTD. and COLIN LeMAHIEU are "public figures" and should be recognized under the law as "all-purpose" or "limited-purpose" public figures for this litigation as they occupy positions of persuasive power and influence and invite attention and comment. For example NANO has approximately 98,400 followers on Twitter and COLIN LeMAHIEU has approximately 14,200 followers on Twitter.

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DAVID C. SILVER'S SPECIAL MOTION TO STRIKE COMPLAINT PURSUANT TO CAL. CODE CIV. PROC. § 425.16

constitutionally protected speech and petition rights.[23]   SLAPP-filers are not necessarily concerned with "winning."   The primary aim of a SLAPP "is preventing citizens from exercising their political rights or punishing those who have done so."[24]   SLAPP suits against opposing counsel often masquerade "as ordinary civil claims such as **defamation**, conspiracy ... **interference with contract and/or economic advantage** as a means of transforming public debate into lawsuits."[25]

The California Legislature has codified the state's abhorrence of SLAPP suits thusly, in pertinent part:

> (a) The Legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.   The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process.   To this end, this section shall be construed broadly.

> (b)(1)  A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

> *                    *                    *

> (e) As used in this section, "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public

---

[23] *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal.4th 1106, 1109, fn.1 (1999); *Jarrow Formulas Inc. v. LaMarche*, 31 Cal.4th 728, 732, 3 Cal.Rptr.3d 636, 74 P.3d 737 (2003).

[24] *Church of Scientology v. Wollersheim*, 42 Cal.App.4th 628, 645 (1996) ("*Wollersheim*"), disapproved on another point in *Equilon Enterprises LLC v. Consumer Cause, Inc.*, 29 Cal.4th 53, 68, fn.5 (2002); *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*, 47 Cal.App.4th 777, 783 (1996).

[25] E. Pritzer & M. Goldowitz, *Guarding Against the Chill: A Survival Guide for SLAPP Victims*, First Amendment Project/California Anti-SLAPP Project (1994) pp. 2-3 (emphasis added); *Jarrow*, 31 Cal.4th at 736, fn. 6, citing the text.

> forum in connection with an issue of public interest, or (4) any other
> conduct in furtherance of the exercise of the constitutional right of
> petition or the constitutional right of free speech in connection with a
> public issue or an issue of public interest.

Cal. Code Civ. Proc. § 425.16(a), (b)(1), and (e).

Trial courts evaluate anti-SLAPP motions using a two-step process.[26]  First, the moving party defendant must make a threshold showing that the challenged claim arises from activity protected by the anti-SLAPP statute.[27]  The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken "in furtherance of the [defendant]'s right of petition [to the courts for redress of grievances] or free speech under the United States or California Constitution in connection with a public issue," as defined in the statute.[28]

To this end, the anti-SLAPP statute "shall be construed broadly."[29]  In California, an "issue of public interest" within the meaning of section 425.16 is any issue in which the public is interested.  In other words, the issue need not be "significant" to be protected by the Anti-SLAPP statute; it is enough that it is one in which the public takes interest.[30]  "The definition of 'public interest' within the meaning of the Anti-SLAPP statute has been broadly construed to include . . . private conduct that impacts a broad segment of society . . . ."[31]

Here, the challenged speech related to the First NANO Lawsuit, which was one of multiple lawsuits filed arising out of a well-publicized controversy involving the burgeoning growth of cryptocurrency and whether coins created and distributed by start-up companies (such as NANO) were subject to, or exempt from, securities regulation.  Under the plain language of section 425.16(e)(1), (2), and (3), as well as the case law interpreting those provisions, all communications and communicative acts performed by attorneys as part of their representation of clients in and reflecting a judicial

---

[26] *Taus v. Loftus*, 40 Cal.4th 683, 712, 54 Cal.Rptr.3d 775, 151 P.3d 1185 (2007).

[27] *Id*.

