Brandon S. Reif, Esq. (State Bar No. 214706)
E-Mail: BReif@ReifLawGroup.com
**REIF LAW GROUP, P.C.**
1925 Century Park East - Suite 1700
Los Angeles, California 90067
Telephone: (310) 494-6500

F. Jason Seibert, Esq. (*Pro Hac Vice application forthcoming*)
E-Mail: Jason@seibert-law.com
**SEIBERT LAW**
6007 Greenway Manor Lane
Spring, Texas 77373
Telephone: (971) 235-5764

*Attorneys for Defendant David C. Silver*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NANO FOUNDATION, LTD., a New York non-profit corporation; and<br>COLIN LeMAHIEU, an individual;<br><br>          Plaintiffs,<br><br>     v.<br><br>DAVID C. SILVER, an individual;<br><br>          Defendant. | Case No. 2:19-cv-04237-SVW-PJW<br><br>**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENDANT DAVID C. SILVER's MOTION FOR ATTORNEYS' FEES AND SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11 AGAINST: (1) PLAINTIFFS NANO FOUNDATION, LTD. and COLIN LeMAHIEU AND (2) RYAN M. LAPINE, ESQ., JOSHUA H. HERR, ESQ., and PIERCE, ROSENFELD, MEYER & SUSSMAN, LLP**<br><br>Date:     August 5, 2019<br>Time:    1:30 p.m.<br>Judge:   Hon. Stephen V. Wilson<br>Crtrm:  10A - 10th Floor |

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF
DEFENDANT DAVID C. SILVER's MOTION FOR ATTORNEYS' FEES AND
SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11 AGAINST:
(1) PLAINTIFFS NANO FOUNDATION, LTD. AND COLIN LeMAHIEU AND
(2) RYAN M. LAPINE, ESQ., JOSHUA H. HERR, ESQ., AND PIERCE, ROSENFELD,
MEYER & SUSSMAN, LLP

Case No. 2:19-cv-04237-SVW-PJW

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ........................................ 1

    A.  A Brief Primer on Alternative Currencies, including Nano .................... 1

    B.  The First NANO Lawsuit ........................................................................ 2

    C.  The May 2018 Blockchain Law Summit ................................................ 4

    D.  Settlement of the First NANO Lawsuit and Release of All Claims ........ 5

    E.  The Second NANO Lawsuit .................................................................... 6

    F.  The Instant Lawsuit against Attorney Silver .......................................... 7

III.  STANDARD OF REVIEW .............................................................................. 8

IV.   ARGUMENT ................................................................................................. 10

    A.  Plaintiffs' Legally and Factually Baseless Lawsuit Is Nothing More Than A Classic "SLAPP" Suit Presented in Bad Faith for an Improper Purpose to Harass Attorney Silver ..................................................................................... 10

        1.  Prong One of the Anti-SLAPP Statute is Satisfied: The Challenged Claims Arise from Activity Protected by the Anti-SLAPP Statute ......................... 13

        2.  Under Prong Two of the Anti-SLAPP Suit Statute, Plaintiffs Cannot Satisfy Their Burden of Proving the "Probability of Prevailing" on Any Cause of Action Alleged in the Complaint ..................................................... 14

            a.  Plaintiffs' Defamation Claims (Counts I and II) Lack Merit ........... 15

            b.  Plaintiffs' Trade Libel Claim (Count III) Lacks Merit ................... 17

            c.  Plaintiffs' "Business Interference" Claim (Count IV) Lacks Merit .. 18

    B.  The Factual Contentions in the Complaint Have No Evidentiary Support, as the Complaint is Barred by the September 2018 Settlement Agreement that Resolved the First NANO Lawsuit ................................................................. 19

    C.  Plaintiffs' Counsel Failed to Conduct a Reasonable and Competent Inquiry before Signing and Filing the Complaint ........................................................... 21

    D.  Plaintiffs' Complaint Warrants Monetary Sanctions ............................ 22

V.    REQUEST FOR WITHDRAWAL OF COMPLAINT REFUSED ................. 23

VI.   CONCLUSION ............................................................................................... 23

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENDANT DAVID C. SILVER's MOTION FOR ATTORNEYS' FEES AND SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11 AGAINST: (1) PLAINTIFFS NANO FOUNDATION, LTD. AND COLIN LEMAHIEU AND (2) RYAN M. LAPINE, ESQ., JOSHUA H. HERR, ESQ., AND PIERCE, ROSENFELD, MEYER & SUSSMAN, LLP

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alpha & Omega Dev. Co. LP v. Whillock Contracting, Inc.*
   200 Cal.App.4th 656 (2011) ........................................................... 14

*Ampex Corp. v. Cargle*
   128 Cal.App.4th 1569 (2005) .......................................... 13, 16, 17

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*
   7 Cal. 4th 503 (1994) .................................................................... 21

*Ass'n of Holocaust Victims for Restitution of Artwork & Masterpieces v. Bank Aus. Creditanstalt*
   2005 WL 3099592 (S.D.N.Y. Nov. 17, 2005) ............................... 23

*Baral v. Schnitt*
   1 Cal.5th 376, 205 Cal.Rptr.3d 475, 376 P.3d 604 (2016) ............ 13

*Briggs v. Eden Council for Hope & Opportunity*
   19 Cal.4th 1106 (1999) ................................................... 10, 12, 16

*Church of Scientology v. Wollersheim*
   42 Cal.App.4th 628 (1996) ............................................................ 10

*ComputerXpress, Inc. v. Jackson*
   93 Cal.App.4th 28 993 (2001) ................................................ 14, 15

*Cooter & Gell v. Hartmarx Corp.*
   496 U.S. 384 (1990) ........................................................................ 9

*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*
   47 Cal.App.4th 777 (1996) ............................................................ 10

*Du Charme v. Int'l Brotherhood of Electrical Workers*
   110 Cal.App.4th 107 (2003) .......................................................... 12

*Equilon Enterprises LLC v. Consumer Cause, Inc.*
   29 Cal.4th 53 (2002) ............................................................ 10, 11-12

*Gilbert v. Sykes*
   147 Cal.App.4th 13 (2007) ............................................................ 14

*Grillo v. California*
   2006 WL 335340 (N.D. Cal. Feb. 14, 2006) ................................. 21

*Grillo v. California Dep't of Corr.*
   308 F. App'x 63 (9th Cir. 2009) .................................................... 21

ii

*Healthsmart Pacific, Inc. v. Kabateck*
    7 Cal.App.5th 416 (2016) ........................................................................... 17

*Hernandez v. Bd. of Educ.*
    126 Cal.App.4th 1161 (2004) ..................................................................... 21

*Holgate v. Baldwin*
    425 F.3d 671 (9th Cir. 2005) ............................................................ 9, 21, 22

*Isuzu Motors Ltd. v. Consumers Union of United States, Inc.*
    12 F.Supp.2d 1035 (C.D. Cal. 1998) ......................................................... 18

*Jarrow Formulas, Inc. v. LaMarche*
    31 Cal.4th 728, 3 Cal.Rptr.3d 636, 74 P.3d 737 (2003) ................... 10, 12, 13

*Jinkins v. Temecula Towne Center Associates LLC*
    2019 WL 1652086 (C.D. Cal. Feb. 15, 2019) ........................................... 21

*Kibler v. No. Inyo County Local Hosp. Dist.*
    39 Cal.4th 192 (2006) ................................................................................ 19

*Lafayette Morehouse, Inc. v. Chronicle Publishing Co.*
    37 Cal.App.4th 855 (1995) ................................................................... 16, 17

*Ludwig v. Superior Court*
    37 Cal.App.4th 8 (1995) ............................................................................ 16

*Melchior v. New Line Productions, Inc.*
    131 Cal.Rptr.2d 347 (Cal. Ct. App. 2003) ................................................ 21

*Nygard, Inc. v. Uusi-Kerttula*
    159 Cal.App.4th 1027, 72 Cal.Rptr.3d 210 (2008) .............................. 12, 14

*Optinrealbig.com, LLC v. Ironport Sys., Inc.*
    323 F.Supp.2d 1037 (N.D. Cal. 2004) ....................................................... 18

*Pacific Gas & Electric Co. v. Bear Stearns & Co.*
    50 Cal.3d 1118 (1990) ............................................................................... 19

*Pettit v. Levy*
    28 Cal.App.3d 484 (1972) .......................................................................... 15

*Rosenthal v. Irell & Manella*
    135 Cal.App.3d 121 (1982) ........................................................................ 15

