1  RYAN M. LAPINE, ESQ. (Cal. Bar No. 239316)
   *rlapine@rmslaw.com*
2  JOSHUA H. HERR, ESQ. (Cal. Bar No. 301775)
   *jherr@rmslaw.com*
3  ROSENFELD, MEYER & SUSMAN LLP
   232 North Canon Drive
4  Beverly Hills, California 90210-5302
   Telephone:  (310) 858-7700
5  Facsimile:  (310) 860-2430

6  Attorneys for Plaintiffs
   NANO FOUNDATION, LTD. and
7  COLIN LeMAHIEU

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11  NANO FOUNDATION, LTD., a New      )   Case No. 2:19-cv-04237 DDP (PJWx)
    York non-profit corporation; and  )
12  COLIN LeMAHIEU, an individual,    )   **PLAINTIFFS NANO**
                                       )   **FOUNDATION, LTD. AND COLIN**
13              Plaintiffs,            )   **LeMAHIEU'S OPPOSITION TO**
                                       )   **DEFENDANT DAVID C. SILVER'S**
14          vs.                        )   **MOTION TO DISMISS**
                                       )   **COMPLAINT**
15  DAVID C. SILVER, an individual,   )
                                       )   Date:   August 5, 2019
16              Defendant.             )   Time:   1:30 p.m.
                                       )   Judge:  Hon. Stephen V. Wilson
17                                     )   Ctrm:   10A - 10th Floor
                                       )
18  _____ )

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
**ROSENFELD,
MEYER &
SUSMAN LLP**

520574.02

PLAINTIFFS' OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION TO
DISMISS COMPLAINT

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................. ii

I.    INTRODUCTION ...................................................................1

II.   STATEMENT OF ADDITIONAL FACTS ..................................................3

III.  ARGUMENT ........................................................................6

    A.   The Applicable Legal Standard Requires this Court to Accept All Well-Pleaded Allegations As True And Disregard Silver's "Factual" Allegations ..............................6

    B.   The Settlement Agreement Expressly – and Deliberately – Did Not Bar Claims Against Defendant Silver ....................................7

    C.   Silver's Motion Beyond His Release Argument Should Be Denied as He Failed to Comply with Local Rule 7-3 ........................10

    D.   The Litigation Privilege Does Not Apply ...................................12

        1.   The Litigation Privilege Does Not Apply to LeMahieu's First Claim for Defamation *Per Se* .....................12

        2.   The Litigation Privilege Does Not Apply To LeMahieu's Second Claim for Defamation *Per Quod* ..................................................................15

        3.   The First Amendment Does Not Shield These Statements .....................................................16

    E.   Nano's Trade Libel Claim Is Not Infirmed .................................18

        1.   Nano Sufficiently Pled Each Element of Trade Libel .............18

        2.   Silver's Reference to Nano's Formation Date is Misplaced .................................................20

        3.   Silver's Statements Were Not Privileged ................................21

    F.   Silver's Attacks on Intentional Interference Lack Merit ................21

        1.   Silver's Statements are Neither Privileged nor Protected ...................................................21

        2.   LeMahieu's Claim For Intentional Interference Should Survive a Motion to Dismiss .........................22

        3.   Whether LeMahieu Owns RaiBlocks Has No Bearing on His Intentional Interference Claim ........................24

IV.   CONCLUSION ......................................................................25

LAW OFFICES
**ROSENFELD,
MEYER &
SUSMAN LLP**

i

PLAINTIFFS' OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION TO DISMISS COMPLAINT

## <u>TABLE OF AUTHORITIES</u>

Page(s)

### CASES

*Achal v. Gate Gourmet, Inc.*,
  114 F.Supp.3d 781 (N.D. Cal. 2015) ........................................................ 3, 7

*Alcatel-Lucent USA, Inc. v. Dugdale Commc'ns, Inc.*,
  No. CV 09-2140 PSG (JCx), 2009 WL 3346784, at *4
  (C.D. Cal. Oct. 13, 2009) ................................................................... 11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................................... 23

*Bohn v. Pharmavite, LLC*,
  No. CV 11-10430-GHK (AGRx), 2013 WL 4517173, at 1
  (C.D. Cal. Feb. 5, 2013) .................................................................... 11

*Carlucci v. Poughkeepsie Newspapers, Inc.*,
  450 N.Y.S.2d 54 (1982) ..................................................................... 16

*ComputerXpress, Inc. v. Jackson*,
  93 Cal.App.4th 993 (2001) ................................................................. 18

*Consol. Edison v. Northeast Utilities*,
  332 F.Supp.2d 639 (S.D.N.Y. 2004) ...................................................... 8

*Damabeh v. 7-Eleven, Inc.*,
  No. 5:12-CV-1739-LHK, 2013 WL 1915867,
  at *10 (N.D. Cal. May 8, 2013) ..................................................... 22, 23

*Diversified Management, Inc. v. Denver Post, Inc.*,
  653 P.2d 1103 (Colo. 1982). ............................................................... 18

*Dorsett v. Bd. of Trustees for State Colleges & Universities*,
  940 F.2d 121 (5th Cir. 1991). .............................................................. 17

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*,
  472 U.S. 749 (1985) ......................................................................... 22

*Erlich v. Etner*,
  224 Cal.App.2d 69 (1964) ............................................................. 19, 20

*Evans v. Sirius Computer Sols., Inc.*,
  No. 3:12-CV-46-AA, 2012 WL 1557294, at *3
  (D. Or. May 1, 2012) ........................................................................ 23

*FilmOn.com Inc. v. DoubleVerify Inc.*,
  7 Cal.5th 133 (2019) ......................................................................... 17

*GetFugu, Inc. v. Patton Boggs LLP*,
  220 Cal.App.4th 141 (2013) .......................................................... 14, 15

LAW OFFICES
**ROSENFELD,
MEYER &
SUSMAN LLP**

520548.01

ii

PLAINTIFFS' OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION TO
DISMISS COMPLAINT

*Goldline, LLC v. Regal Assets, LLC*,
    No. CV 14-03680 DDP (ASx), 2015 WL 1809301, at 5
    (C.D. Cal. Apr. 21, 2015) ................................................................. 18, 19

*Haworth v. Feigon*,
    623 A.2d 150 (Me. 1993) ........................................................................ 16

*Herbert v. Lando*,
    441 U.S. 153 (1979) .................................................................... 18, 21, 22

*In re Actrade Financial Technologies, Itd.*,
    424 B.R. 59 (S.D.NY 2009) ...................................................................... 8

*In re Ore Cargo, Inc.*,
    544 F.2d 80 [2d Cir. 1976] ...................................................................... 10

*Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*,
    12 F.Supp.2d 1035 (C.D. Cal. 1998) .................................................. 19, 20

*Kamfar v. New World Restaurant Group, Inc.*,
    347 F. Supp. 2d 38 (S.D. N.Y. 2004) ...................................................... 16

*Lawlor v. Gallagher Presidents' Report, Inc.*,
    394 F. Supp. 721 (S.D. N.Y. 1975) .......................................................... 16

*Lopez v. Wells Fargo Bank, N.A.*,
    No. SACV 16-01409 AG (KESx), 2016 WL 6088257, at *2
    (C.D. Cal. Oct. 17, 2016) ........................................................................ 10

*Lucent Technologies, Inc. v. Gateway, Inc.*,
    470 F.Supp.2d 1195 (S.D.CA 2007) .......................................................... 8

*Mann v. Quality Old Tim Serv., Inc.*,
    120 Cal.App.4th 90 (2004) ...................................................................... 18

*Mann v. Quality Old Time Serv., Inc.*,
    139 Cal.App.4th 328 (2006) .................................................................... 18

*Meadows v. Taft Broadcasting Co., Inc.*,
    470 N.Y.S.2d 205 (1983) ........................................................................ 16

