1  Brandon S. Reif, Esq. (State Bar No. 214706)
   E-Mail: BReif@ReifLawGroup.com
2  **REIF LAW GROUP, P.C.**
   1925 Century Park East - Suite 1700
3  Los Angeles, California 90067
   Telephone: (310) 494-6500
4
   F. Jason Seibert, Esq. (*Pro Hac Vice application forthcoming*)
5  E-Mail: Jason@seibert-law.com
   **SEIBERT LAW**
6  6007 Greenway Manor Lane
   Spring, Texas 77373
7  Telephone: (971) 235-5764
8  *Attorneys for Defendant David C. Silver*
9
                  **UNITED STATES DISTRICT COURT**
10
              **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
11

12  NANO FOUNDATION, LTD., a New York non-      Case No. 2:19-cv-04237-SVW-PJW
    profit corporation; and
13  COLIN LeMAHIEU, an individual;              **DEFENDANT DAVID C. SILVER'S**
                                                **REPLY MEMORANDUM OF POINTS &**
14              Plaintiffs,                      **AUTHORITIES IN FURTHER SUPPORT**
                                                **OF MOTION TO DISMISS COMPLAINT**
15        v.
                                                Date:      August 5, 2019
16  DAVID C. SILVER, an individual;            Time:      1:30 p.m.
                                                Judge:     Hon. Stephen V. Wilson
17              Defendant.                      Crtrm:     10A - 10th Floor

18

19

20

21

22

23

24

25

26

27

28

—————————————————————————————————————
DEFENDANT DAVID C. SILVER'S REPLY MEMORANDUM OF POINTS &
AUTHORITIES IN FURTHER SUPPORT OF MOTION TO DISMISS COMPLAINT

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................................ 1

II.     ARGUMENT .................................................................................................. 2

    A.  Plaintiffs' Complaint Omits Key Facts the Court Must Consider in Evaluating the Motion to Dismiss .................................................................................. 2

    B.  The Settlement Agreement and Release Bars All Claims in the Complaint ......... 3

    C.  Plaintiffs' Complaint Fails to State Any Viable Causes of Action ......................... 5

        1.  The Statements Cited by Plaintiffs Are Non-Actionable, As They Are True, Are Mere Hypotheticals or Statements of Opinion, and/or Are Forms of Constitutionally-Protected Speech ...................................................... 6

        2.  Plaintiffs Have Not Pleaded Viable Defamation Claims (Counts I and II) ... 10

        3.  Plaintiffs Have Not Pleaded A Viable Trade Libel Claim (Count III) ........ 11

        4.  Plaintiffs Have Not Pleaded A Viable Interference With Economic Advantage Claim (Count IV) .......................................................... 12

III.    CONCLUSION ........................................................................... 12

DEFENDANT DAVID C. SILVER'S REPLY MEMORANDUM OF POINTS &
AUTHORITIES IN FURTHER SUPPORT OF MOTION TO DISMISS COMPLAINT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bartholomew v. YouTube, LLC*
  17 Cal.App.5th 1217 (2017) ................................................. 6

*Cahn v. Fisher*
  805 P.2d 1040 (Ariz. App. 1990) ......................................... 4

*Ceja v. Scribner*
  2016 WL 4035665 (C.D. Cal. Mar. 3, 2016) ...................... 4

*Chaker v. Mateo*
  209 Cal.App.4th 1138 (2012) .............................................. 8

*Committee to Protect our Agricultural Water v. Occidental Oil and Gas Corp.*
  235 F.Supp.2d 1132 (E.D. Cal. 2017) ................................. 7

*Consorcio Prodipe, S.A. de C.V. v. Vinci, S.A.*
  544 F.Supp.2d 178 (S.D.N.Y. 2008) .................................. 5

*D.C. v. R.R.*
  182 Cal.App.4th 1190 (2010) .............................................. 7

*Harris v. County of Orange*
  682 F.3d 1126 (9th Cir. 2012) ............................................ 7

*Homeland Housewares, LLC v. Euro-Pro Operating LLC*
  2014 WL 6892141 (C.D. Cal. Nov. 5, 2014) .................... 12

*Gardner v. Martino*
  563 F.3d 981 (9th Cir. 2009) ............................................ 12

*G.U.E. Tech, LLC v. Panasonic Avionics Corp.*
  2015 WL 12696203 (C.D. Cal. Sept. 1, 2015) ................. 12

*Isquith ex rel. Isquith v. Middle S. Utils., Inc.*
  847 F.2d 186 (5th Cir. 1988) .............................................. 2

*Jinkins v. Temecula Towne Center Associates LLC*
  2019 WL 1652086 (C.D. Cal. Feb. 15, 2019) .................... 2

*Leonardini v. Shell Oil Co.*
  216 Cal.App.3d 547 (1990) ............................................... 11

*Makaeff v. Trump Univ., LLC*
  715 F.3d 254 (9th Cir. 2013) ............................................ 10

*Mann v. Quality Old Time Svc., Inc.*
  120 Cal.App.4th 90 (2004) ............................................... 11

*Manzari v. Associated Newspapers, Ltd.*
 830 F.3d 881 (9th Cir. 2016) .......................................................................... 11

*MMM Holdings, Inc. v. Reich*
 21 Cal.App.5th 167 (2018) ............................................................................. 10

*Northgate Electric v. Barr & Barr*
 61 A.D.3d 467 (N.Y. App. Div. 1st Dep't 2009) ........................................... 5

*Nygard, Inc. v. Uusi-Kerttula*
 159 Cal.App.4th 1027 (2008) .......................................................................... 7