[28] *Equilon*, 29 Cal.4th 53, 67.

[29] Cal. Code Civ. Proc. § 425.16(a).  *See also*, *Jarrow*, 31 Cal.4th at 735.

[30] *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal.App.4th 1027, 1042, 72 Cal.Rptr.3d 210 (2008).

[31] *Du Charme v. Int'l Brotherhood of Electrical Workers*, 110 Cal.App.4th 107, 115 (2003).

proceeding are *per se* protected as speech and petition activity under the anti-SLAPP statute.[32]  As one California Superior Court Judge even noted when evaluating an Anti-SLAPP statute Motion to Strike: "That's the whole purpose of the Anti-SLAPP statute – to protect people who are talking to reporters, particularly in connection with lawsuits.  It's pretty well a slam dunk."[33]

If the defendant shows that a challenged cause of action arises out of protected activity, the plaintiff then has the burden to demonstrate a probability of prevailing on the claim.[34]  To satisfy this burden, the plaintiff must "demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated. The court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment.  If not, the claim is stricken."[35]

In the instant matter, it is apparent that Attorney Silver's challenged statements arise from activity protected by the anti-SLAPP statute.  His statements -- made on subjects of public interest -- were made in furtherance of his right of petition or free speech and under the shield provided to communications relating to judicial proceedings.  Moreover, it is clearly improbable that Plaintiffs will prevail on the claims alleged in their lawsuit.

**B.  Prong One of the Anti-SLAPP Statute is Satisfied: The Challenged Claims Arise from Activity Protected by the Anti-SLAPP Statute**

The NANO FOUNDATION, LTD. and COLIN LeMAHIEU cannot plausibly deny the direct relationship of their Complaint to the subject matter of the First NANO Lawsuit and the Second NANO

---

[32] *See*, *Rusheen v. Cohen*, 37 Cal.4th 1048, 1056 (2006) (section 425.16 protects "communicative conduct such as the filing, funding, and prosecution of a civil action," as well as any communications or conduct "by attorneys in representing clients in litigation"); *Briggs*, *supra*, 19 Cal.4th at 1111-1116 (filing or promoting a lawsuit arises from defendant's exercise of petition rights and extends to legal representatives); *Thayer v. Kabateck, Brown & Kellner LLP*, 207 Cal.App.4th 141, 157-158 (2012).

[33] *See*, Morgan Van Buren, *Defamation Suit Defeated With 'Slam Dunk' Anti-SLAPP Defense*, Tyson & Mendes blog (May 6, 2015), https://www.tysonmendes.com/blog-slam-dunk/ (summarizing April 16, 2015 ruling in *Healthsmart Pacific, Inc. v. Kabateck*, Superior Court - State of California - County of Los Angeles - Case No. BC566549, dismissing SLAPP suit and entering for defendant an award of attorneys' fees and costs).

[34] *Jarrow Formulas, Inc. v. LaMarche*, 31 Cal.4th 728, 733 (2003).

[35] *Baral v. Schnitt*, 1 Cal.5th 376, 396, 205 Cal.Rptr.3d 475, 376 P.3d 604 (2016).

Lawsuit.  Moreover, the topics described by Attorney Silver at the Blockchain Law Summit of the XRB investors/victims' claims indisputably involve matters of "public interest or concern."[36]  The supposedly offending communications relate to and arise from the First NANO Lawsuit and presumably the putative class victims' actions seeking redress for the NANO Core Team's acts and omissions relating to the development, promotion, and sale of XRB.  Moreover, the topics were "newsworthy" enough for Attorney Silver to be asked to speak about them at a legal blockchain technology conference and to have his comments published on YouTube to a narrow audience of interested viewers.  As noted above, one court has somewhat tautologically stated that "'an issue of public interest' . . . is any issue in which the public is interested."[37]

Accordingly, the anti-SLAPP statute applies to require judicial screening of all three of Plaintiffs' asserted "defamation," "libel," and "business tort" causes of action.