*Rubin v. Green*
    4 Cal.4th 1187 (1993) ..................................................................... 15, 16, 19

*Rusheen v. Cohen*
   37 Cal.4th 1048 (2006) ......................................................................... 12, 15

*Seelig v. Infinity Broadcasting Corp.*
   97 Cal.App.4th 798 (2002) .......................................................................... 17

*Sharma v. National Enterps., Inc.*
   2009 WL 10675177 (C.D. Cal. Oct. 8, 2009) (Pregerson, J.) ......................... 9

*Simmons v. Allstate Ins. Co.*
   92 Cal.App.4th 1068 (2001) .................................................................... 14-15

*Taus v. Loftus*
   40 Cal.4th 683, 54 Cal.Rptr.3d 775, 151 P.3d 1185 (2007) ......................... 11

*Thayer v. Kabateck, Brown & Kellner LLP*
   207 Cal.App.4th 141 (2012) ........................................................................ 12

*United States v. Howard*
   381 F.3d 873 (9th Cir. 2004) ......................................................................... 5

*Urenia v. Public Storage*
   2015 WL 3378247 (C.D. Cal. May 7, 2015) (Pregerson, J.) .................... 9, 21


**Statutes**

15 U.S.C. § 77l(a)(1) ........................................................................................ 2

15 U.S.C. § 77o(a) ........................................................................................... 2

Cal. Code Civ. Proc. § 425.16 ................................................................... 11, 12


**Rules**

Fed.R.Civ.P. 11 ..................................................................................... *passim*

Fed. R. Evid. 201 ............................................................................................. 5

**Articles**

E. Pritzker & M. Goldowitz, *Guarding Against the Chill: A Survival Guide for SLAPP Victims*, First Amendment Project/California Anti-SLAPP Project (1994) ............................................................. 10

Morgan Van Buren, *Defamation Suit Defeated With 'Slam Dunk' Anti-SLAPP Defense*, Tyson & Mendes blog (May 6, 2015), https://www.tysonmendes.com/blog-slam-dunk/ ................................ 13

iv

**Other**

*Brola v. Nano, et al.* ("First NANO Lawsuit")
    U.S. District Court - E.D.N.Y. - Case No: 1:18-cv-02049-NG-RML ................................. *passim*

*Fabian v. Nano, et al.* ("Second NANO Lawsuit")
    U.S. District Court - N.D. Cal. - Case No.: 4-19-cv-00054-YRG ........................................ *passim*

*Healthsmart Pacific, Inc. v. Kabateck*
    Superior Court - State of California - County of Los Angeles - Case No. BC566549 ............... 13

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENDANT DAVID C. SILVER's MOTION FOR ATTORNEYS' FEES AND SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11 AGAINST: (1) PLAINTIFFS NANO FOUNDATION, LTD. AND COLIN LEMAHIEU AND (2) RYAN M. LAPINE, ESQ., JOSHUA H. HERR, ESQ., AND PIERCE, ROSENFELD, MEYER & SUSSMAN, LLP

## I.   INTRODUCTION

Plaintiffs NANO FOUNDATION, LTD. and COLIN LeMAHIEU (referred to herein as "Plaintiffs"), and their counsel Ryan M. Lapine, Esq., Joshua H. Herr, Esq., and the law firm of Pierce, Rosenfeld, Meyer & Sussman, LLP (collectively "Plaintiffs' Counsel") have presented to this Court a frivolous SLAPP Complaint filed in bad faith and lacking both factual and legal support.  Despite the existence of:

    (a) Constitutional protections that indisputably shield the May 2018 statements made by Defendant DAVID C. SILVER (hereinafter "Defendant" or "Attorney Silver") upon which Plaintiffs base their dignitary tort Complaint; and

    (b) A September 2018 Settlement Agreement executed by Plaintiffs that bars all claims asserted in the Complaint

Plaintiffs and their counsel nevertheless commenced the instant lawsuit against Attorney Silver to harass him and, so they think, deter him from prosecuting a class action lawsuit against Plaintiffs and their privies that is currently pending in the U.S. District Court for the Northern District of California. Plaintiffs' strategies, as well as their misuse of this Court's resources, are grossly misplaced.  The Court must not countenance Plaintiffs' tactics, nor should the Court deem Plaintiffs' Counsel free from blame for emboldening Plaintiffs' abusive conduct.  Sanctions under Federal Rule of Civil Procedure 11 are not only warranted but are appropriate in this instance.

For the reasons set forth in greater detail below, as well as in the Declarations filed in support hereof, Attorney Silver respectfully requests the Court enter an award of sanctions against Plaintiffs and Plaintiffs' Counsel for filing, and refusing to withdraw, a frivolous, unsupportable, and improperly motivated Complaint.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   A Brief Primer on Alternative Currencies, including Nano

According to *Bitcoin Magazine*, any type of cryptocurrency other than bitcoin is known as an "altcoin."  Nano (f/k/a RaiBlocks) [XRB] is one such cryptocurrency alternative to bitcoin.  Altcoins can differ from bitcoin in a variety of ways.  Nano's creators, for instance, claim they developed their coin to be different from other cryptocurrencies (including bitcoin) to solve two problems identified in

1

bitcoin transactions: (1) lengthy transaction times, and (2) unnecessary costs.  By addressing, and purporting to solve, those problems, the principals behind Nano strive to make their coin the global digital currency.

Regardless of the nature in which Nano's developers would like to perceive their coin and its popularity, the U.S. Securities and Exchange Commission (SEC) has stated that blockchain and distributed ledger technology are subject to governmental oversight.  Any cryptocurrency technologies that have purported to create financial instruments -- sometimes in the form of tokens or coins that can provide investment opportunities like those offered through more traditional forms of securities -- are subject to government investigation, oversight, and regulation.  As financial technologies, methods of capital formation, and market structures continue to evolve, market participants like the team behind Nano engage in a variety of activities that have exposed them to civil investigations and lawsuits.

## B.   The First NANO Lawsuit

In a class action lawsuit commenced in April 2018 and concluded in October 2018 -- the law firms Silver Miller -- of which Attorney Silver is a Founding Partner -- and The Braunstein Law Firm, PLLC represented the plaintiff and putative plaintiff class against NANO f/k/a RAIBLOCKS f/k/a HIEUSYS, LLC, a Texas company ("NANO") and the following key members of NANO's core team of developers and executives: COLIN LeMAHIEU, an individual; MICA BUSCH, an individual; ZACH SHAPIRO, an individual; and TROY RETZER, an individual (collectively, "the NANO Core Team").  The action (the "First NANO Lawsuit")[1] was brought under the Private Securities Litigation Reform Act of 1995, as amended (the "PSLRA"), and alleged violations of Sections 12(a)(1) and 15(a) [15 U.S.C. §§ 77l(a)(1), 77o(a)] of the Securities Act of 1933 (the "Securities Act") stemming from the alleged sale of unregistered securities in the form of Nano (f/k/a RaiBlocks) [XRB], which was developed and promoted by the NANO Core Team but never registered with, or exempted from registration by, any regulatory authority.[2]

---

[1] *Brola v. Nano, et al.*, U.S. District Court - E.D.N.Y. - Case No: 1:18-cv-02049-NG-RML.

[2] *See*, June 12, 2019 Declaration of David C. Silver ("Silver Decl.") [DE 15-2] at ¶3 and Exhibit "A" thereto.

2

On April 9, 2018, a PSLRA-required press release was issued to notify members of the putative class of the First NANO Lawsuit, inform them of the allegations, and to advise them of their opportunity to serve as the lead plaintiff in the lawsuit. As alleged in the lawsuit, the harm flowing to certain XRB investors from the NANO Core Team's acts and omissions from January 1, 2015 to March 31, 2018 arose from, *inter alia*:

> ➢ The NANO Core Team's failure to register XRB (or secure exemption from registration) with any securities regulatory authority[3];

> ➢ The NANO Core Team's work in conceiving, developing, promoting, and selling XRB to the public, while withholding for themselves millions if not tens of millions of XRB, most of which are owned by LeMAHIEU[4];

> ➢ The NANO Core Team publicly promoting BitGrail as a safe and reliable place for XRB holders to stake and exchange their XRB, and XRB holders relying on that endorsement in choosing the exchange[5];

> ➢ BitGrail announcing in February 2018 that it had "lost" $170 Million worth of XRB from its exchange[6]; and

> ➢ The fact that the most direct solution to the XRB investors' problems resides squarely within the NANO Core Team's hands, yet the NANO Core Team refused to rewrite the XRB code and simply restore ownership to the investors. In crypto terms, the NANO Core Team could have created a "rescue fork" to protect investors, but the NANO Core Team refused to implement that strategy because it is not in their own best interests.[7]

### C.  The May 2018 Blockchain Law Summit

In early-2018, Attorney Silver was asked to be a featured speaker at the May 24, 2018 Blockchain Law Summit in Los Angeles, California; and Attorney Silver accepted that invitation.[8] At

---

[3] First NANO Lawsuit - Class Action Complaint [DE 1] at ¶ 55.