*Milkovich v. Lorain Journal Co.* (1990)
    497 U.S. 1, 19–21 ............................................................................ 18, 22

*Moss v. U.S. Secret Service*,
    572 F.3d 962 (9th Cir. 2009) .............................................................. 20, 24

*N. Star Int'l v. Ariz. Corp. Comm'n*,
    720 F.2d 578 (9th Cir. 1983) .................................................................... 7

*New Show Studios LLC v. Needle*,
    No. 2:14-cv-01250-CAS, 2014 WL 2988271 (C.D.Cal. Jun.30, 2014) ...... 18

*Olin Corp. v. Consol. Aluminum Corp.*,
    5 F.3d 10 (2d Cir.1993) ............................................................................ 8

LAW OFFICES
**ROSENFELD,
MEYER &
SUSMAN LLP**

520548.01

iii

*Packaging Sys., Inc. v. PRC-Desoto Int'l, Inc.*,
　　268 F. Supp. 3d 1071 (C.D. Cal. 2017) ......................................................24

*Patsis v. Nicolia*,
　　120 A.D.3d 1326, 992 N.Y.S.2d 349 (2014) ...............................................10

*Quadrant Structured Prod. Co. v. Vertin*,
　　23 N.Y. 3d 549 16 N.E. 3d 1165 (2014) .....................................................10

*Rancho La Costa, Inc. v. Superior Court*,
　　106 Cal. App. 3d 646 (1980) .............................................................. 16, 17

*Rothman v. Jackson*,
　　49 Cal.App.4th 1134 (1996) ...................................................13, 15, 16, 21, 22

*Sage v. Hale*,
　　347 N.Y.2d 416 (1973) ............................................................................8

*Savage v. Pac. Gas & Elec. Co.*,
　　21 Cal.App.4th 434 (1993) ................................................................18, 22

*Shwarz v. United States*,
　　234 F.3d 428 (9th Cir. 2000) ....................................................................6

*Silberg v. Anderson*,
　　50 Cal.3d 205 (1990) ........................................13, 14, 15, 16, 21, 22

*Susan A. v. County of Sonoma*,
　　2 Cal.App.4th 88 (1991) ...............................................................13, 15

*UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*,
　　117 F. Supp. 3d 1092 (C.D. Cal. 2015) ..............................................23, 24

*United States v. Contra Costa County Water Dist.*,
　　678 F.2d 90 (9th Cir. 1982) ......................................................................7

*United States v. Ries*,
　　100 F.3d 1469 (9th Cir. 1996) ..................................................................9

*United States v. Ritchie*,
　　342 F.3d 903 (9th Cir. 2003) ...............................................................6, 20

*Vape Soc'y Supply Corp. v. Zeiadeh*,
　　No. SACV 16-01971 AG (FMx), 2017 WL 2919080, at 2
　　(C.D. Cal. Feb. 6, 2017) ......................................................................11

*Waldbaum v. Fairchild Publications, Inc.*,
　　627 F.2d 1287 (D.C. Cir. 1980) ..............................................................16

*Wells v. Shearson Lehman/American Exp., Inc.*,
　　526 N.E.2d 8 (NY Court of Appeals 1988) ..........................................8, 10

*Westside Ctr. Associates v. Safeway Stores 23, Inc.*,
　　42 Cal.App.4th 507 (1996) ..............................................................22, 23

LAW OFFICES
**ROSENFELD,
MEYER &
SUSMAN LLP**

520548.01

iv

PLAINTIFFS' OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION TO
DISMISS COMPLAINT

*Wright v. Coules* (1906)
  4 Cal.App. 343 ................................................................................... 19, 20

*Zilinskas v. Westinghouse Elec. Corp.,*
  248 A.D.2d 777, 669 N.Y.S.2d 703 (1998) ....................................... 8

## STATUTES AND RULES

California Civil Code § 47(b) ................................................ 13, 14, 15, 16

Fed. R. Civ. P. 1 ................................................................................... 11

Fed. R. Civ. P. 12(b)(6) ......................................................................... 7

Fed. R. Civ. P. 12(d) ............................................................................. 7

Local Rule 7-3 ......................................................... 5, 6, 10, 11, 12, 24

## MISCELLANEOUS

*Black's Law Dictionary* 352 (7th ed. 1999) ......................................... 10

Glen Banks, New York Contract Law § 10.13 [West's N.Y. Prac. Series 2006].... 10

New York General Obligations Law § 15–108(a) .................................... 8

LAW OFFICES
**ROSENFELD,
MEYER &
SUSMAN LLP**

520548.01

PLAINTIFFS' OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION TO
DISMISS COMPLAINT

## I.  **INTRODUCTION**

At a conference in May of 2018, Defendant David C. Silver went before a room filled with Plaintiff Colin LeMahieu's peers in the small cryptocurrency industry and, as a keynote speaker, told a series of fantastic lies intended to destroy LeMahieu's good name and humiliate him.  Silver stated that LeMahieu committed a brazen felony, an exit scam that stole $150,000,000.  He stated that LeMahieu faced active criminal charges in a Federal action and would be imprisoned if he did not return those funds.  He stated that LeMahieu lied in his divorce proceedings and divorced his wife because he decided he was too rich for her.  None of those statements were true.

LeMahieu did not commit a crime.  Further, there was no exit scam. LeMahieu did not own, work for, operate, or have any relationship with the Italian cryptocurrency exchange that crashed, nor did he ever encourage or facilitate any third-parties to use it.  Silver's statements that LeMahieu committed a criminal exit scam, induced third-parties to use an Italian exchange, endorsed it, and somehow himself stole or profited from it or those that used it were pure fiction.

LeMahieu has never been charged with a crime nor was he ever the subject of an active criminal case, much less a Federal one.  Silver spun that lie from whole cloth.  Silver's statements regarding LeMahieu's divorce, the allocation of his marital property, the reasons why that divorce occurred, and the disclosures made in LeMahieu's divorce were categorically false.  Moreover, as LeMahieu's divorce proceeded in Texas, the records that Silver detailed were not publicly available.  He could not have reviewed them.  He simply lied to disparage LeMahieu.

Silver further lied about a particular cryptocurrency, the Nano coin, declaring at the industry convention that it is an "alternative coin" and not a real coin.  He touted his legal credentials in making that statement.  Silver's statement was and remains false.  Plaintiff Nano Foundation, Ltd. ("Nano") is a non-profit that services the Nano coin.  Silver intended to devalue Nano's chief asset, the Nano coin, and

1   induce cryptocurrency investors, those present at the event, to refrain from investing
2   in it with his false statement.  He succeeded in doing so.

3       Silver's false statements have caused considerable damage.  LeMahieu's
4   reputation has been destroyed in his industry due to Silver's lies.  That the attorney
5   selected to speak on his industry's keynote panel falsely identified him as a criminal
6   who perpetrated and profited from a $150,000,000 scam, who divorced his wife for
7   outpacing her financially while making false disclosures in those proceedings, have
8   severely harmed his career prospects and business dealing and have caused
9   LeMahieu considerable shame and emotional distress.  Silver mischaracterized
10  Nano's signature product and chief asset as "an alternative coin", causing Nano
11  considerable six figure losses.  LeMahieu and Nano (collectively "Plaintiffs") filed
12  this action to remedy the wrongs caused by Silver's fantastic, public lies.

13      Unfortunately, as his Motion makes clear, Silver's lack of candor extends to
14  his pleadings before this Court.  Chiefly, Silver seeks to go beyond the Complaint
15  and have the Court consider a confidential settlement agreement the ("Settlement
16  Agreement").  It should not.  But if it does, that agreement does not support
17  dismissing the claims against Silver.