*Packaging Sys., Inc. v. PRC-Desoto Int'l, Inc.*
 268 F.Supp.3d 1071 (C.D. Cal. 2017) ........................................................... 12

*Palin v. N.Y. Times Co.*
 264 F.Supp.3d 527 (S.D.N.Y. 2017) ............................................................. 10

*Pardi v. Kaiser Found. Hosps.*
 389 F.3d 840 (9th Cir. 2004) .......................................................................... 12

*Peterson v. Regina*
 935 F.Supp.2d 628 (S.D.N.Y. 2013) .............................................................. 5

*Piping Rock Partners v. David Lerner Assocs.*
 946 F.Supp.2d 957 (N.D. Cal. 2013) ............................................................. 8

*Prager v. LaFaver*
 190 F.3d 1185 (10th Cir. 1999) ...................................................................... 2

*Pullman v. Alpha Media Pub., Inc.*
 2014 WL 5043319 (S.D.N.Y. Mar. 14, 2014) ............................................... 4

*Roe v. Doe*
 2009 WL 1883752 (N.D. Cal. 2009) .............................................................. 8

*Rubin v. Green*
 4 Cal.4th 1187 (1993) ..................................................................................... 11

*Summit Bank v. Rogers*
 206 Cal.App.4th 669 (2012) ........................................................................... 8

*UMG Recordings, Inc. v. Global Eagle Entm't, Inc.*
 117 F.Supp.3d 1092 (C.D. Cal. 2015) ........................................................... 12

*Vornado Realty Trust v. Marubeni Sustainable Energy, Inc.*
 987 F.Supp.2d 267 (E.D.N.Y. 2013) ............................................................. 5

*Wynn v. Chanos*
 75 F.Supp.3d 1228 (N.D. Cal. 2014) ............................................................. 10

DEFENDANT DAVID C. SILVER'S REPLY MEMORANDUM OF POINTS &
AUTHORITIES IN FURTHER SUPPORT OF MOTION TO DISMISS COMPLAINT

Case No. 2:19-cv-04237-SVW-PJW

**Statutes**

Cal. Civ. Code § 47(b) ................................................................................ 1

Cal. Civ. Code § 48a(d)(1) ........................................................................ 11

Cal. Civ. Code § 48a(d)(2) ........................................................................ 11

New York General Obligations Law §15-108(a) ........................................ 4


**Rules**

Fed.R.Civ.P. 9(g) ...................................................................................... 11

Fed.R.Civ.P. 12(b)(6) .......................................................................... *passim*

Fed.R.Civ.P. 12(d) ...................................................................................... 2

Fed. R. Evid. 201(c)(1) ............................................................................... 7


**Treatises and Articles**

Bitcoin Magazine, *What Is an Altcoin?*, https://bitcoinmagazine.com/guides/what-altcoin ............ 6


**Other**

*Brola v. Nano, et al.* ("First NANO Lawsuit")
    U.S. District Court - E.D.N.Y. - Case No: 1:18-cv-02049-NG-RML ................................ *passim*

DEFENDANT DAVID C. SILVER'S REPLY MEMORANDUM OF POINTS &
AUTHORITIES IN FURTHER SUPPORT OF MOTION TO DISMISS COMPLAINT

## I.   __INTRODUCTION__

In both their Complaint[1] and in their opposition[2] to the motion filed by Defendant DAVID C. SILVER (hereinafter "Defendant" or "Attorney Silver") to have that Complaint dismissed[3], Plaintiffs NANO FOUNDATION, LTD. and COLIN LeMAHIEU undertake great efforts to impugn Attorney Silver -- repeatedly calling him a liar, stating that he lacks candor, and suggesting that he has misled this Court.  Plaintiffs launch their character assassination upon Attorney Silver expecting that their allegations will be protected by the immunity from tort liability that Cal. Civil Code § 47(b)'s litigation privilege provides; which is ironic, because Plaintiffs attack Attorney Silver for having made statements about Nano and COLIN LeMAHIEU at the May 24, 2018 Blockchain Law Summit in Los Angeles, California (the factual basis of Plaintiffs' Complaint) under that same litigation privilege.  The ferocity of Plaintiffs' *ad hominem* attacks, however, merely serve as a mask to the fact that the Complaint is both factually and legally ill-supported.  Notwithstanding the fire behind Plaintiffs' papers, the Complaint should be dismissed.

As Attorney Silver has already demonstrated to the Court, Plaintiffs have misapplied the "litigation privilege" that shields the comments by Attorney Silver which rest at the core of the Complaint.  When properly applied, it is clear that Plaintiffs' claims lack legal support.  Additionally, Plaintiffs have grossly overstated the sufficiency of the legal claims they have pleaded.  Statements like those made by Attorney Silver -- made about public figures on matters of public interest that are true or that are mere hypotheticals or expressions of opinion -- are not actionable.  Moreover, Plaintiffs' vague references to incalculable damages that may or may not have been suffered by a public figure like COLIN LeMAHIEU do not suffice, even at this preliminary stage of the pleadings.

For the reasons set forth herein as well as those presented in Attorney Silver's Motion to Dismiss, Plaintiffs' Complaint should be dismissed.

---

[1] Docket Entry No. ("DE") 1 ("Compl.").

[2] DE 22 ("Plaintiffs' Opposition Memo").

[3] DE 15 ("Motion to Dismiss").