### C. Under Prong Two of the Anti-SLAPP Suit Statute, Plaintiffs Cannot Satisfy Their Burden of Proving the "Probability of Prevailing" on Any Cause of Action Alleged in the Complaint

"To show a probability of prevailing for purposes of section 425.16 [under the second prong], a plaintiff must 'make a prima facie showing of facts which would, if proved at trial, support a judgment in plaintiffs favor.'"[38]  "'[T]he plaintiff 'cannot simply rely on the allegations in the complaint' . . . .' Rather, plaintiffs showing of facts must consist of evidence that would be admissible at trial.  'Thus, declarations that lack foundation or personal knowledge, or that are argumentative, speculative, impermissible opinion, hearsay, or conclusory are to be disregarded.'[39]

---

[36] *Ampex Corp. v. Cargle*, 128 Cal.App.4th 1569, 1579 (2005) (holding that to prevail on claims for defamation involving an issue of "public interest," plaintiff must prove "actual malice" under section 425.16).

[37] *Nygard, Inc*, 159 Cal.App.4th at 1027.

[38] *ComputerXpress, Inc. v. Jackson*, 93 Cal.App.4th 28 993, 1010 (2001).

[39] *Gilbert v. Sykes*, 147 Cal.App.4th 13, 26 (2007); *Alpha & Omega Dev. Co. LP v. Whillock Contracting, Inc.*, 200 Cal.App.4th 656, 664 (2011) (emphasis added).

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DAVID C. SILVER'S
SPECIAL MOTION TO STRIKE COMPLAINT
PURSUANT TO CAL. CODE CIV. PROC. § 425.16

The plaintiffs' "pleadings merely frame the issues to be decided."[40] "Unlike demurrers or [ordinary] motions to strike, which are designed to eliminate sham or facially meritless allegations, at the pleading stage a SLAPP motion, like a summary judgment motion, *pierces* the pleadings and requires an evidentiary showing."[41] The SLAPP motion is not necessarily an all-or-nothing proposition; the statute specifically permits dismissal of less than all claims asserted. Plaintiffs therefore must prove the "probability" of success on each and every cause of action alleged.[42] The NANO FOUNDATION, LTD. and COLIN LEMAHIEU cannot meet their burden on any cause of action in their Complaint.

### 1. Plaintiffs' Defamation Claims (Counts I and II) Are Meritless

Plaintiffs premise their defamation claim on the assertion that the comments made by Attorney Silver at the Blockchain Law Summit about the First NANO Lawsuit are not protected by any litigation privilege or other privilege shielding Attorney Silver from liability. Plaintiffs are mistaken. "The absolute privilege attaches to any publication that has any reasonable relation to the action and is made to achieve the objects of the litigation, even though published outside the courtroom and no function of the court or its officers is involved."[43] When speaking to the public about the First NANO Lawsuit, Attorney Silver's "communications with 'some relation' to judicial proceedings' are 'absolutely immune from tort liability' by [Cal. Civil Code § 47(b)'s] litigation privilege."[44] "It is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards."[45]

The Supreme Court has held countless times that the broad scope of the litigation privilege extends to "preliminary conversations and interviews" having *some relation to* contemplated legal

---

[40] *Wollersheim*, 42 Cal.App.4th at 635.

[41] *Simmons v. Allstate Ins. Co.*, 92 Cal.App.4th 1068, 1073 (2001) (italics in original).

[42] *See, e.g., Computer Xpress*, 93 Cal.App.4th at 1019-1020 (five out of nine claims dismissed).

[43] *Rosenthal v. Irell & Manella*, 135 Cal.App.3d 121, 126 (1982), citing *Pettit v. Levy*, 28 Cal.App.3d 484, 489 (1972).

[44] *Rubin v. Green*, 4 Cal.4th 1187, 1193 (1993).

[45] *Rusheen*, 37 Cal.4th at 1057.