[4] *Id.* at ¶ 2.

[5] *Id.* at ¶ 5.

[6] *Id.* at ¶ 47.

[7] *Id.* at ¶ 9.

[8] Attorney Silver has been featured on CNBC, Fox Business News, *The Wall Street Journal*, *Reuters*, *Fortune*, and *Bloomberg* amongst other media outlets to discuss different cryptocurrency regulation and litigation matters.

the conference, he discussed before an audience of approximately thirty (30) people numerous cryptocurrency lawsuits on which his law firm was working, including the then-pending First NANO Lawsuit.  About a third of the way into his presentation, Attorney Silver specifically stated: "*What's another lawsuit we are doing?  NANO, I forgot about NANO.  NANO is one of my favorites.*"  Attorney Silver then proceeded to talk about the First NANO Lawsuit.  In the course of his presentation, Attorney Silver also posed some hypothetical questions and presented some factual statements that were an outgrowth of the PSLRA-required press release and the allegations in the publicly-filed Complaint in the First NANO Lawsuit.  At no point during his presentation did Attorney Silver ever mention the NANO FOUNDATION, LTD. which, according to records maintained by the New York State Department of State's Division of Corporations[9], only came into existence on March 15, 2018, which was after the conclusion of virtually all of the events of which Attorney Silver spoke at the conference.

Following his live presentation at the conference, a video recording of Attorney Silver's comments -- along with the rest of the Blockchain Law Summit presentations -- were uploaded to YouTube by the conference's organizers.  According to statistics compiled by YouTube, Attorney Silver's presentation was only viewed over the ensuing twelve months eighty-seven (87) times.[10]

**D.  Settlement of the First NANO Lawsuit and Release of All Claims**

In late-September 2018, the First NANO Lawsuit was settled; and the parties to that dispute memorialized their negotiated settlement in a Settlement Agreement.[11]  Included within that Settlement Agreement was a provision under which the NANO Core Team (including their parent, subsidiary, affiliated, related, or predecessor entities) released the plaintiff as well as his past and present agents from any and all claims, actions, causes of action, and suits whatsoever, *to wit*:[12]

---

[9] Silver Decl. at ¶ 4 and Exhibit "B" thereto.

[10] Silver Decl. at ¶ 5 and Exhibit "C" thereto.

[11] Silver Decl. at ¶ 6 and Exhibit "D" thereto.

[12] The Court may take judicial notice of the fact of the First NANO Lawsuit and all filings made therein. *United States v. Howard*, 381 F.3d 873, 876, n.1 (9th Cir. 2004) (A court may take judicial notice of court records in another case).  Moreover, the Court may take judicial notice of the Settlement

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENDANT DAVID C. SILVER's MOTION FOR ATTORNEYS' FEES AND SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11 AGAINST: (1) PLAINTIFFS NANO FOUNDATION, LTD. AND COLIN LEMAHIEU AND (2) RYAN M. LAPINE, ESQ., JOSHUA H. HERR, ESQ., AND PIERCE, ROSENFELD, MEYER & SUSSMAN, LLP

> 4. **Mutual General Release:** *Each Party hereby remises, releases, acquits, satisfies, and forever discharges each and every other Party (including: (i) with regard to each Party who is a natural person, that Party's guardians, successors, assigns, heirs, executors, administrators, trustees, accountants, and insurers, and (ii) with regard to each Party which is not a natural person, each such Party's past and present parent, subsidiary, affiliated, related, or predecessor entities, their successors and assigns, and any and all of each such Party's past and present officers, directors, agents, accountants, insurers, servants, employees, shareholders, members, and partners, all of the foregoing in (i) and (ii) hereinafter collectively referred to as the "Releasees"), of and from any and all, and all manner of, claims, actions, causes of action, suits, debts, sums of money, accounts, reckonings, contracts, controversies, agreements, promises, damages, and demands whatsoever, in law or in equity, which each Party had or now has, or which any successor or assign of each Party hereafter can, shall or may have, against any of the Releasees for, upon, or by reason of any matter, cause or thing whatsoever, from the beginning of the world to the date of this Agreement, whether known or unknown, direct or indirect, vested or contingent.* * * *

As noted above, Attorney Silver was one of the plaintiff's agents -- having represented the plaintiff's interests in the First NANO Lawsuit.

### E. The Second NANO Lawsuit

On January 3, 2019, a second class action lawsuit (the "Second NANO Lawsuit") was filed by Silver Miller and Levi & Korsinsky, LLP on behalf of a different claimant harmed by the NANO Core Team's acts.[13]   The named plaintiff in the Second NANO Lawsuit is unknown to the named plaintiff

---

Agreement itself per Fed. R. Evid. 201, which permits a court to notice an adjudicative fact if it is "not subject to reasonable dispute." Fed. R. Evid. 201(b). A fact is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)-(2). The Settlement Agreement from the First NANO Lawsuit cannot be subject to reasonable dispute; indeed, it is generally known between the parties, given it was executed by COLIN LEMAHIEU, individually and on behalf of the NANO corporate entity, and it was reviewed and approved by Attorney Silver as counsel for the plaintiff in the First NANO Lawsuit.

[13] *Fabian v. Nano, et al.*, U.S. District Court - N.D. Cal. - Case No.: 4-19-cv-00054-YRG. *See also*, Silver Decl. at ¶ 7, which attaches as Exhibit "E" thereto a true and correct copy of the Class Action Complaint from the Second NANO Lawsuit.

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENDANT DAVID C. SILVER's MOTION FOR ATTORNEYS' FEES AND SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11 AGAINST: (1) PLAINTIFFS NANO FOUNDATION, LTD. AND COLIN LEMAHIEU AND (2) RYAN M. LAPINE, ESQ., JOSHUA H. HERR, ESQ., AND PIERCE, ROSENFELD, MEYER & SUSSMAN, LLP

in the First NANO Lawsuit.  The only bond they share is that they were similarly injured by the NANO Core Team relating to the development, promotion, and sale of XRB.

On January 7, 2019, a PSLRA-required press release was issued to notify members of the putative class of the Second NANO Lawsuit, inform them of the allegations, and to advise them of their opportunity to serve as the lead plaintiff in the lawsuit.  Much like in the First NANO Lawsuit, the Second NANO Lawsuit presents allegations that the NANO Core Team failed to register XRB (or secure exemption from registration) with any securities regulatory authority; the NANO Core Team improperly promoted investments in XRB and questionably ushered investors to open and maintain accounts at BitGrail without performing proper due diligence into BitGrail's operations, safety, and reliability; and the plaintiff and putative class members suffered losses of more than $170 Million as a result of the NANO Core Team's acts and omissions.  For example, Paragraph 101 of the Complaint in the Second NANO Lawsuit succinctly states:

> *Simply stated, the Nano Defendants created the XRB currency, they directed XRB investors to place their assets at BitGrail (an exchange that they essentially controlled); and when nearly all of the XRB purportedly safeguarded at BitGrail disappeared, Defendants disavowed any responsibility for the harm the XRB investors suffered.*[14]

In March 2019, the NANO Core Team moved to dismiss the Second NANO Lawsuit.[15]  Shortly thereafter, the Court in the Second NANO Lawsuit appointed Silver Miller and Levi & Korsinsky, LLP as Co-Lead Counsel for the plaintiff and putative plaintiff class in the lawsuit.[16]

It is important to note that no discovery ever took place in the First NANO Lawsuit, and no discovery has yet taken place in the Second NANO Lawsuit.  Nevertheless, the following factual assertions -- based, in large part, on information published by members of the NANO Core Team -- are matters of public record:

---

[14] Second NANO Lawsuit - Class Action Complaint [DE 1] at ¶ 101.

[15] Second NANO Lawsuit at DE 33.

[16] Second NANO Lawsuit at DE 38.