18  [redacted]
19  [redacted]
20  [redacted]
21  [redacted]
22  [redacted]
23  [redacted]
24  [redacted]
25  [redacted]
26  [redacted]
27  [redacted]
28  [redacted]

LAW OFFICES
ROSENFELD,
MEYER &
SUSMAN LLP

520574.02

2

PLAINTIFFS' OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION TO
DISMISS COMPLAINT

1 ███████████████████████████████████████████████

2 ████████████████████████████████████████████████

3 ████████████████████████████████████████████████

4 ████████████████

5  Silver failed to meet and confer regarding any aspect of his Motion other than

6 his release argument.  It should be denied for that reason alone.  Should the Court

7 consider it, it lacks merit.  Silver's privilege arguments that interlace his brief

8 misapply the law, ignore relevant standards, and do not in any way apply to the

9 statements at issue.  Put simply, there is no litigation privilege and there is no First

10 Amendment protection for accusations at industry conferences to non-litigation

11 participants falsely accusing a private individual of committing a crime, being a

12 crummy husband, lying in divorce filings, nor is there protection for intentionally

13 mischaracterizing the nature of a cryptocurrency.  Further, these lies were not

14 alleged or at issue in the Brola Litigation.  Silver's motion fails.

15 **II.**  **STATEMENT OF ADDITIONAL FACTS[1]**

16  <u>The Release Expressly Does Not Apply to Defendant Silver</u>

17 ████████████████████████████████████████████████████

18 ████████████████████████████████████████████

19 ██████████████████████████████████████████████

20 ████████████████████████████████████████████

21 █████████████████████████████████████████

22 ██████████████████████████████████████████████

23 ██████████████████████████████████████████████

24 ████████████████████████████████████████████████

25 ████████████████████████

26

27

28

---

[1]  These facts are included out of an abundance of caution to rebut the false factual allegations made by Defendant David C. Silver in his Motion.  Like those additional facts presented by Silver, and as detailed more fully, *infra*, they are not directly relevant to Mr. Silver's Motion under Rule 12(b)(6).  *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 793 (N.D. Cal. 2015)

LAW OFFICES
**ROSENFELD, MEYER & SUSMAN LLP**

520574.02

PLAINTIFFS' OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION TO DISMISS COMPLAINT

1    (Declaration of Peter Scoolidge ("Scoolidge Decl."), Ex. A

2    [Emphasis added].)



17   (Dkt. 15-2, p. 33 (Emphasis Added).)

LAW OFFICES
**ROSENFELD,
MEYER &
SUSMAN LLP**

520574.02

4

PLAINTIFFS' OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION TO
DISMISS COMPLAINT

1 ████████████████████████████████████████

2 ████████████████████████████████████████

3 ████████████████████████████████████████

4 ████████████████████████████████████████

5 ██████████████████████████████████

6 ████████████████████████████████

7       Silver is represented by counsel from Texas, F. Jason Seibert.  (Dkt. 15-1.)

8 Seibert is not a member of the California State Bar and has not applied to appear in

9 this action *pro hac vice*.  (*Id.*)  Per Local Rule 7-3, he met and conferred with

10 Plaintiffs' counsel to discuss this motion, at which time he represented that he is

11 "retired" and "does not really practice law anymore", but Silver is his friend.

12 (Declaration of Ryan M. Lapine ("Lapine Decl."), ¶ 2.)

13       Plaintiffs' counsel explained to Seibert that the Release, on its face, expressly

14 does not apply to Silver.  (*Id.* at ¶ 3.)  ████████████████████████

15 ████████████████████████████████████████

16 ████████████████████████████████████████

17 ████████████████████████████████████████

18 ████████████████████████████████████████

19 ██████████████████████████████████

20       In response, and when asked on what basis Silver could argue that the Release

21 released him, Seibert responded that he "likes to keep things loose" when meeting

22 and conferring.  (*Id.* at ¶ 4.)  He further stated that notwithstanding the terms of the

23 Release, Silver would still file a motion to dismiss.  (*Id.*)  When asked if Silver

24 would be moving to dismiss on grounds other than the Release, Seibert responded

25 "no".  (*Id.*; Declaration of Wajeeh Mahmood ("Mahmood Decl.")*, ¶ 2.)

26       <u>Silver Has Attempted to Mislead the Court</u>

27       Silver attempts to affirmatively mislead the Court in two material ways in his

28 Motion.  ████████████████████████████████



1 ████████████████████████████████████████████

2 ████████████████████████████████████████████

3 █████████████████████████████████████████████

4 █████████████████████████████████████████████

5 ████████████████████████

6 ██████████████████████████████████████████████

7 ████████████████████████████████████████

8 ██████████████████████████████████████████████

9 █████████████████████████████████████

10 █████████████████████████████████████████████

11 █████████████████████████████████████████████

12 ██████████████

13     This appears deliberate.  Seibert was made aware of these issues at length

14 during the Local Rule 7-3 meet and confer process.  (Lapine Decl., ¶ 3.)  Silver, in

15 turn, addressed them by literally redacting ████████████████████████

16 ████████████████████████████████████████████████████

17 This gives the appearance of bad faith and a lack of candor that falls below the

18 standards of this tribunal.

19 **III.   ARGUMENT**

20     **A.   The Applicable Legal Standard Requires this Court to Accept All**

21       **Well-Pleaded Allegations As True And Disregard Silver's**

22       **"Factual" Allegations**

23     In evaluating a motion to dismiss, a court must accept the plaintiff's factual

24 allegations in the complaint as true and construe them in the light most favorable to

25 the plaintiff.  *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).  A court

26 may only consider the complaint, documents incorporated by reference in the

27 complaint, and matters of judicial notice in deciding a motion to dismiss. *United*

28 *States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

LAW OFFICES
**ROSENFELD,
MEYER &
SUSMAN LLP**

6

520574.02

PLAINTIFFS' OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION TO
DISMISS COMPLAINT

1    Instead of attempting to argue his motion to dismiss within these well-known

2  standards, Silver fills his brief with extraneous, unsupported claims that appear

3  nowhere in the Complaint, are not incorporated into the Complaint, and which are

4  before the Court only as exhibits to a declaration Silver himself makes.  This is

5  categorically improper.  These items include a heavily – and deceptively – redacted

6  confidential settlement agreement and purported YouTube statistics that are hearsay

7  in the best light.  (Dkt. 15-2, Exs. C and D.)  Silver did not file a Request for

8  Judicial Notice, nor would this evidence be appropriate for judicial notice even if he

9  had followed proper procedure to bring these matters before the Court on a 12(b)(6)

10  motion.  *See, United States v. Contra Costa County Water Dist.*, 678 F.2d 90, 92

11  (9th Cir. 1982) ("affirming refusal to take judicial notice of the amount of a

12  settlement agreement").

13    Neither the allegations raised, nor the "evidence" attached by Silver to his

14  declaration may be considered.  Instead, the purpose of a Rule 12(b)(6) motion is

15  not to prematurely weigh evidence or competing factual claims, but rather to

16  evaluate the sufficiency of the facts alleged in a pleading, all of which must be

17  accepted as true.  *Achal, supra*, 114 F. Supp. 3d at 793 *citing N. Star Int'l v. Ariz.*

18  *Corp. Comm'n,* 720 F.2d 578, 581 (9th Cir. 1983).  The Complaint simply does not

19  address these items.  Furthermore, if the Court converts Silver's motion into a Rule

20  56 motion pursuant to Fed. R. Civ. P. 12(d) it should deny it because the Settlement

21  Agreement, as discussed herein, explicitly and deliberately does <u>not</u> release Silver.

22    **B.**  █████████████████████████████████

23  ██████████████████████████

24    As detailed above, the Court may not consider Silver's release argument on a

25  12(b)(6) Motion.  Should the Court wish to indulge Silver or convert his motion into

26  a Rule 56 Motion under Rule 12(d), Silver's release and waiver argument is

27  factually void and fully lacks merit.