DEFENDANT DAVID C. SILVER'S REPLY MEMORANDUM OF POINTS & AUTHORITIES IN FURTHER SUPPORT OF MOTION TO DISMISS COMPLAINT

Case No. 2:19-cv-04237-SVW-PJW

## II.    ARGUMENT

### A.    Plaintiffs' Complaint Omits Key Facts the Court Must Consider in Evaluating the Motion to Dismiss

Plaintiffs' Complaint purposefully presented Attorney Silver's Blockchain Law Summit comments without putting them in their proper context -- *i.e.*, that Attorney Silver was discussing COLIN LEMAHIEU's role in a class action lawsuit Attorney Silver's law firm and its co-counsel firm had brought against cryptocurrency start-up company NANO and certain key members of NANO's core team of developers and executives.[4]

A few months following Attorney Silver's appearance at the Blockchain Law Summit, the First NANO Lawsuit was settled; and the parties to that dispute memorialized their negotiated settlement in a Settlement Agreement that included a "Mutual General Release" broadly barring claims such as those brought in the instant action by Plaintiffs.[5]  The existence of that Settlement Agreement was purposefully omitted from Plaintiffs' Complaint -- again removing the parties' dispute from its proper context.

Contrary to Plaintiffs' assertion that Attorney Silver's Motion to Dismiss is filled with "*extraneous, unsupported claims*" and that Attorney Silver's presentation of vital, otherwise omitted facts should be considered by the Court under Fed.R.Civ.P. 12(d); his Motion actually presents a proper factual context within which Plaintiffs' Complaint must be evaluated.  Where "matters outside the pleadings" are submitted in support of a Rule 12(b)(6) motion, the Court has the discretion to accept and consider those materials.[6]  Here, Attorney Silver presented evidence of the First NANO Lawsuit as well as of the Settlement Agreement arising therefrom because those facts are vital to facilitate the Court's evaluation of, and adjudication on, Attorney Silver's Motion to Dismiss.[7]

---

[4] *See*, DE 15-2 at ¶ 3 and Exhibit "A" thereto [*Brola v. Nano, et al.*, U.S. District Court - E.D.N.Y. - Case No: 1:18-cv-02049-NG-RML (the "First NANO Lawsuit")].

[5] DE 15-2 at ¶ 6 and Exhibit "D" thereto.

[6] *See*, Fed.R.Civ.P. 12(d); *see also Prager v. LaFaver*, 190 F.3d 1185, 1189 (10th Cir. 1999); *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 193 n. 3 (5th Cir. 1988).

[7] *Jinkins v. Temecula Towne Center Associates LLC*, 2019 WL 1652086, at *2 (C.D. Cal. Feb. 15, 2019) (converting dismissal motion into summary judgment motion and dismissing with prejudice case barred by release in settlement agreement from prior litigation).

2

DEFENDANT DAVID C. SILVER'S REPLY MEMORANDUM OF POINTS & AUTHORITIES IN FURTHER SUPPORT OF MOTION TO DISMISS COMPLAINT

Case No. 2:19-cv-04237-SVW-PJW

**B.    <u>The Settlement Agreement and Release Bars All Claims in the Complaint</u>**

In his Motion to Dismiss, Attorney Silver demonstrates that Court should dismiss the instant Complaint, with prejudice, because the claims asserted therein are squarely barred by the Settlement Agreement.[8]  In response, Plaintiffs assert that Attorney Silver's "*release and waiver argument is factually void and fully lacks merit.*"[9]  Essentially, the parties disagree over the usage of a comma in the following key passage in the Settlement Agreement:

> *4.  **Mutual General Release: Each Party hereby remises, releases, acquits, satisfies, and forever discharges each and every other Party (including: (i) with regard to each Party who is a natural person, that Party's guardians, successors, assigns, heirs, executors, administrators, trustees, accountants, and insurers, and (ii) with regard to each Party which is not a natural person, each such Party's past and present parent, subsidiary, affiliated, related, or predecessor entities, their successors and assigns and <u>any</u> <u>and</u> <u>all</u> <u>of</u> <u>each</u> <u>such</u> <u>Party's</u> <u>past</u> <u>and</u> <u>present</u> officers, directors, <u>agents</u>, accountants, insurers, servants, employees, shareholders, members, and partners* * * **

(emphasis added).

Attorney Silver submits that the passage should be properly read thusly:

> *4.  **Mutual General Release: Each Party hereby remises, releases, acquits, satisfies, and forever discharges each and every other Party (including:***
>
> > *(i) with regard to each Party who is a natural person, that Party's guardians, successors, assigns, heirs, executors, administrators, trustees, accountants, and insurers, and*
>
> > *(ii) with regard to each Party which is not a natural person, each such Party's past and present parent, subsidiary, affiliated, related, or predecessor entities, their successors and assigns,*
>
> *and <u>any</u> <u>and</u> <u>all</u> <u>of</u> <u>each</u> <u>such</u> <u>Party's</u> <u>past</u> <u>and</u> <u>present</u> officers, directors, <u>agents</u>, accountants, insurers, servants, employees, shareholders, members, and partners* * * **

(emphasis added).   Having represented the plaintiff -- one of the signatories to the Settlement Agreement -- in the First NANO Lawsuit, Attorney Silver is a "Party's past and present . . . agent"

---

[8] Motion to Dismiss at 7-9.

[9] Plaintiffs' Opposition Memo at 7.

3

1  encompassed by the language of the release.[10]  In fact, the language itself is dispositive from a

2  grammatical standpoint.  Following the "disputed" comma, the remaining clause of the sentence "*and*

3  *any and all of each such Party's past and present officers, directors, agents...*" would need to have

4  been redefined to identify which Party it was specifically talking about if not both natural person and/or

5  not natural person as the term.