1   actions . . . communications enabling parties and attorneys to "marshal their evidence" . . . "the privilege

2   extends to 'steps taken prior' to judicial proceedings" . . . and communications by lawyers involving

3   pending or "potential court actions" . . . ."[46]

4         "For well over a century, communications with 'some relation' to judicial proceedings have

5   been absolutely immune from tort liability by the privilege codified as section 47(b)" of the California

6   Civil Code."[47]  This absolute immunity from suit encompasses any tort cause of action alleged by the

7   NANO FOUNDATION, LTD. and COLIN LEMAHIEU for *defamation* (including the "false light"

8   variant) and *intentional interference with business or economic relations*.  Indeed, "the only exception

9   to [the] application of [section 47] to tort suits has been for malicious prosecution actions."[48]

10        The anti-SLAPP procedure supplements the privileges embodied in California Civil Code § 47

11   and the *Noerr-Pennington* doctrine that uphold free exercise of First Amendment rights, and bar

12   meritless actions against opposing counsel brought by adverse litigants, like this one.[49]

13        "A 'fair and true' report of a judicial proceeding (*e.g.*, the First NANO Lawsuit) is absolutely

14   privileged."[50]  Even if that were not so obviously apparent, newsworthy reports alerting *other* potential

15   victims of serious "public issues" concerning their safety in the "public forum" of television and radio

16   broadcasts -- and, in our modern world, online broadcast media like YouTube -- require Plaintiffs to

17   prove the "falsity" of the publication under the *actual malice standard*.[51]  Evaluating the "merits" prong

18   of a SLAPP motion, "courts must consider the pertinent burden of proof in ascertaining whether the

19   plaintiff has shown a probability of prevailing."[52]  In the SLAPP context, the limited public figure who

20

21   ─────────────────────────

      [46] *Rubin*, 4 Cal.4th at 1194-1195, citing *Pettit v. Levy*, 28 Cal.App.3d at 490; *Rosenthal*, 135 Cal.App.3d
22   at 126, among other cases.

23   [47] *Rubin*, 4 Cal.4th at 1193.

      [48] *Id*. at 1194.
24
      [49] *Briggs*, 19 Cal.4th at 1115-1116, citing *Rubin*; *Ludwig v. Superior Court*, 37 Cal.App.4th 8, 21 (1995).
25   [50] *Lafayette Morehouse, Inc. v. Chronicle Publishing Co.*, 37 Cal.App.4th 855, 870 (1995).

26   [51] *Ampex Corp.,* 128 Cal.App.4th 1569, 1576-1577 (plaintiff is a "limited public figure" for purposes
     of his defamation action when claim involves a "public issue" broadcast in a "public forum").
27
      [52] *Id.* at 1578.
28

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DAVID C. SILVER'S
SPECIAL MOTION TO STRIKE COMPLAINT
PURSUANT TO CAL. CODE CIV. PROC. § 425.16

sues for defamation must establish a probability that he or she can produce *clear and convincing evidence* of actual falsity or defendant's reckless disregard for the truth.[53]

On this record, there was (and is) ample evidence establishing involvement by the NANO Core Team (including COLIN LEMAHIEU) in the harm to XRB investors described in the First NANO Lawsuit.[54] Attorney Silver gave a fair account of the underlying lawsuit to the audience members attending the Blockchain Law Summit. Plaintiffs' quibbling about the truth and precision of Attorney Silver's descriptions of the facts underlying and surrounding the First NANO Lawsuit is misplaced, as all that is required for his statements to be privileged is a "fair and true" communication of the allegations in the lawsuit. "'Fair and true' in this context does not refer to the truth or accuracy of the matters asserted in the judicial proceedings, but rather to the accuracy of the challenged statements with respect wo what occurred in the judicial proceedings."[55] In other words, the Court's concern is not with the merits of the First NANO Lawsuit or the truth of Attorney Silver's statements at the Blockchain Law Summit; rather, the focus must be on the extent to which Attorney Silver accurately conveyed the substance -- even without exacting precision -- of the allegations made in the First NANO Lawsuit.[56]

Like other "paradigm SLAPP" suits, there is no evidence of "falsity" in Attorney Silver's comments; and Plaintiffs cannot remotely sustain their actual malice burden of proof.[57] Therefore, Plaintiffs' cannot sustain the first and second causes of action in their Complaint.