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENDANT DAVID C. SILVER's MOTION FOR ATTORNEYS' FEES AND SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11 AGAINST: (1) PLAINTIFFS NANO FOUNDATION, LTD. AND COLIN LEMAHIEU AND (2) RYAN M. LAPINE, ESQ., JOSHUA H. HERR, ESQ., AND PIERCE, ROSENFELD, MEYER & SUSSMAN, LLP

Case No. 2:19-cv-04237-SVW-PJW

➢ LEMAHIEU is responsible for developing at least 90% of all of NANO's underlying coding[17];

➢ LEMAHIEU was the lone developer for a few years and had the majority of commits [*i.e.*, coins][18];

➢ The NANO Core Team and other insiders, reportedly nine (9) other representatives, comprise ownership of over 96 percent of the total voting power [over Nano][19];

➢ In return for having XRB listed for purchase and sale at BitGrail, the NANO Core Team was compensated – first, with the ability to liquidate the XRB; and second, upon information and belief, as a source of referrals[20];

➢ [T]he NANO team, especially COLIN LEMAHIEU, had complete access to [BitGrail's] servers for a while as [BitGrail] gave him direct access to the database and servers.  That is how close [BitGrail and the NANO Core Team] worked as a team and as a preferred exchange . . . .[21]

### F. <u>The Instant Lawsuit against Attorney Silver</u>

On May 15, 2019 -- just two days before a response to the NANO Core Team's Motion to Dismiss was due in Second NANO Lawsuit -- Plaintiffs NANO FOUNDATION, LTD. and COLIN LEMAHIEU initiated this SLAPP suit against Attorney Silver, one of the attorneys representing the plaintiff and putative plaintiff class in the Second NANO Lawsuit.  Plaintiffs are suing Attorney Silver for: (1) defamation, (2) trade libel, and (3) intentional interference with a prospective economic advantage -- all relating to the comments he made at the May 24, 2018 Blockchain Law Summit about his law firm's work on the First NANO Lawsuit.

As demonstrated below, Plaintiffs' lawsuit is frivolous, is presented in bad faith, and lacks both factual and legal support.  As a result, both Plaintiffs and their counsel (Ryan M. Lapine, Esq., Joshua H. Herr, Esq., and the law firm of Pierce, Rosenfeld, Meyer & Sussman, LLP) should be sanctioned for prosecuting Plaintiffs' meritless claim.

---

[17] Second NANO Lawsuit - Class Action Complaint [DE 1] at ¶ 65.

[18] *Id.*

[19] *Id.* at ¶ 66.

[20] *Id.* at ¶ 93.

[21] *Id.* at ¶ 100.

7

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENDANT DAVID C.
SILVER's MOTION FOR ATTORNEYS' FEES AND SANCTIONS PURSUANT TO FEDERAL
RULE OF CIVIL PROCEDURE 11 AGAINST: (1) PLAINTIFFS NANO FOUNDATION, LTD.
AND COLIN LEMAHIEU AND (2) RYAN M. LAPINE, ESQ., JOSHUA H. HERR, ESQ., AND
PIERCE, ROSENFELD, MEYER & SUSSMAN, LLP

## III.       STANDARD OF REVIEW

Pursuant to Rule 11(b), by presenting to the court a pleading, written motion, or other paper, an attorney certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims . . . and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying or reversing existing law or for establishment of new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the . . . factual contentions are warranted on the evidence, or, if specifically so identified, are reasonably based on belief or a lack of information.[22]

When a "complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine: (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it."[23]  Subsection (c) of Rule 11 permits a district court to impose sanctions against a party who files pleadings that contain factual contentions that the party knows to be untrue.[24]  It also allows for sanctions to be imposed against a party or its attorney for failing to engage in a reasonable

---

[22] Fed.R.Civ.P. 11(b).

[23] *Sharma v. National Enterps., Inc.*, 2009 WL 10675177, at *1 (C.D. Cal. Oct. 8, 2009) (Pregerson, J.).

[24] Fed.R.Civ.P. 11(c).

Case No. 2:19-cv-04237-SVW-PJW

inquiry to determine that the information presented to the court is true.[25]   To accomplish this purpose, any interpretation of Rule 11 "must give effect to the rule's central goal of deterrence."[26]

Moreover, Rule 11 of the Federal Rules of Civil Procedure authorizes the Court to impose sanctions upon an attorney who violates its terms.[27]   "An attorney's signature on a complaint is tantamount to a warrant that the complaint is well grounded in fact and 'existing law' (or proposes a good faith extension of the existing law) and that it is not filed for an improper purpose."[28]   Because the purpose underlying Rule 11 sanctions is to deter attorneys from filing or pursuing frivolous actions, a court may direct a violating party to pay monetary sanctions to compensate the opposing party's attorneys' fees and other expenses incurred as a result of the misconduct.[29]   Not only the signing attorney, but also his or her law firm, is responsible for Rule 11 violations.[30]   In the instant matter, Ryan M. Lapine, Esq. and Joshua H. Herr, Esq., as well as the law firm of Pierce, Rosenfeld, Meyer & Sussman, LLP, should be sanctioned for prosecuting a pleading they knew or should have known contained unsupportable claims.

---

[25] *See, e.g.*, *Holgate v. Baldwin*, 425 F.3d 671 (9th Cir. 2005) (upholding Rule 11 sanctions entered against counsel).

[26] *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 393 (1990).

[27] *See*, Fed.R.Civ.P. 11(c).

[28] *Sharma*, 2009 WL 10675177, at *1.

[29] *See*, Fed.R.Civ.P. 11(c)(2). *See also*, *Urenia v. Public Storage*, 2015 WL 3378247 (C.D. Cal. May 7, 2015) (Pregerson, J.) (sanctioning the plaintiffs' counsel to personally reimburse the defendant for unnecessary legal fees incurred as a result of plaintiffs and their counsel filing claims that are factually baseless and for not conducting a reasonable inquiry before filing).

[30] *See*, Fed.R.Civ.P. 11(c)(1) ("Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee").

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENDANT DAVID C. SILVER's MOTION FOR ATTORNEYS' FEES AND SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11 AGAINST: (1) PLAINTIFFS NANO FOUNDATION, LTD. AND COLIN LEMAHIEU AND (2) RYAN M. LAPINE, ESQ., JOSHUA H. HERR, ESQ., AND PIERCE, ROSENFELD, MEYER & SUSSMAN, LLP

## IV.     ARGUMENT

### A.  Plaintiffs' Legally and Factually Baseless Lawsuit Is Nothing More Than A Classic "SLAPP" Suit Presented in Bad Faith for an Improper Purpose to Harass Attorney Silver

The theories asserted by the NANO FOUNDATION, LTD. and COLIN LeMAHIEU[31] in this "defamation," "libel," and "wrongful interference" action embody the classic SLAPP: a "Strategic Lawsuit Against Public Participation" that is designed to chill and punish Attorney Silver's exercise of constitutionally protected speech and petition rights.[32]   SLAPP-filers are not necessarily concerned with "winning."   The primary aim of a SLAPP "is preventing citizens from exercising their political rights or punishing those who have done so."[33]   SLAPP suits against opposing counsel often masquerade "as ordinary civil claims such as **defamation**, conspiracy ... **interference with contract and/or economic advantage** as a means of transforming public debate into lawsuits."[34]

The California Legislature has codified the state's abhorrence of SLAPP suits thusly, in pertinent part:

> (a) The Legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.  The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through

---

[31] Both Plaintiffs (the NANO FOUNDATION, LTD. and COLIN LeMAHIEU) are "public figures" and should be recognized under the law as "all-purpose" or "limited-purpose" public figures for this litigation as they occupy positions of persuasive power and influence and invite attention and comment. For example, NANO has approximately 98,400 followers on Twitter; and COLIN LeMAHIEU has approximately 14,200 followers on Twitter.

[32] *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal.4th 1106, 1109, fn.1 (1999); *Jarrow Formulas Inc. v. LaMarche*, 31 Cal.4th 728, 732, 3 Cal.Rptr.3d 636, 74 P.3d 737 (2003).

[33] *Church of Scientology v. Wollersheim*, 42 Cal.App.4th 628, 645 (1996), disapproved on another point in *Equilon Enterprises LLC v. Consumer Cause, Inc.*, 29 Cal.4th 53, 68, fn.5 (2002); *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*, 47 Cal.App.4th 777, 783 (1996)

[34] E. Pritzker & M. Goldowitz, "Guarding Against the Chill: A Survival Guide for SLAPP Victims," First Amendment Project/California Anti-SLAPP Project (1994), pp. 2-3 (emphasis added); *Jarrow*, 31 Cal.4th at 736, fn. 6, citing the text.