28

LAW OFFICES
**ROSENFELD,
MEYER &
SUSMAN LLP**

7

520574.02

PLAINTIFFS' OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION TO
DISMISS COMPLAINT

1   "A release is a type of contract governed by principles of contract

2   law."   *Consol. Edison v. Northeast Utilities,* 332 F.Supp.2d 639, 646 (S.D.N.Y.

3   2004); *Zilinskas v. Westinghouse Elec. Corp.,* 669 N.Y.S.2d 703, 705 (1998).[2]  "In

4   determining the scope and validity of a release, courts should apply state law".  *Id.*

5   *citing Olin Corp. v. Consol. Aluminum Corp.,* 5 F.3d 10, 15 (2d Cir.1993) (stating

6   that even where release involves federal causes of action, courts should look to state

7   law in interpreting agreements). "[I]n interpreting the scope of the Release, the

8   Court must first begin with the context and entirety of the agreement as a whole."  *In*

9   *re Actrade Financial Technologies, Itd.*, 424 B.R. 59, 71 (S.D.NY 2009).   "New

10   York law considers the context as a key factor in interpreting a release."  *Lucent*

11   *Technologies, Inc. v. Gateway, Inc.*, 470 F.Supp.2d 1195, 1199 (S.D.CA 2007).

12   The New York General Obligations Law § 15–108(a) provides: "When a

13   release or a covenant not to sue or not to enforce a judgment is given to one of two

14   or more persons liable or claimed to be liable in tort for the same injury, or the same

15   wrongful death, it does not discharge any of the other tortfeasors from liability for

16   the injury or wrongful death unless its terms expressly so provide".  The

17   aforementioned statue means that a release must expressly indicate that it discharges

18   parties beyond those who contracted for the release, thereby "limiting the effect of a

19   release to that of the language it contains."  *Wells v. Shearson Lehman/American*

20   *Exp., Inc.*, 526 N.E.2d 8, 14 (NY Court of Appeals 1988).  A release is required to

21   "expressly designate by name or to otherwise specifically describe or identify those

22   other tort-feasors whom the releasor intends to release so as to demonstrate the clear

23   intent of the releasor."  *Sage v. Hale,* 347 N.Y.S.2d 416, 418-419 (1973).

24   ███████████████████████████████████████████████

25   ████████████████████████████████████████████

26

[2]

27   ████████████████████████████████████████████

28   ████████████████████████████████████

LAW OFFICES
**ROSENFELD,
MEYER &
SUSMAN LLP**

520574.02

8

PLAINTIFFS' OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION TO
DISMISS COMPLAINT



Indeed, this was explained at length to his out of state counsel during the Local Rule 7-3 meet and confer conference.  That Silver and his out of state counsel would fail to disclose that [redacted] [redacted] suggests that the Court would be well within its discretion to deny and should consider denying Seibert's forthcoming *pro hac vice* application for affirmatively and knowingly attempting to mislead the Court.  *See, United States v. Ries,* 100 F.3d 1469, 1471 (9th Cir. 1996).

LAW OFFICES
**ROSENFELD,
MEYER &
SUSMAN LLP**
520574.02

9
PLAINTIFFS' OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION TO
DISMISS COMPLAINT

1 ██████████████████████████████████████████████████████

2 ██████████████████████████████████████████████████████

3 ████ *Quadrant Structured Prod. Co. v. Vertin*, 23 N.Y. 3d 549, 560, 16 N.E. 3d

4 1165, 1172 (2014) ("Even where there is ambiguity, if parties to a contract omit

5 terms – particularly terms that are readily found in other, similar contracts – the

6 inescapable conclusion is that the parties intended the omission.  The maxim

7 *expressio unius est exclusio alterius*, as used in the interpretation of contracts,

8 supports precisely this conclusion (see generally Glen Banks, New York Contract

9 Law § 10.13 [West's N.Y. Prac. Series 2006]; see also *In re Ore Cargo, Inc.*, 544

10 F.2d 80, 82 [2d Cir. 1976][where sophisticated drafter omits a term, *expressio unius*

11 precludes the court from implying it from the general language of the agreement]).").

12 ████████████████████████████████████████████████

13 ████████████████████████████████████████ "[A] written agreement

14 that is complete, clear and unambiguous on its face must be enforced according to

15 the plain meaning of its terms" *Patsis v. Nicolia*, 120 A.D.3d 1326, 1327, 992

16 N.Y.S.2d 349, 350 (2014). ████████████████████████████████

17 ████████████████████████████████.

### C.    Silver's Motion Beyond His Release Argument Should Be Denied as He Failed to Comply with Local Rule 7-3

20      Under Local Rule 7–3, "counsel contemplating the filing of any motion shall

21 first contact opposing counsel to discuss thoroughly, preferably in person, the

22 substance of the contemplated motion and any potential resolution." L.R. 7–3.

23 "Local Rule 7-3 isn't just a piece of petty pedantry put down to trip up lawyers.  Nor

24 is Local Rule 7-3 a mere formalism simply there to be checked off by lawyers."

25 *Lopez v. Wells Fargo Bank, N.A.*, No. SACV 16-01409 AG (KESx), 2016 WL

26 6088257, at *2 (C.D. Cal. Oct. 17, 2016). Rather, the rule compels lawyers to "avoid

28 3   Counsel is "one or more lawyers who represent a client".  *Black's Law Dictionary* 352 (7th ed. 1999)

LAW OFFICES
ROSENFELD,
MEYER &
SUSMAN LLP

520574.02

10

PLAINTIFFS' OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION TO DISMISS COMPLAINT

1  unnecessary litigation," "focus and clarify disputes," and "fully honor [their] own

2  obligations under Federal Rule of Civil Procedure 1." *Id.*

3      Where a moving party fails to discuss, or even raise, the substance of

4  components of a contemplated motion and any potential resolution thereto when

5  meeting and conferring, the Court is within its discretion to deny the motion in part

6  or in whole for violating Local Rule 7-3.  *See, Vape Soc'y Supply Corp. v. Zeiadeh,*

7  No. SACV 16-01971 AG (FMx), 2017 WL 2919080, at *2 (C.D. Cal. Feb. 6, 2017)

8  ("Even if defense counsel's declaration is accepted as true, he failed to comply with

9  Local Rule 7-3. Among other problems, there's no evidence that the parties met and

10  conferred regarding the limitations on 'shareholder derivative suits,' the lack of

11  'definite' conspiracy allegations, or dismissal 'without leave to amend'. … Because

12  the moving parties failed to comply with Local Rule 7-3, the Court DENIES both

13  motions to dismiss WITHOUT PREJUDICE");  *Alcatel-Lucent USA, Inc. v.*

14  *Dugdale Commc'ns, Inc.*, No. CV 09-2140 PSG (JCx), 2009 WL 3346784, at *4

15  (C.D. Cal. Oct. 13, 2009) ("The meet and confer requirements of Local Rule 7-3 are

16  in place for a reason, and counsel is warned that nothing short of strict compliance

17  with the local rules will be expected in this Court. Thus, the motion is also denied

18  for failure to comply with Local Rule 7-3.");  *Bohn v. Pharmavite, LLC*, No. CV 11-

19  10430-GHK (AGRx), 2013 WL 4517173, at *1 (C.D. Cal. Feb. 5, 2013) (Striking a

20  motion under Local Rule 7-3 where "Plaintiff's characterization of the 'dialogue'

21  between the Parties suggests that no substantive discussion regarding the specific

22  issues raised by her motion took place prior to the motion's filing.").

23      Here, Silver presents no evidence to the Court that he complied with Local

24  Rule 7-3 and discussed the substance of his motion to dismiss beyond his argument

25  that the Settlement Agreement barred all claims.  That is because he failed to do so.