6       Plaintiffs, however, have presented a different reading of that passage curtailing its scope.  In

7  support of the argument in their Opposition Memo, Plaintiffs cite to a New York statute pertaining to

8  joint tortfeasors and "discharge . . . of the other tortfeasors from liability for . . . injury or wrongful

9  death."[11]  Plaintiffs' citation is misplaced, as Attorney Silver's client in the First NANO Lawsuit was

10  the plaintiff, not a defendant against whom any tort claims had been alleged.[12]

11      Though Plaintiffs cite no relevant case law to support their position and their effort to now limit

12  the breadth of the general release, precedent exists in New York[13] to support Attorney Silver.  In

13  *Pullman v. Alpha Media Pub., Inc.*,[14] the Court was faced with a situation in which the parties to an

14  ongoing dispute had settled their dispute using a mutual release "of all parties and all employees and

15  agents, et cetera" (though not specifically mentioning "attorneys"), and some of the parties to that

16  proceeding later sought to have the Court enforce broader language with respect to the release that did

---

[10] *See, e.g., Ceja v. Scribner*, 2016 WL 4035665, at *6 (C.D. Cal. Mar. 3, 2016) ("A lawyer is a client's agent . . . ."); *Cahn v. Fisher*, 805 P.2d 1040, 1042 (Ariz. App. 1990) ("It is also true that a lawyer is the agent of his or her client.").

[11] New York General Obligations Law §15-108(a).

[12] Plaintiffs also argue throughout their Opposition Memo that Attorney Silver has deceived this Court by "*fail[ing] to mention that he did not represent any Party that was **not** a natural person such that this release language could apply to him*."  *See, e.g.*, Plaintiffs' Opposition Memo at 9 (bold and underlined emphasis in original).  Attorney Silver and his counsel have not misled this Court; they simply read the Mutual General Release differently than Plaintiffs do and posit that the Release and the term "Releasees" encompasses Attorney Silver, even though he only represented a "natural person" in the First NANO Lawsuit.

[13] As stated in Plaintiffs' Opposition Memo, the Settlement Agreement includes a choice of law provision which states that the Agreement "*shall be governed by, and construed in accordance with, the laws of the State of New York applicable to contracts executed in and to be performed in that state.*" Plaintiffs' Opposition Memo at 8 n. 2.

[14] 2014 WL 5043319 (S.D.N.Y. Mar. 14, 2014) ("*Pullman I*").

DEFENDANT DAVID C. SILVER'S REPLY MEMORANDUM OF POINTS &
AUTHORITIES IN FURTHER SUPPORT OF MOTION TO DISMISS COMPLAINT

1  include, *inter alia*, "attorneys."[15]  One party to the case objected, and the Court rejected the objecting

2  party's claim that he never intended the original release to be so broad.  "In determining the parties'

3  intent, a court must look, not to their after-the-fact professed subjective intent, but their objective intent

4  as manifested by their expressed words and deeds at the time."[16]

5      If Plaintiffs had intended to carve out from the Settlement Agreement and the Mutual General

6  Release -- notably, a Mutual **General** Release, *not* a Specific Release designed to retain claims for

7  future prosecution[17] -- any claims Plaintiffs might have wanted to bring against Attorney Silver, they

8  should have expressed that right with their actions at the time the Settlement Agreement was negotiated

9  and executed.[18]  They did not do so, and they must now live with the choices they made then.

10     **C.     Plaintiffs' Complaint Fails to State Any Viable Causes of Action**

11     Plaintiffs' Complaint cites four isolated statements from Attorney Silver's presentation at the

12  May 24, 2018 Blockchain Law Summit as those that have somehow caused Plaintiffs harm.  However,

13  none of the statements cited are actionable as alleged by Plaintiffs.[19]  Moreover, Plaintiffs' selective

14  presentation of the statements on which they rely takes them out of their proper context and misleads

15  the Court into an erroneous understanding of how those statements were really made.

16

17  [15] *Id.* at *16.

18  [16] *Id.* at *16.

19  [17] *See, e.g., Peterson v. Regina*, 935 F.Supp.2d 628, 636 n.3 (S.D.N.Y. 2013) ("The terms of a 'general
20  release' -- in contrast with a 'specific release' -- normally release without limitation *all* claims that a
    party ever had against a party up until the date of the release.") (emphasis added).

21  [18] *See, e.g., Northgate Electric v. Barr & Barr*, 61 A.D.3d 467, 468 (N.Y. App. Div. 1st Dep't 2009)
22  ("If a plaintiff had wished to except its . . . claim from the release, it should have included plain language
    to that effect in the release."); *Vornado Realty Trust v. Marubeni Sustainable Energy, Inc.*, 987
23  F.Supp.2d 267, 278 (E.D.N.Y. 2013) (same; "The Release contains no language excepting claims based
    on faulty installation of the USTs from the scope of the agreement."); *Consorcio Prodipe, S.A. de C.V.
24  v. Vinci, S.A.*, 544 F.Supp.2d 178, 189 (S.D.N.Y. 2008) ("When a release is executed "in a commercial
    context by parties in roughly equivalent bargaining positions and with ready access to counsel,
25  the general rule is that if 'the language of the release is clear ... the intent of the parties [is] indicated
    by the language employed.'").

26  [19] It must be repeated that, as stated in the Special Motion to Strike SLAPP Complaint, **at no point
27  during his presentation did Attorney Silver ever mention the NANO FOUNDATION, LTD.**  *See*,
    Special Motion to Strike SLAPP Complaint at 3, 13, and 14.