---

[53] *Id.* at 1577.

[54] It is less clear how, if at all, the NANO FOUNDATION, LTD. -- which was formed ***after*** the events of which Attorney Silver spoke at the May 2018 conference -- was involved. Attorney Silver never mentioned the NANO FOUNDATION, LTD. during his Blockchain Law Summit presentation, nor is it apparent what standing the NANO FOUNDATION, LTD. has to complain of statements made during that presentation.

[55] *Healthsmart Pacific, Inc. v. Kabateck*, 7 Cal.App.5th 416, 434 (2016).

[56] *Id.* (accepting statements by attorney to media about ongoing litigation because those statements were "substantially similar" to those alleged in the lawsuit of which the attorney was speaking).

[57] *Lafayette Morehouse*, 37 Cal.App.4th at 864-865; *Ampex Corp.*, 128 Cal.App.4th at 1579; *Seelig v. Infinity Broadcasting Corp.*, 97 Cal.App.4th 798, 809-812 (2002) (opposition could not meet the "provably false" test).

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DAVID C. SILVER'S SPECIAL MOTION TO STRIKE COMPLAINT PURSUANT TO CAL. CODE CIV. PROC. § 425.16

Case No. 2:19-cv-04237-SVW-PJW

### 2.  Plaintiffs' Trade Libel Claim (Count III) Is Meritless

Just as Plaintiff LEMAHIEU's defamation claims lack merit, so too is Plaintiff NANO FOUNDATION, LTD.'s claim for "trade libel" (Count III) frivolous and unsustainable.  Attorney Silver never once mentioned the NANO FOUNDATION, LTD. during his presentation.  Moreover, as noted above, the protected comments made by Attorney Silver were about events and omissions that took place *before* the NANO FOUNDATION, LTD. even existed; and there is no evidence that those comments were made with any malice toward the never-named NANO FOUNDATION, LTD.[58] Additionally, although "under California law, 'a cause of action for damages for trade libel requires pleading and proof of special damages in the form of pecuniary loss,'"[59] the NANO FOUNDATION, LTD. merely makes vague allegations that it "suffered direct harm" that "exceeds the $75,000 jurisdictional limits of this court."[60]

In short, Count III of Plaintiffs' Complaint is due to suffer the same fate as Counts I and II: being stricken under Cal. Code Civ. Proc. § 425.16 for lacking any merit and being unable to sustain a favorable judgment in Plaintiffs' favor.

### 3.  Plaintiffs' "Business Interference" Claim (Count IV) Is Meritless

Lastly, the same privileges and constitutionally-heightened burdens of proof governing Plaintiffs' defamation and libel claims also govern Plaintiff COLIN LEMAHIEU's claim for "Intentional Interference with Prospective Economic Advantage" (Count IV).[61]  Thus, Count IV of the Complaint is ripe for being stricken along with the other causes of action asserted therein.

---

[58] *Optinrealbig.com, LLC v. Ironport Sys., Inc.*, 323 F.Supp.2d 1037, 1049 (N.D. Cal. 2004) ("Without even a hint of malice, it is difficult to say that [the plaintiff] has a likelihood of prevailing on the merits of its trade libel claim.").

[59] *Isuzu Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F.Supp.2d 1035, 1047 (C.D. Cal. 1998) ("A bare allegation of the amount of pecuniary loss is insufficient for the pleading of a trade libel claim.").

[60] Complaint at ¶¶ 93, 94.