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENDANT DAVID C. SILVER's MOTION FOR ATTORNEYS' FEES AND SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11 AGAINST: (1) PLAINTIFFS NANO FOUNDATION, LTD. AND COLIN LeMAHIEU AND (2) RYAN M. LAPINE, ESQ., JOSHUA H. HERR, ESQ., AND PIERCE, ROSENFELD, MEYER & SUSSMAN, LLP

abuse of the judicial process.   To this end, this section shall be construed broadly.

(b)(1)  A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

\*                    \*                    \*

(e)  As used in this section, "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Cal. Code Civ. Proc. § 425.16(a), (b)(1), and (e).

Trial courts evaluate anti-SLAPP motions using a two-step process.[35]  First, the moving party defendant must make a threshold showing that the challenged claim arises from activity protected by the anti-SLAPP statute.[36]  The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken "in furtherance of the [defendant]'s right of petition [to the courts for redress of grievances] or free speech under the United States or California Constitution in connection with a public issue," as defined in the statute.[37]

---

[35] *Taus v. Loftus*, 40 Cal.4th 683, 712, 54 Cal.Rptr.3d 775, 151 P.3d 1185 (2007).

[36] *Id.*

[37] *Equilon*, 29 Cal.4th 53, 67.

To this end, the anti-SLAPP statute "shall be construed broadly."[38]  In California, an "issue of public interest" within the meaning of section 425.16 is any issue in which the public is interested.  In other words, the issue need not be "significant" to be protected by the Anti-SLAPP statute; it is enough that it is one in which the public takes interest.[39]  "The definition of 'public interest' within the meaning of the Anti-SLAPP statute has been broadly construed to include . . . private conduct that impacts a broad segment of society . . . ."[40]

Here, the challenged speech related to the First NANO Lawsuit, which was one of multiple lawsuits filed arising out of a well-publicized controversy involving the burgeoning growth of cryptocurrency and whether coins created and distributed by start-up companies (such as NANO) were subject to, or exempt from, securities regulation.  Under the plain language of section 425.16(e)(1), (2), and (3), as well as the case law interpreting those provisions, all communications and communicative acts performed by attorneys as part of their representation of clients in and reflecting a judicial proceeding are *per se* protected as speech and petition activity under the anti-SLAPP statute.[41]  As one California Superior Court Judge even noted when evaluating an Anti-SLAPP statute Motion to Strike: "That's the whole purpose of the Anti-SLAPP statute – to protect people who are talking to reporters, particularly in connection with lawsuits.  It's pretty well a slam dunk."[42]

---

[38] Cal. Code Civ. Proc. § 425.16(a).  *See also*, *Jarrow*, 31 Cal.4th at 735.

[39] *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal.App.4th 1027, 1042, 72 Cal.Rptr.3d 210 (2008).

[40] *Du Charme v. Int'l Brotherhood of Electrical Workers*, 110 Cal.App.4th 107, 115 (2003).

[41] *See*, *Rusheen v. Cohen*, 37 Cal.4th 1048, 1056 (2006) (section 425.16 protects "communicative conduct such as the filing, funding, and prosecution of a civil action," as well as any communications or conduct "by attorneys in representing clients in litigation"); *Briggs*, *supra*, 19 Cal.4th at 1111-1116 (filing or promoting a lawsuit arises from defendant's exercise of petition rights and extends to legal representatives); *Thayer v. Kabateck, Brown & Kellner LLP*, 207 Cal.App.4th 141, 157-158 (2012).

[42] *See*, Morgan Van Buren, *Defamation Suit Defeated With 'Slam Dunk' Anti-SLAPP Defense*, Tyson & Mendes blog (May 6, 2015), https://www.tysonmendes.com/blog-slam-dunk/ (summarizing April 16, 2015 ruling in *Healthsmart Pacific, Inc. v. Kabateck*, Superior Court - State of California - County of Los Angeles - Case No. BC566549, dismissing SLAPP suit and entering for defendant an award of attorneys' fees and costs).

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENDANT DAVID C. SILVER's MOTION FOR ATTORNEYS' FEES AND SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11 AGAINST: (1) PLAINTIFFS NANO FOUNDATION, LTD. AND COLIN LEMAHIEU AND (2) RYAN M. LAPINE, ESQ., JOSHUA H. HERR, ESQ., AND PIERCE, ROSENFELD, MEYER & SUSSMAN, LLP

If the defendant shows that a challenged cause of action arises out of protected activity, the plaintiff then has the burden to demonstrate a probability of prevailing on the claim.[43]   To satisfy this burden, the plaintiff must "demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated. The court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment.  If not, the claim is stricken."[44]

In the instant matter, it is apparent that Attorney Silver's challenged statements arise from activity protected by the anti-SLAPP statute.  His statements -- made on subjects of public interest -- were made in furtherance of his right of petition or free speech and under the shield provided to communications relating to judicial proceedings.  Moreover, it is clearly improbable that Plaintiffs will prevail on the claims alleged in their lawsuit.

### 1. Prong One of the Anti-SLAPP Statute is Satisfied: The Challenged Claims Arise from Activity Protected by the Anti-SLAPP Statute

The NANO FOUNDATION, LTD. and COLIN LEMAHIEU cannot plausibly deny the direct relationship of their Complaint to the subject matter of the First NANO Lawsuit and the Second NANO Lawsuit.  Moreover, the topics described by Attorney Silver at the Blockchain Law Summit of the XRB investors/victims' claims indisputably involve matters of "public interest or concern."[45]   The supposedly offending communications relate to and arise from the First NANO Lawsuit and presumably the putative class victims' actions seeking redress for the NANO Core Team's acts and omissions relating to the development, promotion, and sale of XRB.  Moreover, the topics were "newsworthy" enough for Attorney Silver to be asked to speak about them at a legal blockchain technology conference and to have his comments published on YouTube to a narrow audience of

---

[43] *Jarrow Formulas, Inc. v. LaMarche*, 31 Cal.4th 728, 733 (2003).

[44] *Baral v. Schnitt*, 1 Cal.5th 376, 396, 205 Cal.Rptr.3d 475, 376 P.3d 604 (2016).

[45] *Ampex Corp. v. Cargle*, 128 Cal.App.4th 1569, 1579 (2005) (holding that to prevail on claims for defamation involving an issue of "public interest," plaintiff must prove "actual malice" under section 425.16).

interested viewers.  As noted above, one court has somewhat tautologically stated that "'an issue of public interest' . . . is any issue in which the public is interested."[46]

Accordingly, the anti-SLAPP statute applies to require judicial screening of all three of Plaintiffs' asserted "defamation," "libel," and "business tort" causes of action.

### 2.   Under Prong Two of the Anti-SLAPP Suit Statute, Plaintiffs Cannot Satisfy Their Burden of Proving the "Probability of Prevailing" on Any Cause of Action Alleged in the Complaint

"To show a probability of prevailing for purposes of section 425.16 [under the second prong], a plaintiff must 'make a prima facie showing of facts which would, if proved at trial, support a judgment in plaintiffs favor."[47]  "'[T]he plaintiff 'cannot simply rely on the allegations in the complaint' . . . .' Rather, plaintiffs showing of facts must consist of evidence that would be admissible at trial.  'Thus, declarations that lack foundation or personal knowledge, or that are argumentative, speculative, impermissible opinion, hearsay, or conclusory are to be disregarded.'[48]

The plaintiffs' "pleadings merely frame the issues to be decided."[49]  "Unlike demurrers or [ordinary] motions to strike, which are designed to eliminate sham or facially meritless allegations, at the pleading stage a SLAPP motion, like a summary judgment motion, *pierces* the pleadings and requires an evidentiary showing."[50]  The SLAPP motion is not necessarily an all-or-nothing proposition; the statute specifically permits dismissal of less than all claims asserted.  Plaintiffs therefore must prove the "probability" of success on each and every cause of action alleged.[51]  The NANO FOUNDATION, LTD. and COLIN LEMAHIEU cannot meet their burden on any cause of action in their Complaint.

---

[46] *Nygard, Inc*, 159 Cal.App.4th at 1027.

[47] *ComputerXpress, Inc. v. Jackson*, 93 Cal.App.4th 28 993, 1010 (2001).

[48] *Gilbert v. Sykes*, 147 Cal.App.4th 13, 26 (2007); *Alpha & Omega Dev. Co. LP v. Whillock Contracting, Inc*., 200 Cal.App.4th 656, 664 (2011) (emphasis added).