26  Instead Seibert met and conferred with Plaintiff's counsel to discuss the Release

27  contained in the Settlement Agreement and Silver's contention that it bars the claims

28  at bar.  (Lapine Decl., ¶ 4.)  When asked if Silver would be moving to dismiss on

LAW OFFICES
**ROSENFELD,
MEYER &
SUSMAN LLP**

520574.02

11

PLAINTIFFS' OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION TO
DISMISS COMPLAINT

1  any other grounds aside from the Release, Seibert responded "no". (*Id.*; Mahmood
2  Decl., ¶ 2.)

3      As such, the Court is within its right and should exercise its discretion to deny
4  Silver's Motion beyond his fatally infirmed Release argument for failure to comply
5  with Local Rule 7-3.  Had the parties met and conferred, one hopes some resolution
6  could have been reached to avoid burdening the Court.  In light of the totality of
7  Silver's filings – including a Rule 11 Motion that is entirely without merit and a
8  motion to dismiss that includes affirmative and meritless attempts to mislead the
9  Court and a gross misstatement and misapplication of the litigation privilege –
10 enforcing the Local Rules at this early stage of the litigation is imperative to avoid
11 further frivolous filings from Silver that both unnecessarily drive up the costs of this
12 litigation and that significantly burden the Court.

13     **D.    The Litigation Privilege Does Not Apply**

14          **1.     The Litigation Privilege Does Not Apply to LeMahieu's First**
15                  **Claim for Defamation *Per Se***

16     Silver spoke at a conference before LeMahieu's industry peers and spewed a
17 series of fantastic, inflammatory lies.  Silver accused LeMahieu of engaging in
18 criminal acts, specifically an "exit scam" whereby he would "take half" of all Nano
19 sold on an Italian exchange, that the exchange was "gonna give [LeMahieu] money
20 every time" a Nano was sold, that LeMahieu would "get rich" while consumers were
21 "out $150 million" due to the "exit scam".  (Dkt. 1 at ¶ 70.)  Silver accused
22 LeMahieu of saying "it's against our ethos" to fix this problem, with Silver
23 countering "you live in the United States of America, there are laws here, those laws
24 will be followed" to directly imply that LeMahieu committed a crime. (Dkt. 1 at
25 ¶ 72.)  Silver doubled down on his accusation that LeMahieu committed a crime,
26 accusing him of facing active criminal charges, stating "We are now in Federal
27 Court … a Federal Court judge is gonna say 'well if you wanna stay here and you

28

LAW OFFICES
**ROSENFELD,
MEYER &
SUSMAN LLP**

520574.02

12
PLAINTIFFS' OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION TO
DISMISS COMPLAINT

1    don't wanna go to jail, you're gonna give back the money." (Dkt. 1 at ¶ 72.)    These
2    statements were published on the Internet, on YouTube. (Dkt. 1 at ¶ 1.)

3         These statements were false and inflammatory. (Dkt. 1 at ¶ 74.) LeMahieu
4    and the Nano developers did not receive anything from BitGrail or from the BitGrail
5    crash. (Dkt. 1 at ¶ 73.) They did not participate in or profit from an exit scam, nor
6    did they ever say that it was against their ethos to return monies, which they could
7    not do, as they received nothing. (*Id.*) Moreover, they are not the target of a
8    criminal inquiry, much less in Federal court on criminal charges. (*Id.*) Silver
9    maliciously and vindictively lied. (Dkt. 1 at ¶ 78.)

10        In his Motion, Silver argues that his fantastic lies were privileged under the
11   litigation privilege afforded by California Civil Code section 47(b). He is mistaken;
12   they are not.

13        The litigation privilege "applies to any communication (1) made in judicial or
14   quasi-judicial proceedings; (2) by litigants or other participants authorized by law;
15   (3) to achieve the objects of the litigation; and (4) that have some connection or
16   logical relation to the action." *Silberg v. Anderson,* 50 Cal.3d 205, 212 (1990). This
17   is called the "furtherance" test: to qualify for the privilege the communication must
18   be made "in furtherance of the objects of the litigation." *Id.* at 219.

19        Accordingly, the litigation privilege "does not apply where publication is to
20   persons in no way connected with the proceeding." *Susan A. v. County of Sonoma* 2
21   Cal.App.4th 88, 93 (1991). The California Supreme Court confirmed in *Silberg* that
22   defamatory statements publicized to nonparticipants in the litigation are not
23   privileged, even if the defamatory statement is merely a "republication" of
24   allegations in the litigation. *Silberg*, *supra,* 50 Cal.3d at 219. "Statements to
25   nonparticipants in the action are generally not privileged under section 47(b), and
26   are thus actionable unless privileged on some other basis." *Rothman v. Jackson*, 49
27   Cal.App.4th 1134, 1141 (1996)

28

LAW OFFICES
ROSENFELD,
MEYER &
SUSMAN LLP

520574.02

13

PLAINTIFFS' OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION TO
DISMISS COMPLAINT

1   It is reversible error to find that out of court statements made to

2   nonparticipants in the action fall within the penumbra of the Section 47(b) litigation

3   privilege. *Id*. at 1138. ("We reverse. The challenged statements were made by the

4   defendants in a press conference, and not in any context which the litigation

5   privilege exists to protect. The privilege in section 47(b) does not apply to the

6   statements made in this case.")

7   The California Court of Appeal's decision in *GetFugu, Inc. v. Patton Boggs*

8   *LLP*, 220 Cal.App.4th 141, 154 (2013) is particularly instructive. There, the

9   plaintiffs' attorneys in a shareholder suit issued a one-page press release, issued

10  through "Investor Wire," discussing the lawsuit and an alleged FBI investigation

11  related thereto, which involved alleged misdeeds of GetFugu and its principal Freer,

12  and asked for "investigative leads" and "tips." *Id.* at 145-146. After the underlying

13  litigation resolved, GetFugu and Freer sued the plaintiff's attorneys for defamation,

14  who responded with an anti-SLAPP motion, wherein the plaintiffs' attorneys

15  claimed that the press release was directed only to the "investment community" and

16  was shielded by the litigation privilege because the investment community had an

17  interest in the outcome of the matter. *Id.* at 148-149.

18  In their opposition, Freer and GetFugu submitted declarations showing that

19  the statements of fact were false, something that LeMahieu need not do here as on a

20  12(b)(6) his allegation that they were false is presumed true. *Id.* at 154-155. The

21  California Court of Appeal denied the anti-SLAPP, finding that the litigation

22  privilege did not cover the press release:

23      The press release and Tweet were posted on the Internet and thus

24      were released worldwide. Dissemination of these publications to a

25      segment of the population as large as the "investment community"

26      is essentially the same as disclosure to the general public. If

27      anyone with an interest in the outcome of the litigation is a person

28      to whom a privileged communication could be made, *Silberg*

1   and *Rothman* would be eviscerated. We conclude the March 22,

2   2010 press release and the August 31, 2010 Tweet are not shielded

3   by the litigation privilege.

4   *Id.* at 154.

5   Silver provides no authority in his Motion that contradicts the holdings in

6   *Silberg*, *Susan A.*, *Rothman*, and *GetFugu, Inc.* and holds that statements made to

7   members of the general public, such as occurred here, are protected by the litigation

8   privilege.  He does not even attempt to make this argument in his Motion.  His

9   Motion fails on this point – the litigation privilege does not apply to the statements

10  at bar as a matter of law.  They are not privileged.

11  Silver argues elsewhere that the litigation privilege applies as his statements

12  were a "fair and true" report of the allegations in the Brola litigation.  Silver's

13  reliance on the "fair and true report" standard is inapplicable. The "fair and true

14  report" standard, enshrined in California Civil Code section 47(d), protects only

15  reports to "a public journal." Silver's statements were not made to the media, they

16  were made at an industry conference.