28

When analyzing whether the publication is defamatory, "'[t]he publication in question may not be divided into segments and each portion treated as a separate unit; it must be read as a whole in order to understand its import and the effect that it was calculated to have on the [listener], and construed in the light of the whole scope and apparent object of the [speaker], considering not only the actual language used, but the sense and meaning that may be fairly presumed to have been conveyed to those who [hear] it.'"[20]

To put Attorney Silver's comments in context of their true import and the sense and meaning they were intended to convey, filed simultaneously herewith is a declaration from Attorney Silver that attaches a transcription of the **full** passages from Attorney Silver's presentation at the May 24, 2018 Blockchain Law Summit relating to NANO and COLIN LEMAHIEU, with the portions purposefully omitted from Plaintiffs' Complaint highlighted in yellow.  Aside from their constitutional protections, the properly-contextualized comments made by Attorney Silver are otherwise non-actionable.

## 1.    The Statements Cited by Plaintiffs Are Non-Actionable, As They Are True, Are Mere Hypotheticals or Statements of Opinion, and/or Are Forms of Constitutionally-Protected Speech

**Statement No. 1** cited by Plaintiffs[21] focuses on whether Nano is "an alternative coin," a characterization which Plaintiffs loudly protest.[22]  Notwithstanding Plaintiffs' fervor, Attorney Silver's statement is true.  The term "alternative coin" or "altcoin" merely refers to any cryptocurrency that is not bitcoin, as explained by BITCOIN MAGAZINE:

Using our handy guide, you may have already familiarized yourself with the ins and outs of Bitcoin.  **But aside from bitcoin, there are hundreds of other digital currencies out there.  These are known as "altcoins," or alternatives to bitcoin**; for example, ether, ripple, zcash, monero and dash, to name just a few.  * * *[23]

---

[20] *Bartholomew v. YouTube, LLC*, 17 Cal.App.5th 1217, 1227-1228 (2017) (affirming trial court order striking Complaint as SLAPP lawsuit under Cal. Code Civ. Proc. § 425.16).

[21] *"Nano is not really a real coin, they claim to be a real coin but what they couldn't get, uh, any recognition in the United States Coinbase, Kraken, Poloniex, Bitfinex, Gemini, no one was willing to put them on their exchange. Why? Cause [sic] they were an alternative coin and they weren't really a real coin."*

[22] *See*, *e.g.*, Compl. at ¶¶ 42-44, 93.  *See also*, Plaintiffs' Opposition Memo at 6.

[23] BITCOIN MAGAZINE, *What Is an Altcoin?*, https://bitcoinmagazine.com/guides/what-altcoin (emphasis added).

DEFENDANT DAVID C. SILVER'S REPLY MEMORANDUM OF POINTS & AUTHORITIES IN FURTHER SUPPORT OF MOTION TO DISMISS COMPLAINT

1   Attorney Silver's statement about Nano being an "alternative coin" was not made with reckless

2   disregard for the truth; rather, it was a truthful statement merely pointing out that Nano is one of

3   hundreds if not thousands of cryptocurrencies other than bitcoin.  Whether Nano is a "pure

4   cryptocurrency" (as Plaintiffs allege) does not change the simple, unassailable fact that Nano is an

5   alternative to bitcoin and thus is characterized as an "alternative coin."

6          Similarly, **Statement No. 2** cited by Plaintiffs[24] is also not actionable.  That statement represents

7   little more than Attorney Silver's recitation of the allegations that were made in the then-pending First

8   NANO Lawsuit.[25]  Plaintiffs' argument that Statement No. 2 is not privileged speech protected under

9   Section 47(b) of the California Civil Code -- because it is, among other arguments proffered by Plaintiffs,

10  purportedly not about the First NANO Lawsuit or the relief sought therein by the victims comprising

11  the putative class of plaintiffs and "not connected to an issue of public interest"[26] -- is utterly baseless.

12         Statement No. 2 undoubtedly satisfies the very broadly-interpreted standard of an issue of public

13  interest protected under Section 47(b).  "California cases establish that generally, '[a] public issue is

14  implicated if the subject of the statement or activity underlying the claim: (1) was a person or entity in

15  the public eye; (2) could affect large numbers of people beyond the direct participants; or (3) involved

16  a topic of widespread, public interest.'"[27]  By Plaintiffs' own allegations, COLIN LEMAHIEU is well

17

18  [24] *They tell their customers 'if you really believe in Nano ..... go to this small exchange in Italy that we*

19  *don't know anybody and we have nothing to do but we completely vouch for him and he's running a*
    *legitimate exchange', we're gonna [sic] give him the Nano, he's gonna [sic] give us money every time*

20  *he sells a Nano, he's gonna [sic] take half and we're gonna take half, we're gonna [sic] get rich and*
    *then one day there's gonna [sic] be an exit scam and then you're gonna [sic] be out $150 million."*

21  [25] The Court may take judicial notice, even on its own, of the existence of the pleadings in the First

22  NANO Lawsuit as well as the claims presented therein, even if not adopting the truth or accuracy of
    those claims.  *See*, Fed.R.Evid. 201(c)(1) ("[t]he court . . . may take judicial notice on its own.").  *See*

23  *also*, *Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (explaining that courts may take
    judicial notice of "documents on file in federal or state courts"); *Committee to Protect our Agricultural*

24  *Water v. Occidental Oil and Gas Corp.*, 235 F.Supp.2d 1132, 1152 (E.D. Cal. 2017) (taking judicial
    notice of the existence of Complaints, and the allegations presented therein, from related lawsuits).