[61] *Rubin*, 4 Cal.4th.at 1195-1196; citing *Pacific Gas & Electric Co.* v. *Bear Stearns & Co.*, 50 Cal.3d 1118, 1130-1131 (1990) (absolute privilege barred action alleging defendants wrongfully induced others to pursue colorable legal claims tortiously interfering with plaintiffs economic relations); *Kibler* v. *No. Inyo County Local Hosp. Dist.*, 39 Cal.4th 192, 197 (2006) (tortious interference/defamation action was a SLAPP).

**D.  Section 425.16(c) Entitles a Prevailing Defendant to an Award of Attorneys' Fees**

Whenever any action or claim is dismissed under the anti-SLAPP statute, the prevailing defendants "shall be" entitled to recover attorneys' fees and costs.[62]  Upon enacting the anti-SLAPP statute, the Legislature declared this statutory right of prevailing defendants to recover their reasonable attorney fees under section 425.16 in an amount which adequately compensates them for the expense of responding to a baseless lawsuit as well as any fees necessarily associated with substantiating the request for that award.[63]

Applying the relevant standards for statutory fee awards, Attorney Silver requests an award of fees and costs in a sum to be demonstrated and supported with necessary proof within twenty (20) days of an Order entered by the Court granting this motion.

**III.      CONCLUSION**

For all the foregoing reasons, Defendant DAVID C. SILVER, an individual, respectfully requests that the Court grant his anti-SLAPP motion, strike the Complaint filed by Plaintiffs NANO FOUNDATION, LTD. and COLIN LeMAHIEU, and award Defendant attorneys' fees and costs under section 425.16(c).

Respectfully submitted,

By:   _/s/ Brandon S. Reif_____
Brandon S. Reif, Esq. (State Bar No. 214706)
E-Mail: BReif@ReifLawGroup.com
**REIF LAW GROUP, P.C.**
1925 Century Park East - Suite 1700
Los Angeles, California 90067
Telephone: (310) 494-6500

---

[62] Code Civ. Proc., § 425.16(c); *see also*, *Kyle v. Carmon*, 71 Cal.App.4th 901, 918 (1999), citing *Liu v. Moore*, 69 Cal.App.4th 745, 752 (1999).

[63] *Tuchscher Develop. Enterps., Inc. v. San Diego Unified Port Dist.*, 106 Cal.App.4th 1219, 1230-1231 (2003) (emphasis added) ($55,900 affirmed); *Wollersheim*, 42 Cal.App.4th at 658-659 ($130,506.71 award in trial court was "proper and supported").

Case No. 2:19-cv-04237-SVW-PJW

1   F. Jason Seibert, Esq.
     (*Pro Hac Vice application forthcoming*)
    E-Mail: Jason@seibert-law.com
2   **SEIBERT LAW**
    6007 Greenway Manor Lane
3   Spring, Texas 77373
    Telephone: (971) 235-5764
4
    *Attorneys for Defendant David C. Silver*
5

6

7                    **CERTIFICATE OF SERVICE**

8       **I HEREBY CERTIFY** that a copy of the foregoing was electronically filed with the Clerk of
   Court on this __12th__ day of June 2019 by using the CM/ECF system and that a true and correct copy
9  will be served via electronic mail to: **RYAN M. LAPINE, ESQ. and JOSHUA H. HERR, ESQ.,**
   PIERCE ROSENFELD, MEYER & SUSSMAN, LLP, *Counsel for Plaintiffs*, 232 North Canon Drive, Beverly
10 Hills, CA 90210-5302; E-mail: RLapine@rmslaw.com; JHerr@rmslaw.com.

11
                                        */s/ Brandon S. Reif*
12                                       BRANDON S. REIF

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DAVID C. SILVER'S
SPECIAL MOTION TO STRIKE COMPLAINT
PURSUANT TO CAL. CODE CIV. PROC. § 425.16