[49] *Church of Scientology v. Wollersheim*, 42 Cal.App.4th at 635.

[50] *Simmons v. Allstate Ins. Co*., 92 Cal.App.4th 1068, 1073 (2001) (italics in original).

[51] *See*, *e.g.*, *Computer Xpress*, 93 Cal.App.4th at 1019-1020 (five out of nine claims dismissed).

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENDANT DAVID C. SILVER's MOTION FOR ATTORNEYS' FEES AND SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11 AGAINST: (1) PLAINTIFFS NANO FOUNDATION, LTD. AND COLIN LEMAHIEU AND (2) RYAN M. LAPINE, ESQ., JOSHUA H. HERR, ESQ., AND PIERCE, ROSENFELD, MEYER & SUSSMAN, LLP

### a. Plaintiffs' Defamation Claims (Counts I and II) Are Meritless

Plaintiffs premise their defamation claim on the assertion that the comments made by Attorney Silver at the Blockchain Law Summit about the First NANO Lawsuit are not protected by any litigation privilege or other privilege shielding Attorney Silver from liability. Plaintiffs are mistaken. "The absolute privilege attaches to any publication that has any reasonable relation to the action and is made to achieve the objects of the litigation, even though published outside the courtroom and no function of the court or its officers is involved."[52] When speaking to the public about the First NANO Lawsuit, Attorney Silver's "communications with 'some relation' to judicial proceedings' are 'absolutely immune from tort liability' by [Cal. Civil Code § 47(b)'s] litigation privilege."[53] "It is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards."[54]

The Supreme Court has held countless times that the broad scope of the litigation privilege extends to "preliminary conversations and interviews" having *some relation to* contemplated legal actions . . . communications enabling parties and attorneys to "marshal their evidence" . . . "the privilege extends to 'steps taken prior' to judicial proceedings" . . . and communications by lawyers involving pending or "potential court actions" . . . ."[55]

"For well over a century, communications with 'some relation' to judicial proceedings have been absolutely immune from tort liability by the privilege codified as section 47(b)" of the California Civil Code."[56] This absolute immunity from suit encompasses any tort cause of action alleged by the NANO FOUNDATION, LTD. and COLIN LeMAHIEU for **defamation** (including the "false light"

---

[52] *Rosenthal v. Irell & Manella*, 135 Cal.App.3d 121, 126 (1982), citing *Pettit v. Levy*, 28 Cal.App.3d 484, 489 (1972).

[53] *Rubin v. Green*, 4 Cal.4th 1187, 1193 (1993).

[54] *Rusheen*, 37 Cal.4th at 1057.

[55] *Rubin*, 4 Cal.4th at 1194-1195, citing *Pettit v. Levy*, 28 Cal.App.3d at 490; *Rosenthal*, 135 Cal.App.3d at 126, among other cases.

[56] *Rubin*, 4 Cal.4th at 1193.

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENDANT DAVID C. SILVER's MOTION FOR ATTORNEYS' FEES AND SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11 AGAINST: (1) PLAINTIFFS NANO FOUNDATION, LTD. AND COLIN LeMAHIEU AND (2) RYAN M. LAPINE, ESQ., JOSHUA H. HERR, ESQ., AND PIERCE, ROSENFELD, MEYER & SUSSMAN, LLP

1  variant) and ***intentional interference with business or economic relations***. Indeed, "the only exception

2  to [the] application of [section 47] to tort suits has been for malicious prosecution actions."[57]

3      The anti-SLAPP procedure supplements the privileges embodied in California Civil Code § 47

4  and the *Noerr-Pennington* doctrine that uphold free exercise of First Amendment rights, and bar

5  meritless actions against opposing counsel brought by adverse litigants, like this one.[58]

6      "A 'fair and true' report of a judicial proceeding (*e.g.*, the First NANO Lawsuit) is absolutely

7  privileged."[59] Even if that were not so obviously apparent, newsworthy reports alerting *other* potential

8  victims of serious "public issues" concerning their safety in the "public forum" of television and radio

9  broadcasts -- and, in our modern world, online broadcast media like YouTube -- require Plaintiffs to

10 prove the "falsity" of the publication under the *actual malice standard*.[60] Evaluating the "merits" prong

11 of a SLAPP motion, "courts must consider the pertinent burden of proof in ascertaining whether the

12 plaintiff has shown a probability of prevailing."[61] In the SLAPP context, the limited public figure who

13 sues for defamation must establish a probability that he or she can produce *clear and convincing*

14 *evidence* of actual falsity or defendant's reckless disregard for the truth.[62]

15     On this record, there was (and is) ample evidence establishing involvement by the NANO Core

16 Team (including COLIN LEMAHIEU) in the harm to XRB investors described in the First NANO

---

[57] *Id*. at 1194.

[58] *Briggs*, 19 Cal.4th at 1115-1116, citing *Rubin*; *Ludwig v. Superior Court*, 37 Cal.App.4th 8, 21 (1995).

[59] *Lafayette Morehouse, Inc. v. Chronicle Publishing Co.*, 37 Cal.App.4th 855, 870 (1995).

[60] *Ampex Corp.,* 128 Cal.App.4th 1569, 1576-1577 (plaintiff is a "limited public figure" for purposes of his defamation action when claim involves a "public issue" broadcast in a "public forum").

[61] *Id.* at 1578.

[62] *Id.* at 1577.

16

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENDANT DAVID C. SILVER's MOTION FOR ATTORNEYS' FEES AND SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11 AGAINST: (1) PLAINTIFFS NANO FOUNDATION, LTD. AND COLIN LEMAHIEU AND (2) RYAN M. LAPINE, ESQ., JOSHUA H. HERR, ESQ., AND PIERCE, ROSENFELD, MEYER & SUSSMAN, LLP

Lawsuit.[63]   Attorney Silver gave a fair account of the underlying lawsuit to the audience members attending the Blockchain Law Summit.  Plaintiffs' quibbling about the truth and precision of Attorney Silver's descriptions of the facts underlying and surrounding the First NANO Lawsuit is misplaced, as all that is required for his statements to be privileged is a "fair and true" communication of the allegations in the lawsuit.  "'Fair and true' in this context does not refer to the truth or accuracy of the matters asserted in the judicial proceedings, but rather to the accuracy of the challenged statements with respect wo what occurred in the judicial proceedings."[64]   In other words, the Court's concern is not with the merits of the First NANO Lawsuit or the truth of Attorney Silver's statements at the Blockchain Law Summit; rather, the focus must be on the extent to which Attorney Silver accurately conveyed the substance -- even without exacting precision -- of the allegations made in the First NANO Lawsuit.[65]

Like other "paradigm SLAPP" suits, there is no evidence of "falsity" in Attorney Silver's comments; and Plaintiffs cannot remotely sustain their actual malice burden of proof.[66]   Therefore, Plaintiffs' cannot sustain the first and second causes of action in their Complaint.

### b.  <u>Plaintiffs' Trade Libel Claim (Count III) Is Meritless</u>

Just as Plaintiff LEMAHIEU's defamation claims lack merit, so too is Plaintiff NANO FOUNDATION, LTD.'s claim for "trade libel" (Count III) frivolous and unsustainable.  Attorney Silver never once mentioned the NANO FOUNDATION, LTD. during his presentation.  Moreover, as noted above, the protected comments made by Attorney Silver were about events and omissions that

---

[63] It is less clear how, if at all, the NANO FOUNDATION, LTD. -- which was formed **after** the events of which Attorney Silver spoke at the May 2018 conference -- was involved.  Attorney Silver never mentioned the NANO FOUNDATION, LTD. during his Blockchain Law Summit presentation, nor is it apparent what standing the NANO FOUNDATION, LTD. has to complain of statements made during that presentation.

[64] *Healthsmart Pacific, Inc. v. Kabateck*, 7 Cal.App.5th 416, 434 (2016).

[65] *Id*. (accepting statements by attorney to media about ongoing litigation because those statements were "substantially similar" to those alleged in the lawsuit of which the attorney was speaking).

[66] *Lafayette Morehouse*, 37 Cal.App.4th at 864-865; *Ampex Corp*., 128 Cal.App.4th at 1579; *Seelig v. Infinity Broadcasting Corp.*, 97 Cal.App.4th 798, 809-812 (2002) (opposition could not meet the "provably false" test).