17         **2.     The Litigation Privilege Does Not Apply To LeMahieu's**

18              **Second Claim for Defamation *Per Quod***

19  In addition to the fantastic lies he told at issue in LeMahieu's claim for

20  defamation *per se*, Silver also told lies about LeMahieu's finances and his marriage.

21  (Dkt. 1 at ¶ 81(C).)  Silver, to an audience of LeMahieu's peers and industry leaders,

22  alleged that LeMahieu "holds 90% of the Nano".  (*Id.*) Of the painful end to

23  LeMahieu's marriage, he said "Uhhh, he got divorced from his wife last year.  He

24  decided that he was ready.  He deserved better because he was now rich.  She took

25  all the money.  And then, the financial affidavit, she, they, argued about how much

26  the Nano was worth and what the Nano was.  But I will tell you this: he said it had

27  value and he said that he believed it was going up and he believed it was a security

28  cause [sic] he put it on his security side of the affidavit." (*Id.*)  Aside from the fact

LAW OFFICES
ROSENFELD,
MEYER &
SUSMAN LLP

15

520574.02

PLAINTIFFS' OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION TO
DISMISS COMPLAINT

1  that LeMahieu divorced his wife, these were all lies.  (Dkt. 1 at ¶ 83.)  They were

2  certainly not alleged or at issue in the Brola Litigation.  ((Dkt. 15-2, Ex. A, *passim.*)

3       Silver contends these statements fall within the penumbra of the litigation

4  privilege and, therefore, LeMahieu's claim "must be dismissed" because they were

5  "all comments upon … the then-pending First Nano lawsuit."  This lacks any

6  semblance of candor or merit.  That action did not in any way involve LeMahieu's

7  marriage, his personal finances, affadavits submitted in his divorce, or the reasons

8  why his marriage dissolved.  The parties were not litigating whether LeMahieu

9  "deserved better because he was now rich", a truly repulsive lie to tell to a room full

10  of LeMahieu's industry peers.

11       These statements are not privileged under Section 47(b) as they were made to

12  nonparticipants in the action.  *Silberg*, *supra,* 50 Cal.3d at 219; *Rothman*, *supra*, 49

13  Cal.App.4th at 1141.  LeMahieu's second claim for defamation *per quod* should

14  survive Silver's 12(b)(6) challenge.

15       **3.      The First Amendment Does Not Shield These Statements**

16       Nano is a non-profit corporation.  (Dkt. 1 at ¶ 3.)  LeMahieu is its executive

17  officer.  Such an ordinary business person is not a public figure as a matter of law.

18  *See*, *Rancho La Costa, Inc. v. Superior Court*, 106 Cal. App. 3d 646, 660 (1980);

19  *Carlucci v. Poughkeepsie Newspapers, Inc.*, 450 N.Y.S.2d 54, 55 (1982); *Meadows*

20  *v. Taft Broadcasting Co., Inc.*, 470 N.Y.S.2d 205, 207–08 (1983); *Kamfar v. New*

21  *World Restaurant Group, Inc.*, 347 F. Supp. 2d 38, 46, (S.D. N.Y. 2004); *Haworth*

22  *v. Feigon*, 623 A.2d 150, 158 (Me. 1993).  Even were Nano not a local non-profit,

23  but instead a global corporation, the analysis would not change. *See, Waldbaum v.*

24  *Fairchild Publications, Inc.*, 627 F.2d 1287, 1299 (D.C. Cir. 1980) ("being an

25  executive within a prominent and influential company does not by itself make one a

26  [limited purpose] public figure"); *see also Lawlor v. Gallagher Presidents' Report,*

27  *Inc.*, 394 F. Supp. 721, 731 (S.D. N.Y. 1975) (the court rejected the suggestion that

28  a high executive in a top national corporation was a public figure regarding a

LAW OFFICES
**ROSENFELD,
MEYER &
SUSMAN LLP**

520574.02

16

PLAINTIFFS' OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION TO
DISMISS COMPLAINT

publication "directed exclusively at that group" as "untenable … such a rule would sweep all corporate officers under the restrictive New York Times rule and distort the plain meaning of the public figure category beyond all recognition").  As one Court noted, one does not become a public figure "merely by availing himself of the marketplace." *Diversified Management, Inc. v. Denver Post, Inc.*, 653 P.2d 1103, 1108 (Colo. 1982).

Similarly, that any of the statements were about Nano or its products does not change the complexion of them.  The false statements at issue address how LeMahieu categorized assets in his divorce, why he got a divorce, and what property he personally holds.  (Dkt. 1 at ¶ 81(C)).  Further, they falsely accuse LeMahieu of committing a crime and of being the subject of a criminal action.  (Dkt. 1 at ¶¶ 70, 72.)  Finally, Silver mischaracterized the nature of a product, stating it is an "alternative coin" when it is not.  (Dkt. 1 at ¶¶ 42-43.)  These are purely private concerns.  A private conflict does not "transform" "into an issue of public concern simply by arguing that his speech might have been of interest to the public". *Dorsett v. Bd. of Trustees for State Colleges & Universities*, 940 F.2d 121, 124 (5th Cir. 1991).  The statements at issue are not public issues as a matter of law.  *Rancho La Costa, Inc.*, *supra* 106 Cal.App.3d at 660 ("[m]erely because a corporation sells services to the public . . . and merely because it employs and has access to the media to advertise its services . . . does not mean that such ability gives the corporation the status of one with greater power of persuasion on public issues, controversial or not, or all-pervasive influence. Thus it is apparent that neither the 'public interest' . . . nor the voluntarily-thrusting-into-public-controversy test . . . applies"); *see also*, *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal.5th 133 (2019) (Even though it bore some relationship to issues of public interest, commercial speech which was private as between parties, used for commercial purposes only, and "never entered the public sphere," did not qualify for protection).

LAW OFFICES
**ROSENFELD,
MEYER &
SUSMAN LLP**

520574.02

17

PLAINTIFFS' OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION TO
DISMISS COMPLAINT

1      "Spreading false information in and of itself carries no First Amendment

2 credentials".  *Herbert v. Lando*, 441 U.S. 153, 171 (1979).  "It is speech on matters

3 of public concern that is at the heart of the First Amendment's protection."  *Dun &*

4 *Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 758–59 (1985).

5 Statements "involv[ing] a matter of purely private concern communicated between

6 private individuals" do not "rais[e] a First Amendment issue".  *Savage v. Pac. Gas*

7 *& Elec. Co.*, 21 Cal.App.4th 434, 445 (1993); *see also*, *Milkovich v. Lorain Journal*

8 *Co.* (1990) 497 U.S. 1, 19–21.  The false statements here were made about a private

9 figure on a private concern and are, thus, not shielded by the First Amendment.

10     **E.**     **Nano's Trade Libel Claim Is Not Infirmed**

11         **1.**     **Nano Sufficiently Pled Each Element of Trade Libel**

12      Silver relied on an unpublished, trial court decision, *Goldline, LLC v. Regal*

13 *Assets, LLC*, No. CV 14-03680 DDP (ASx), 2015 WL 1809301, at *5 (C.D. Cal.

14 Apr. 21, 2015), to assert that Nano failed to plead all elements of its trade libel

15 claim.  (Dkt. 15-1, 15:10-11, fn. 35.)  *Goldline, LLC* stands for the proposition that

16 Nano pled all required elements for its trade libel claim.  It held:

17

18     "Trade libel is the publication of matter disparaging the quality
    of another's property, which the publisher should recognize is

19     likely to cause pecuniary loss to the owner." *ComputerXpress,*
    *Inc. v. Jackson*, 93 Cal.App.4th 993, 1010 (2001). This claim

20     includes "all false statements concerning the quality of services
    or product of a business." *Id.* (internal quotation and citation

21     omitted). A cause of action for trade libel must allege "(1) a
    publication, (2) which induces others not to deal with plaintiff,

22     and (3) special damages." *New Show Studios LLC v. Needle*, No.
    2:14–cv–01250–CAS, 2014 WL 2988271 at *13, (C.D.Cal.