25
    [26] Plaintiffs' Opposition Memo at 11-16.
26
    [27] *D.C. v. R.R.*, 182 Cal.App.4th 1190, 1226 (2010).  *See also*, *Nygard, Inc. v. Uusi-Kerttula*, 159
27  Cal.App.4th 1027, 1027 (2008) ("'[A]n issue of public interest' . . . is any issue in which the public is
    interested.'").

28

DEFENDANT DAVID C. SILVER'S REPLY MEMORANDUM OF POINTS &
AUTHORITIES IN FURTHER SUPPORT OF MOTION TO DISMISS COMPLAINT

known in the cryptocurrency industry, including by those who attended Attorney Silver's speech at the Blockchain Law Summit.[28]  Similarly, NANO's reach extends to cryptocurrency holders across the world in NANO's efforts to develop a new "global digital currency."

In addition, the above-cited passage from the Blockchain Law Summit was presented by Attorney Silver as an imaginary conversation between the defendants in the First NANO Lawsuit and people who had invested in Nano to demonstrate the general theme of the NANO parties' relationship with Bitgrail -- a relationship that was alleged in the First NANO Lawsuit.  Suing Attorney Silver for making clearly hypothetical comments is legally untenable and must not be countenanced.[29]

Furthermore, Attorney Silver's "loose, figurative" statements are clearly more characteristic of statements of opinion than actual statements of fact.  "Generally, statements of opinion are not actional as defamation, whereas statements of fact are actionable."[30]  Whether a statement is one of fact or opinion is a question of law for the court to decide when taking into consideration the totality of the circumstances surrounding the statement.[31]  With regard to that contextual analysis, the California Supreme Court has stated:

> [W]here potentially defamatory statements are published in a ... setting in which the audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole, language which generally might be considered as statements of fact may well assume the character of statements of opinion.[32]

---

[28] *See*, Complaint at ¶ 69 ("*[COLIN LEMAHIEU] is the chief developer and chief executive of Nano Foundation, a widely known fact to people within his industry.  The Blockchain Convention was attended by Mr. LeMahieu's industry peers and colleagues*.").  *See also*, Plaintiffs' Opposition Memo at 2 ("*Within the small cryptocurrency industry, LeMahieu was known to be Nano's developer and chief executive*"; "*Those at the Blockchain Summit would know the Nano developer, "head guy," and chief executive was LeMahieu*"), citing DE 23-5 at ¶ 4.

[29] *Summit Bank v. Rogers*, 206 Cal.App.4th 669, 699 (2012) ("Comments that are no more than 'rhetorical hyperbole,' 'vigorous epithet[s],' 'lusty and imaginative expression[s] of ... contempt,' and language used 'in a loose, figurative sense' have all been accorded constitutional protection.").

[30] *Piping Rock Partners v. David Lerner Assocs.*, 946 F.Supp.2d 957, 970 (N.D. Cal. 2013).

[31] *Chaker v. Mateo*, 209 Cal.App.4th 1138, 1147 (2012) (internal citations omitted).  *See also*, *Roe v. Doe*, 2009 WL 1883752 (N.D. Cal. 2009) (setting forth the totality of the circumstances test that is to be used in determining whether a statement is one of fact or opinion).

[32] *Summit Bank*, 206 Cal. App. 4th at 696.

DEFENDANT DAVID C. SILVER'S REPLY MEMORANDUM OF POINTS &
AUTHORITIES IN FURTHER SUPPORT OF MOTION TO DISMISS COMPLAINT

In the instant matter, Attorney Silver was a featured speaker at a conference focused on blockchain technologies.  The small audience listening to his presentation ("Cryptocurrency, Blockchain, and U.S. Litigation -- Yesterday, Today, and Tomorrow") was expecting to hear "war stories" of litigation and, as suggested by the forward-looking portion of the title of the speech, conjecture about where some of those disputes might head in the future.  Hyperbole, opinion, and speculation were not only possible; they were a "natural and probable" expectation "undermin[ing] the [listeners'] expectations that the [statements made] are to be understood as assertions of fact."[33]  When examined in their proper context, it is clear Plaintiffs' Complaint is unsupported.

**Statement No. 3** cited by Plaintiffs[34] suffers from Plaintiffs' intentional omission of the words that precede it.  Immediately before the words cited by Plaintiffs, Attorney Silver said: "*Now, what do we do? We turned around, we sued the developers of Nano. Why?*"  Undoubtedly, Attorney Silver was addressing his small audience about the impetus behind, and circumstances surrounding, the First NANO Lawsuit.  Additionally, much like Statement No. 2 above, this passage is presented as a hypothetical future conversation between the defendants in the First NANO Lawsuit and the judge presiding over that case.  Furthermore, Plaintiffs' allegation that Attorney Silver had publicly accused them of a crime and that COLIN LeMAHIEU was facing criminal charges or a prison sentence is wildly inaccurate and misrepresentative of what Attorney Silver actually said at the conference.

Lastly, **Statement No. 4**[35] also serves as a poor example of fodder for the claims Plaintiffs have asserted.  Attorney Silver did not make that statement with malice toward COLIN LeMAHIEU, nor

---

[33] *Id*. at 699.