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENDANT DAVID C. SILVER's MOTION FOR ATTORNEYS' FEES AND SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11 AGAINST: (1) PLAINTIFFS NANO FOUNDATION, LTD. AND COLIN LEMAHIEU AND (2) RYAN M. LAPINE, ESQ., JOSHUA H. HERR, ESQ., AND PIERCE, ROSENFELD, MEYER & SUSSMAN, LLP

took place **before** the NANO FOUNDATION, LTD. even existed; and there is no evidence that those comments were made with any malice toward the never-named NANO FOUNDATION, LTD.[67] Additionally, although "under California law, 'a cause of action for damages for trade libel requires pleading and proof of special damages in the form of pecuniary loss,'"[68] the NANO FOUNDATION, LTD. merely makes vague allegations that it "suffered direct harm" that "exceeds the $75,000 jurisdictional limits of this court."[69]

    In short, Count III of Plaintiffs' Complaint is due to suffer the same fate as Counts I and II: being stricken under Cal. Code Civ. Proc. § 425.16 for lacking any merit and being unable to sustain a favorable judgment in Plaintiffs' favor.

    **c.**   **Plaintiffs' "Business Interference" Claim (Count IV) Is Meritless**

    Lastly, the same privileges and constitutionally-heightened burdens of proof governing Plaintiffs' defamation and libel claims also govern Plaintiff COLIN LEMAHIEU's claim for "Intentional Interference with Prospective Economic Advantage" (Count IV).[70] Thus, Count IV of the Complaint is ripe for being stricken along with the other causes of action asserted therein.

    Because the allegedly offending statements upon which Plaintiffs rest their claims are absolutely immune from tort liability by Cal. Civil Code § 47(b)'s litigation privilege, the claims and other legal contentions set forth in the Complaint are not warranted by existing law or by a non-

---

[67] *Optinrealbig.com, LLC v. Ironport Sys., Inc.*, 323 F.Supp.2d 1037, 1049 (N.D. Cal. 2004) ("Without even a hint of malice, it is difficult to say that [the plaintiff] has a likelihood of prevailing on the merits of its trade libel claim.").

[68] *Isuzu Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F.Supp.2d 1035, 1047 (C.D. Cal. 1998) ("A bare allegation of the amount of pecuniary loss is insufficient for the pleading of a trade libel claim.").

[69] Complaint at ¶¶ 93, 94.

[70] *Rubin,* 4 Cal.4th. at 1195-1196; citing *Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118, 1130-1131 (1990) (absolute privilege barred action alleging defendants wrongfully induced others to pursue colorable legal claims tortiously interfering with plaintiffs economic relations); *Kibler v. No. Inyo County Local Hosp. Dist.*, 39 Cal.4th 192, 197 (2006) (tortious interference/defamation action was a SLAPP).

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENDANT DAVID C. SILVER's MOTION FOR ATTORNEYS' FEES AND SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11 AGAINST: (1) PLAINTIFFS NANO FOUNDATION, LTD. AND COLIN LEMAHIEU AND (2) RYAN M. LAPINE, ESQ., JOSHUA H. HERR, ESQ., AND PIERCE, ROSENFELD, MEYER & SUSSMAN, LLP

Case No. 2:19-cv-04237-SVW-PJW

frivolous argument for extending, modifying, or reversing existing law or for establishment of new law.

Therefore, sanctions are appropriate under Fed.R.Civ.P. 11(b)(1) and 11(b)(2).

### B. __The Factual Contentions in the Complaint Have No Evidentiary Support, as the Complaint is Barred by the September 2018 Settlement Agreement that Resolved the First NANO Lawsuit__

The Complaint alleges that public, Constitutionally-protected comments made by Attorney

Silver in May 2018 when discussing the First NANO Lawsuit have harmed Plaintiffs because those

comments were heard by unidentified "industry peers [of Plaintiffs], investors in cryptocurrency, and

press who report on the industry."[71]  **However, Plaintiffs explicitly released all claims concerning

Attorney Silver's May 2018 comments** when they (or, in the case of NANO FOUNDATION, LTD.,

its related corporate entity) executed the September 2018 Settlement Agreement that resolved the First

NANO Lawsuit, *to wit*:

> *4. **Mutual General Release**: Each Party hereby remises, releases,*
> *acquits, satisfies, and forever discharges each and every other Party*
> ***(including:** (i) with regard to each Party who is a natural person, that*
> *Party's guardians, successors, assigns, heirs, executors, administrators,*
> *trustees, accountants, and insurers, and (ii) with regard to each Party*
> *which is not a natural person, each such Party's past and present parent,*
> *subsidiary, affiliated, related, or predecessor entities, their successors*
> *and assigns, and **any** and **all** of **each** such **Party's** **past** and **present***
> *officers, directors, **agents**, accountants, insurers, servants, employees,*
> *shareholders, members, and partners, all of the foregoing in (i) and (ii)*
> ***hereinafter collectively referred to as the "Releasees"), of and from any***
> ***and all, and all manner of, claims, actions, causes of action, suits,***
> ***debts, sums of money, accounts, reckonings, contracts, controversies,***
> ***agreements, promises, damages, and demands whatsoeve**r, in law or in*
> ***equity**, which each Party had or now has, or which any successor or*
> *assign of each Party hereafter can, shall or may have, against any of the*
> *Releasees for, upon, or by reason of any matter, cause or thing*
> *whatsoever, from the beginning of the world to the date of this*
> *Agreement, whether known or unknown, direct or indirect, vested or*
> *contingent. * * ***

(emphasis added).

---

[71] Complaint at ¶ 41.

19

To the extent Plaintiffs argue that the instant Complaint escapes the Settlement Agreement because it concerns harms that occurred after the date of the release, no such allegations are included in the Complaint. Moreover, the Settlement Agreement makes clear that the Release covers all future claims for harm related to Attorney Silver's May 2018 comments:

> *4.* ***Mutual General Release: Each Party hereby remises, releases, acquits, satisfies, and forever discharges each and every other Party*** *(including: (i) with regard to each Party who is a natural person, that Party's guardians, successors, assigns, heirs, executors, administrators, trustees, accountants, and insurers, and (ii) with regard to each Party which is not a natural person, each such Party's past and present parent, subsidiary, affiliated, related, or predecessor entities, their successors and assigns, and any and all of each such Party's past and present officers, directors, agents, accountants, insurers, servants, employees, shareholders, members, and partners, all of the foregoing in (i) and (ii) hereinafter collectively referred to as the "Releasees"),* ***of and from any and all, and all manner of, claims, actions, causes of action, suits, debts, sums of money, accounts, reckonings, contracts, controversies, agreements, promises, damages, and demands whatsoever, in law or in equity, which each Party had or now has, <u>or which any successor or assign of each Party hereafter can, shall or may have, against any of the Releasees</u>*** *for, upon, or by reason of any matter, cause or thing whatsoever, from the beginning of the world to the date of this Agreement, whether known or unknown, direct or indirect, vested or contingent.* * * *

(emphasis added).

Plaintiffs were represented by counsel in negotiating the Settlement Agreement that concluded the First NANO Lawsuit; thus, there can be no dispute that the Settlement Agreement is valid and enforceable and that each party received the benefit of its bargain (until Plaintiffs breached the release

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENDANT DAVID C. SILVER's MOTION FOR ATTORNEYS' FEES AND SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11 AGAINST: (1) PLAINTIFFS NANO FOUNDATION, LTD. AND COLIN LEMAHIEU AND (2) RYAN M. LAPINE, ESQ., JOSHUA H. HERR, ESQ., AND PIERCE, ROSENFELD, MEYER & SUSSMAN, LLP

by filing this lawsuit).[72]  As such, the Settlement Agreement bars and requires outright dismissal of this Complaint.[73]

When evaluating the allegations in the Complaint alongside the release contained in the Settlement Agreement, it is apparent that the factual contentions in the Complaint are not supported by the evidence; and sanctions under Fed.R.Civ.P. 11(b)(3) are warranted.

### C. Plaintiffs' Counsel Failed to Conduct a Reasonable and Competent Inquiry before Signing and Filing the Complaint

"The second question in the Rule 11 analysis is whether 'an attorney, after conducting an objectively reasonable inquiry into the facts and law, would have found the complaint to be well-founded.'"[74]  Inherent within that inquiry is whether the attorney did, in fact, conduct an objectively reasonable investigation into the facts and law before filing the Complaint.  In the instant matter, Plaintiffs' Counsel did not conduct a reasonable or competent inquiry; and Rule 11 sanctions are therefore appropriate.