23     Jun.30, 2014). Furthermore, the claim requires the intentional
    publication of a false and unprivileged statement of fact. *Mann*

24     *v. Quality Old Tim Serv., Inc.*, 120 Cal.App.4th 90, 104 (2004).
    Commercial disparagement or defamation specifically involves

25     injury to the reputation of a business rather than disparagement
    of quality of goods or services. See *Mann v. Quality Old Time*

26     *Serv., Inc.*, 139 Cal.App.4th 328, 340 (2006).

27     The FAC alleges that Defendants intentionally published false
    statements related to consumer ratings, customer complaints,

28     pending litigation, and industry ratings. (FAC, ¶¶ 27–31, 162–
    163.) These statements disparaged the quality, integrity and
    security of products and services provided by Plaintiff. (FAC, ¶

LAW OFFICES
**ROSENFELD,**
**MEYER &**
**SUSMAN LLP**

18

520574.02      PLAINTIFFS' OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION TO
DISMISS COMPLAINT

163.) Defendants made these statements knowing that the publication would be harmful to Plaintiff's business, and cause diversion of its sales and harm to its interests. (FAC, ¶ 162.) These allegations satisfy the requisite elements of the claim.

Here, Silver made false statements disparaging the quality of the product Nano develops and services, the Nano coin. (Dkt. 1 at ¶ 88(A).) Specifically, Silver said that "Nano is not really a real coin … they were an alternative coin and they weren't really a real coin". (Dkt. 1 at ¶ 89(A).) These statements were false. (Dkt. 1 at 90.) Silver made these statements knowing that they would harm Nano, as speaking as an official panelist and resident legal expert at an industry panel, his false statement to those in the market for Nano carried an indicia of reliability. (Dkt. 1 at ¶ 92.) Silver induced members of the audience to not deal with Nano as its "signature product has been mischaracterized as an 'alternative coin'." (Dkt. 1 at ¶ 93.) As in the authority upon which Silver relies, *Goldline, LLC*, these "allegations satisfy the requisite elements of the claim".

Silver contends that Nano's trade libel damages plea falls short of pleading requirements. To support his contention, Silver relied on *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1047 (C.D. Cal. 1998). (Dkt. 15-1, 15:11-14, fn. 37.) It held "[a] bare allegation of the amount of pecuniary loss alleged is insufficient, and plaintiff is *not* required to allege a specific dollar amount." *Id.* at 1047 (Emphasis added).

Silver confuses the pleading standard on trade libel claims with the standard of proof at trial. He cites to *Erlich v. Etner*, 224 Cal.App.2d 69, 73-74 (1964) to support his contention that Nano needed to *plead* the specific consumers that avoided Nano due to his comments and the specific transactions it lost. (Dkt. 15-1, 16:13-16, fn. 41.) *Erlich*, however, explicitly cited to and approved the still binding California precedent which holds that to require such detail at the pleading stage as Silver requests is reversible error. As *Erlich* noted, the Court in *Wright v. Coules* (1906) 4 Cal.App. 343, 347, reversing a dismissal of a trade libel claim on demurrer,

LAW OFFICES
**ROSENFELD,
MEYER &
SUSMAN LLP**

19

PLAINTIFFS' OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION TO DISMISS COMPLAINT

520574.02

1   held that "A general allegation * * * of people being dissuaded by reason of a

2   publication from making any contract with or coming to the hotel or giving it their

3   patronage, is sufficient".  *Erlich*, *supra*, 224 Cal.App.2d at 74.  Per *Erlich*, that

4   remains the law in California.

5        Here, Nano does not allege a specific dollar amount, but *Isuzu Motors Ltd.*

6   expressly holds that is not fatal to Nano's pleading.  It alleges it suffered specific

7   pecuniary loss as its "signature product has been mischaracterized as an 'alternative

8   coin'", dissuading consumers from doing business with it.  (Dkt. 1 at ¶ 93.)  While

9   Nano does not contest that it will be required to prove special damages at trial, per

10  *Wright*, this should be sufficient at the pleading stage.

11       To the extent that the Court requires further specificity in Nano's damages

12  plea to its trade libel claim, leave to amend should be granted so that it can do so.

13  See, *Moss v. U.S. Secret Service*, 572 F.3d 962, 972 (9th Cir. 2009) ("requests for

14  leave should be granted with 'extreme liberality'. Dismissal without leave to amend

15  is improper unless it is clear, upon de novo review, that the complaint could not be

16  saved by any amendment." [internal quotations and citations omitted]); *see also,*

17  *Wright, supra,* 4 Cal.App. at 347 (holding it error to deny without leave to amend a

18  trade libel claim infirmed for lack of sufficient detail in an initial pleadings).  Indeed,

19  had Silver not breached his obligations under Local Rule 7-3 and raised this issue

20  when meeting and conferring instead of ambushing Nano with it in its Motion, Nano

21  may have agreed to simply amend to avoid burdening the Court with this Motion.

22       **2.   Silver's Reference to Nano's Formation Date is Misplaced**

23       Silver attached to his declaration certain documents which, he alleges,

24  establish that Nano registered with the State of New York on March 15, 2018.  (Dkt.

25  15-2, Exhibit B.)  The Complaint is silent as to when Nano formed.  Silver did not

26  file a request for judicial notice as to those documents.  They should not be

27  considered on a 12(b)(6) motion.  *United States v. Ritchie, supra,* 342 F.3d at 908.

28  However, even were they to be considered, Silver's argument about the timing of his

LAW OFFICES
**ROSENFELD,
MEYER &
SUSMAN LLP**

520574.02

20

PLAINTIFFS' OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION TO
DISMISS COMPLAINT

1  statements (Dkt. 15-1, 16:1-8) is entirely moot and does not support the dismissal of

2  Nano's trade libel claim that Silver requests.

3       Here, on May 24, 2018, Silver made false statements disparaging the quality

4  of the product Nano develops and services, the Nano.  (Dkt. 1 at ¶¶  1, 88(A).)

5  Specifically, Silver said that "Nano is not really a real coin … they were an

6  alternative coin and they weren't really a real coin".  (Dkt. 1 at ¶ 89(A).)  These

7  false statements, which are at issue, were made more than two months after Silver

8  alleges Nano formed.  Thus, Silver's statement that Nano was "incorporated *after* the

9  conclusion of virtually all of the events of which [] Silver spoke at the May 2018

10  conference" is false as to the statements at issue on Nano's trade libel claim and

11  entirely moot as to any other statements.

12          **3.    Silver's Statements Were Not Privileged**

13       The false statements at issue are not privileged under Section 47(b) or

14  protected under the First Amendment as they were made to nonparticipants in the

15  action, were not characterized as mere allegations in a legal action, were not alleged

16  or at issue in the Brola Litigation, and involved issues of private, not public concern.

17  *Herbert, supra*, 441 U.S. at 1717; *Silberg*, *supra,* 50 Cal.3d at 219; *Rothman*, *supra*,

18  49 Cal.App.4th at 1141.

19     **F.    Silver's Attacks on Intentional Interference Lack Merit**

20          **1.    Silver's Statements are Neither Privileged nor Protected**

21       At issue in LeMahieu's intentional interference claim are the series of false

22  statements Silver made about LeMahieu, his purported hoarding of Nano coins, his

23  marriage, and his finances at a May 2018 industry convention.  (Dkt. 1 at ¶ 98.)

24  Silver, to an audience of LeMahieu's peers, alleged that LeMahieu "holds 90% of

25  the Nano".  (Dkt. 1 at ¶ 81(C).)  He went on to say "Uhhh, he got divorced from his

26  wife last year.  He decided that he was ready.  He deserved better because he was

27  now rich.  She took all the money.  And then, the financial affidavit, she, they,

28  argued about how much the Nano was worth and what the Nano was.  But I will tell

LAW OFFICES
**ROSENFELD,
MEYER &
SUSMAN LLP**

21

PLAINTIFFS' OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION TO
DISMISS COMPLAINT

520574.02

1  you this: he said it had value and he said that he believed it was going up and he

2  believed it was a security cause [sic] he put it on his security side of the affidavit."