[34] *When [the Nano developers] were asked to fix the problem and fork it [sic], their response was 'it's against our ethos.' ... I don't care where [sic] your ethos is, you live in the United states of America, there are laws here, those laws will be followed. We are now in Federal Court. When they tell the judge 'well, we don't wanna [sic] give back the money' a Federal Court judge is gonna say 'well if you wanna [sic] stay here and you don't wanna [sic] go to jail, you're gonna [sic] give back the money'."*

[35] *Uhhhhh Nano, the CEO and the head guy at Nano who holds 90% of the Nano at like $15 it was worth $1.4 billion, I think it's down to like $4, so I think it's only worth like $400,000,000 now. Uhhh, he got divorced from his wife last year. He decided that he was ready. He deserved better because he was now rich. She took all the money. And then, the financial affidavit, she, they, argued about how much the Nano was worth and what the Nano was. But I will tell you this: he said it had value and he said that he believed it was going up and he believed it was a security cause [sic] he put it on his security side of the affidavit.*

DEFENDANT DAVID C. SILVER'S REPLY MEMORANDUM OF POINTS & AUTHORITIES IN FURTHER SUPPORT OF MOTION TO DISMISS COMPLAINT

1  does it support Plaintiffs' claims.  COLIN LEMAHIEU is a public figure -- a fact confirmed by

2  Plaintiffs' own Complaint[36] and a critically important matter of law when evaluating the impact

3  Attorney Silver's comments might have had on his audience.  "Whether an individual is a public figure

4  is a question of law that must be assessed through a totality of the circumstances."[37]  Under the totality

5  of the circumstances -- including the concessions in Plaintiffs' own filings[38] -- COLIN LEMAHIEU

6  unquestionably qualifies as a public figure.[39]

7          As a public figure, COLIN LEMAHIEU has a high pleading threshold he must satisfy, including

8  alleging "actual malice" as to each defamatory statement.[40]  The "actual malice" standard is a

9  "demanding burden" because "general allegations that a defendant should have known or should have

10  investigated the truth of his or her statements do not adequately plead actual malice."[41]  Plaintiffs have

11  made nothing more than general allegations about Attorney Silver's purported malicious intent[42];

12  which renders their pleading insufficient.

13          **2.    Plaintiffs Have Not Pleaded Viable Defamation Claims (Counts I and II)**

14          As already explained above, Statement No. 1 is not false, nor is it defamatory.  Therefore,

15  Plaintiffs cannot prevail on a claim for defamation based on that statement.  Moreover, "[a] plaintiff

17  [36] *See*, Complaint at ¶ 69 ("*[COLIN LEMAHIEU] is the chief developer and chief executive of Nano Foundation, a widely known fact to people within his industry.  The Blockchain Convention was attended by Mr. LeMahieu's industry peers and colleagues*.").

19  [37] *Manzari v. Associated Newspapers, Ltd*., 830 F.3d 881, 888 (9th Cir. 2016).

20  [38] *See*, Plaintiffs' Opposition Memo at 2 ("*Within the small cryptocurrency industry, LeMahieu was known to be Nano's developer and chief executive*"; "*Those at the Blockchain Summit would know the Nano developer, "head guy," and chief executive was LeMahieu*"), citing DE 23-5 at ¶ 4.

22  [39] *See*, *Manzari*, *supra* (holding that adult film actress "undoubtedly qualifies as a public figure" even if "she is less of a household name than stars in other sectors of [her] industry").

23  [40] *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 265 (9th Cir. 2013).

24  [41] *Wynn v. Chanos*, 75 F.Supp.3d 1228, 1239 (N.D. Cal. 2014).  *See also*, *Palin v. N.Y. Times Co*., 264 F.Supp.3d 527, 540 (S.D.N.Y. 2017) (requiring a "high degree of particularized proof . . . before plaintiff can be said to have adequately alleged clear and convincing evidence of actual malice.").

26  [42] *See*, Complaint at ¶ 75 ("*Mr. Silver failed to use any care, much less reasonable care[,] to determine the truth or falsity of the statements he made*."); Complaint at ¶ 83 (*same*); and Complaint at ¶ 91 ("*Mr. Silver acted with reckless disregard of the truth and falsity of his statements as evidenced by the fact that they lack evidentiary support*.").

1  cannot establish a probability of prevailing if the litigation privilege precludes the defendant's liability

2  on the claim."[43]  The statements Attorney Silver made at the May 2018 Blockchain Law Summit were

3  all comments upon, and an outgrowth of, his law firm's work prosecuting the then-pending First NANO

4  Lawsuit; and are thus all privileged "communications with 'some relation' to judicial proceedings'

5  [which] are 'absolutely immune from tort liability' by [Cal. Civil Code § 47(b)'s] litigation privilege."[44]

6        Lastly, Plaintiffs have not demonstrated any of the "special damages"[45] required to sustain

7  Counts I and II of the Complaint.  Plaintiffs have asserted nothing more than generalized statements of

8  "*significant emotional distress*," *damage to reputation*, "*considerable shame*," and "*pain and*

9  *embarrassment.*"  Those damages -- when not quantified with anything close to any calculated sum --

10  are simply general damages[46]; and much more than that is needed for Plaintiffs to sustain their claims.

### 3.   Plaintiffs Have Not Pleaded A Viable Trade Libel Claim (Count III)

12        Just as with Counts I and II, Plaintiffs have failed to make a prima facie showing of the "special

13  damages" required to sustain Count III.  A cause of action for trade libel requires pleading and showing

14  special damages.[47]  Furthermore, under Fed.R.Civ.P. 9(g), a pleader must state special damages with

15  specificity -- which Plaintiffs have not done.  To have sustained their claim, Plaintiffs had to have

16  "identif[ied] particular customers and transactions of which it was deprived as a result of the libel."[48]

17  Instead, Plaintiffs have identified no particular purchasers who have refrained from dealing with NANO

18  FOUNDATION, LTD. and identified no specific transactions of which NANO FOUNDATION, LTD.

---

[43] *MMM Holdings, Inc. v. Reich*, 21 Cal.App.5th 167, 183 (2018).