On June 3, 2019, undersigned counsel for Attorney Silver conducted a good faith "meet and confer" telephonic conference with Plaintiffs' Counsel to discuss, among other things, the apparent lack of legal and factual support for the Complaint filed by Plaintiffs in the instant lawsuit.[75]  During

---

[72] *See*, *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 517 (1994) (holding it is a "function of contract law" to enforce the obligations parties voluntarily assume); *see also Melchior v. New Line Productions, Inc.*, 131 Cal.Rptr.2d 347, 354–55 (Cal. Ct. App. 2003) (producer estopped from refusing to abide by other aspects of an agreement after accepting the contract's benefits and making the agreed upon movie).

[73] *Hernandez v. Bd. of Educ.*, 126 Cal.App.4th 1161, 1176-77 (2004) ("A settlement agreement is simply a contract . . . .  The court is powerless to impose on the parties more restrictive or less restrictive or different terms than those contained in their settlement agreement."); *Grillo v. California*, 2006 WL 335340 (N.D. Cal. Feb. 14, 2006) (granting motion to dismiss based upon release in prior settlement agreement); *aff'd sub nom. Grillo v. California Dep't of Corr.*, 308 F. App'x 63 (9th Cir. 2009); *Jinkins v. Temecula Towne Center Associates LLC*, 2019 WL 1652086, at *2 (C.D. Cal. Feb. 15, 2019) (dismissing with prejudice case barred by release in settlement agreement from prior litigation).

[74] *Urenia*, 2015 WL 3378247 at *3, citing *Holgate*, 425 F.3d at 677.

[75] *See*, July 3, 2019 Declaration of F. Jason Seibert ("Seibert Decl."), filed in conjunction herewith, at ¶4.

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENDANT DAVID C. SILVER's MOTION FOR ATTORNEYS' FEES AND SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11 AGAINST: (1) PLAINTIFFS NANO FOUNDATION, LTD. AND COLIN LeMAHIEU AND (2) RYAN M. LAPINE, ESQ., JOSHUA H. HERR, ESQ., AND PIERCE, ROSENFELD, MEYER & SUSSMAN, LLP

that telephone conference, Plaintiffs' Counsel Ryan M. Lapine, Esq. conceded he was unaware that when the parties to the First NANO Lawsuit -- including COLIN LeMAHIEU and his Nano corporate alter ego -- resolved that putative class action, they entered into the Settlement Agreement that included a "Mutual General Release."[76]  It is objectively unreasonable for Plaintiffs' Counsel to have failed to inquire of his/its client whether resolution of the $170 million putative class action lawsuit (*i.e.*, the First NANO Lawsuit) included a settlement agreement or a release of any claims related thereto -- a release that would outright bar the claims Plaintiffs' Counsel filed for Plaintiffs in this newly-filed lawsuit.  "Even the most cursory legal inquiry would have revealed" the existence of the Settlement Agreement and release, and Plaintiffs' Counsel's ignorance of that Settlement Agreement and release demonstrates that Plaintiffs' Counsel "failed to conduct an adequate investigation before filing the complaint."[77]   As a result, Plaintiffs' Counsel has violated Rule 11; and sanctions thereunder are warranted.

### D.  Plaintiffs' Complaint Warrants Monetary Sanctions

Rule 11(c)(4) sets forth the types and amounts of sanctions that the Court may impose:

> A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated.  The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.[78]

Plaintiffs and Plaintiffs' counsel are responsible for burdening the Court and Attorney Silver with frivolous claims against Attorney Silver and for requiring Attorney Silver's undersigned counsel to expend fees defending Attorney Silver against those claims.  Plaintiffs and their counsel were given ample opportunity to correct the errors that sit at the heart of the Complaint, but instead are choosing

---

[76] *Id.*

[77] *Holgate*, 425 F.3d at 677 (Rule 11 sanctions entered against counsel).

[78] Fed.R.Civ.P. 11(c)(4).

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENDANT DAVID C. SILVER's MOTION FOR ATTORNEYS' FEES AND SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11 AGAINST: (1) PLAINTIFFS NANO FOUNDATION, LTD. AND COLIN LeMAHIEU AND (2) RYAN M. LAPINE, ESQ., JOSHUA H. HERR, ESQ., AND PIERCE, ROSENFELD, MEYER & SUSSMAN, LLP

Case No. 2:19-cv-04237-SVW-PJW

to continue prosecuting Plaintiffs' claim anyway.  To deter such frivolous filings, they should be sanctioned for the cost resulting from these groundless allegations.[79]

## V.  **REQUEST FOR WITHDRAWAL OF COMPLAINT REFUSED**

On June 10, 2019, pursuant to Fed.R.Civ.P. 11(c)(2), counsel for Attorney Silver notified Plaintiffs and Plaintiffs' counsel by service of this motion that Plaintiffs' maintenance of their Complaint was improper, legally insufficient, without basis in law or fact, and frivolous.  Attorney Silver's counsel demanded that the Complaint be withdrawn and voluntarily dismissed with prejudice. Plaintiffs and Plaintiffs' counsel failed to respond, correct, or dismiss the Complaint within twenty-one (21) days after service of the demand letter and service of a copy of the motion upon them.[80]

## VI.  **CONCLUSION**

For all the foregoing reasons, Defendant DAVID C. SILVER, an individual, respectfully requests entry of an Order:

(a)  imposing sanctions pursuant to Fed.R.Civ.P. 11 in the form of an award to DAVID C. SILVER of reasonable attorneys' fees and costs to be jointly and severally assessed upon and paid by Plaintiffs NANO FOUNDATION, LTD. and COLIN LEMAHIEU and their counsel, Ryan M. Lapine, Esq., Joshua H. Herr, Esq., and the law firm of Pierce, Rosenfeld, Meyer & Sussman, LLP; and

(b)  awarding such other relief as the Court deems just and proper.

Respectfully submitted,

By:   /s/ Brandon S. Reif
Brandon S. Reif, Esq. (State Bar No. 214706)
E-Mail: BReif@ReifLawGroup.com
**REIF LAW GROUP, P.C.**
1925 Century Park East - Suite 1700
Los Angeles, California 90067
Telephone: (310) 494-6500

---

[79] *See*, *Ass'n of Holocaust Victims for Restitution of Artwork & Masterpieces v. Bank Aus. Creditanstalt*, 2005 WL 3099592, at *7 (S.D.N.Y. Nov. 17, 2005) ("A reasonable accurate measure of harm [a litigant] has done is what he has cost his opponent.  This is not an unreasonable method to deter spurious suits and wasteful trial tactics.").

[80] *See*, Seibert Decl. at ¶ 5 and Exhibit "A" thereto.

23

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENDANT DAVID C. SILVER's MOTION FOR ATTORNEYS' FEES AND SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11 AGAINST: (1) PLAINTIFFS NANO FOUNDATION, LTD. AND COLIN LEMAHIEU AND (2) RYAN M. LAPINE, ESQ., JOSHUA H. HERR, ESQ., AND PIERCE, ROSENFELD, MEYER & SUSSMAN, LLP

Case No. 2:19-cv-04237-SVW-PJW

F. Jason Seibert, Esq.
 (*Pro Hac Vice application forthcoming*)
E-Mail: Jason@seibert-law.com
**SEIBERT LAW**
6007 Greenway Manor Lane
Spring, Texas 77373
Telephone: (971) 235-5764

*Attorneys for Defendant David C. Silver*

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that a copy of the foregoing was electronically filed with the Clerk of Court on this ___3rd___ day of July 2019 by using the CM/ECF system and that a true and correct copy will be served <u>via</u> <u>electronic</u> <u>mail</u> to: **RYAN M. LAPINE, ESQ. and JOSHUA H. HERR, ESQ.**, PIERCE ROSENFELD, MEYER & SUSSMAN, LLP, *Counsel for Plaintiffs*, 232 North Canon Drive, Beverly Hills, CA 90210-5302; E-mail: RLapine@rmslaw.com; JHerr@rmslaw.com.

_____/s/ Brandon S. Reif_____
BRANDON S. REIF

24

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENDANT DAVID C. SILVER's MOTION FOR ATTORNEYS' FEES AND SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11 AGAINST: (1) PLAINTIFFS NANO FOUNDATION, LTD. AND COLIN LEMAHIEU AND (2) RYAN M. LAPINE, ESQ., JOSHUA H. HERR, ESQ., AND PIERCE, ROSENFELD, MEYER & SUSSMAN, LLP