3  (*Id.*)  These statements, aside from the fact that LeMahieu got a divorce, were all

4  untrue.  (Dkt. 1 at ¶ 83.)

5         As set forth herein, in detail, in Section III.D.3, these inflammatory false

6  statements regarding the personal affairs of a private figure are not shielded by the

7  First Amendment as a matter of law.  *Milkovich, supra,* 497 U.S. at 19–21; *Dun &*

8  *Bradstreet, Inc.*, 472 U.S. at 758–59; *Herbert*, *supra,* 441 U.S. at 171; *Savage, supra,*

9  21 Cal.App.4th at 434.  The false statements at issue are not privileged under

10  Section 47(b) as they were made to nonparticipants in the action and were not

11  alleged or at issue in the Brola Litigation.  *Silberg*, *supra,* 50 Cal.3d at 219;

12  *Rothman*, *supra*, 49 Cal.App.4th at 1141.

13              **2.     LeMahieu's Claim For Intentional Interference Should**

14                      **Survive a Motion to Dismiss**

15         Silver relies solely on three trial court decisions to support his contention that

16  LeMahieu's intentional interference with prospective economic advantage claim is

17  defective.  Specifically, he cites to *Damabeh v. 7-Eleven, Inc.*, No. 5:12-CV-1739-

18  LHK, 2013 WL 1915867, at *10 (N.D. Cal. May 8, 2013), in which the court, citing

19  only to *Westside Ctr. Associates v. Safeway Stores 23, Inc.*, 42 Cal.App.4th 507, 527

20  (1996), held that "it is essential that the Plaintiff allege facts showing that Defendant

21  interfered with Plaintiff's relationship with a particular individual." *Westside Ctr.*

22  *Associates* made no such holding.  In fact, it was an opinion evaluating a judgment

23  entered by the Court "following lengthy pretrial proceedings" and did not even

24  address, much less state a rule on pleading requirements.  *Westside Ctr. Associate*,

25  *supra,* 42 Cal.App.4th at 510.   Instead, it held that the "lost opportunity"

26  "interference with the market" approach is insufficient to support a finding of

27  intentional interference.  *Id.* at 527.  LeMahieu does not seek relief on this theory,

28  nor does he allege it.  This authority has no bearing on the matters before the Court.

LAW OFFICES
**ROSENFELD,
MEYER &
SUSMAN LLP**

520574.02

22

PLAINTIFFS' OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION TO
DISMISS COMPLAINT

1      The Court in *UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 117 F. Supp.

2  3d 1092, 1099 (C.D. Cal. 2015) also relied solely on *Westside Ctr. Associates*.

3  *Packaging Sys., Inc. v. PRC-Desoto Int'l, Inc.*, 268 F. Supp. 3d 1071, 1090 (C.D.

4  Cal. 2017), the final case Silver cited, relied solely on the infirmed, unpublished

5  *Damabeh* holding, *Westside Ctr. Associates*, and another Federal trial court decision

6  that itself relies on *Westside Ctr. Associates*.  This is a giant circle wholly supported

7  by a purported pleading standard set forth in *Westside Cty. Associates* that simply is

8  not addressed, much less established by that holding.

9      Silver did not cite a binding appellate decision, state or Federal, which held an

10  intentional interference with prospective advantage claim must identify at the

11  pleading stage particular individuals by name with whom the Plaintiff had a

12  potential economic advantage.  LeMahieu is unaware of any such holdings.

13      "[T]he pleading standard Rule 8 announces does not require 'detailed factual

14  allegations,' but it demands more than an unadorned, the-defendant-unlawfully-

15  harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Thus, trial

16  courts have held it sufficient to simply identify "current customers" for a claim of

17  intentional interference to survive the pleading stage.  *Evans v. Sirius Computer*

18  *Sols.*, *Inc.*, No. 3:12-CV-46-AA, 2012 WL 1557294, at *3 (D. Or. May 1, 2012)

19      Here, Silver went before a room filled with "the major players in the

20  cryptocurrency space", at the industry's largest annual convention and, as a keynote

21  speaker, told them that LeMahieu, a cryptocurrency executive, perpetrated a brazen,

22  $150,000,000 crime for which he is facing criminal charges that will see him

23  imprisoned if he does not return those monies.  (Dkt. 1 at ¶¶ 14, 45-57.)  These

24  statements were false, as were the statements Silver made that LeMahieu decided to

25  divorce his wife because he was now rich and he committed fraud on the courts by

26  lying in his divorce filings.  (Dkt. 1 at ¶¶ 58 – 59.)  LeMahieu identified his

27  "industry peers" present at Silver's public tarring and feathering of him as the

28  individuals with whom he had a prospective economic advantage, they are those

LAW OFFICES
**ROSENFELD,
MEYER &
SUSMAN LLP**

520574.02

23

PLAINTIFFS' OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION TO
DISMISS COMPLAINT

1  with whom he could foreseeably work with and for in the cryptocurrency space.

2  (Dkt. 1 at 99.)  "He has lost professional credibility and his good name had been

3  destroyed in his industry by Mr. Silver's intentional acts".  (Dkt. 1 at ¶ 101.)  He

4  need not identify these individuals, in a Federal complaint, at the pleading stage by

5  name, exacerbating the harm done when Silver lied and told all of them that

6  LeMahieu is a criminal.  LeMahieu's claim was sufficiently pled.

7        Should the Court believe further detail is required, leave to amend should be

8  granted.  *Moss*, *supra*, 572 F.3d at 972.  Indeed, even in *UMG Recordings, Inc.*,

9  *supra*, 117 F. Supp. 3d at 1092, on which Silver relied, leave to amend was granted.

10        Indeed, had Silver not violated Local Rule 7-3 and actually discussed his

11  intent to raise this issue in a motion to dismiss, LeMahieu may have voluntarily

12  amended this claim to avoid the burden on the parties and the Court of a motion,

13  though it does not appear his claim is infirmed.  Sadly, that did not occur.

14        **3.**    **Whether LeMahieu Owns RaiBlocks Has No Bearing on His**

15              **Intentional Interference Claim**

16        LeMahieu, again, alleges that Silver intentionally interfered with his

17  prospective economic advantage by, among other things, accusing him of being a

18  criminal to his industry peers, thereby destroying his work and business prospects.

19  Silver put a wicked stain on LeMahieu's name.  Silver's argument that this could not

20  be actionable because LeMahieu admits he never owned RaiBlocks is nonsensical

21  and has no bearing on the claims at issue.  This ancillary fact is utterly irrelevant to

22  the substance of LeMahieu's intentional interference claim.

23  ///

24  ///

25  ///

26

27

28

LAW OFFICES
**ROSENFELD,
MEYER &
SUSMAN LLP**

520574.02

24

PLAINTIFFS' OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION TO
DISMISS COMPLAINT

**IV.   <u>CONCLUSION</u>**

Plaintiffs respectfully request that the Court deny Silver's Motion to Dismiss. Should the Court grant it in part or in whole, Plaintiffs request leave to amend.

DATED:  July 15, 2019                    ROSENFELD, MEYER & SUSMAN LLP

By: _____ */s/ Ryan M. Lapine*_____
Ryan M. Lapine
Attorneys for Plaintiffs NANO
FOUNDATION, LTD. and COLIN
LeMAHIEU

LAW OFFICES
**ROSENFELD,
MEYER &
SUSMAN LLP**

520574.02

25

PLAINTIFFS' OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION TO
DISMISS COMPLAINT