[44] *Rubin v. Green*, 4 Cal.4th 1187, 1193 (1993).

[45] Cal. Civ. Code § 48a(d)(2) ("'Special damages' means all damages that plaintiff alleges and proves that he or she has suffered in respect to his or her property, business, trade, profession, or occupation, including the amounts of money the plaintiff alleges and proves he or she has expended as a result of the alleged libel, and no other.")

[46] *See* Cal. Civ. Code § 48a(d)(1) ("'General damages' means damages for loss of reputation, shame, mortification, and hurt feelings.").

[47] *Leonardini v. Shell Oil Co*., 216 Cal.App.3d 547, 572 (1990).

[48] *Mann v. Quality Old Time Svc., Inc.*, 120 Cal.App.4th 90, 109 (2004).

DEFENDANT DAVID C. SILVER'S REPLY MEMORANDUM OF POINTS &
AUTHORITIES IN FURTHER SUPPORT OF MOTION TO DISMISS COMPLAINT

claims to have been deprived.  Plaintiffs' vague assertions are insufficient to show pecuniary loss[49]; and they have therefore not met their burden to demonstrate a probability of prevailing on Count III of the Complaint -- which should accordingly be dismissed.

### 4. Plaintiffs Have Not Pleaded A Viable Interference With Economic Advantage Claim (Count IV)

Plaintiffs have failed to plead the necessary elements of Count IV, which – and therefore -- is due to be dismissed.  First, Plaintiffs "cannot state a claim for intentional interference with economic relations and prospective economic advantage because protected speech cannot be the basis for such a claim."[50]  Second, Plaintiffs failed to identify any particular individual or entity with whom COLIN LeMAHIEU's prospective economic advantage was purportedly interfered.[51]  No such relationships are identified in the Complaint; nor in opposition to Attorney Silver's Special Motion to Strike and therefore Count IV should be dismissed.[52]

## III. CONCLUSION

For all the foregoing reasons, Defendant DAVID C. SILVER, an individual, respectfully requests that the Court dismiss with prejudice the Complaint filed by Plaintiffs, and enter such further relief as the Court deems just and proper.

---

[49] *See, e.g.*, *Homeland Housewares, LLC v. Euro-Pro Operating LLC*, 2014 WL 6892141, at *4 (C.D. Cal. Nov. 5, 2014) ("Plaintiffs' general statements of economic loss and bare statement for relief of $3 million dollars in damages do not sufficiently identify special damages."); *G.U.E. Tech, LLC v. Panasonic Avionics Corp.*, 2015 WL 12696203, at *5 (C.D. Cal. Sept. 1, 2015) (requiring "reasonably specific estimates of the damages allegedly stemming from the trade libel").

[50] *Gardner v. Martino*, 563 F.3d 981, 992 (9th Cir. 2009) (court expanded First Amendment protections as defense against actions for interference with prospective economic advantage and affirmed trial court's dismissal of such claims as futile).

[51] *See, e.g.*, *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 852 (9th Cir. 2004).  *See also*, *UMG Recordings, Inc. v. Global Eagle Entm't, Inc.*, 117 F.Supp.3d 1092, 1117 (C.D. Cal. 2015) ("Allegations that a defendant interfered with a relationship with an 'as yet unidentified' customer will not suffice."); *Packaging Sys., Inc. v. PRC-Desoto Int'l, Inc.*, 268 F.Supp.3d 1071, 1090 (C.D. Cal. 2017) ("Plaintiff must identify **specific third parties** with whom it had an economic relationship; a general averment that it 'had relationships with its customers and prospective customers' is insufficient.") (emphasis added).

[52] *See*, DE 23-1 at ¶ 14 (offering nothing more specific than being "*shunned by certain leaders in the industry*" and unidentified "*opportunities to advance my career and work with others in the cryptocurrency industry*").

Respectfully submitted,

By:  /s/ Brandon S. Reif
Brandon S. Reif, Esq. (State Bar No. 214706)
E-Mail: BReif@ReifLawGroup.com
**REIF LAW GROUP, P.C.**
1925 Century Park East - Suite 1700
Los Angeles, California 90067
Telephone: (310) 494-6500

F. Jason Seibert, Esq.
 (*Pro Hac Vice application forthcoming*)
E-Mail: Jason@seibert-law.com
**SEIBERT LAW**
6007 Greenway Manor Lane
Spring, Texas 77373
Telephone: (971) 235-5764

*Attorneys for Defendant David C. Silver*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing was electronically filed with the Clerk of Court on this   22nd   day of July 2019 by using the CM/ECF system and that a true and correct copy will be served via electronic mail to: **RYAN M. LAPINE, ESQ. and JOSHUA H. HERR, ESQ.**, PIERCE ROSENFELD, MEYER & SUSSMAN, LLP, *Counsel for Plaintiffs*, 232 North Canon Drive, Beverly Hills, CA 90210-5302; E-mail: RLapine@rmslaw.com; JHerr@rmslaw.com.

     /s/ Brandon S. Reif
       BRANDON S. REIF

DEFENDANT DAVID C. SILVER'S REPLY MEMORANDUM OF POINTS & AUTHORITIES IN FURTHER SUPPORT OF MOTION TO DISMISS COMPLAINT