Brandon S. Reif, Esq. (State Bar No. 214706)
E-Mail: BReif@ReifLawGroup.com
**REIF LAW GROUP, P.C.**
1925 Century Park East - Suite 1700
Los Angeles, California 90067
Telephone: (310) 494-6500

F. Jason Seibert, Esq. (*Pro Hac Vice - DE 40*)
E-Mail: Jason@seibert-law.com
**SEIBERT LAW**
6007 Greenway Manor Lane
Spring, Texas 77373
Telephone: (971) 235-5764

*Attorneys for Defendant David C. Silver*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NANO FOUNDATION, LTD., a New York non-profit corporation; and<br>COLIN LeMAHIEU, an individual;<br><br>            Plaintiffs,<br><br>v.<br><br>DAVID C. SILVER, an individual;<br><br>            Defendant.<br>--------------------------------------------------------<br>DAVID C. SILVER, an individual;<br><br>            Counter-Plaintiff,<br><br>v.<br><br>NANO FOUNDATION, LTD., a New York non-profit corporation; and<br>COLIN LeMAHIEU, an individual;<br><br>            Counter-Defendants, | Case No. 2:19-cv-04237-SVW-PJW<br><br>**DEFENDANT DAVID C. SILVER'S ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT**<br><br>**COUNTERCLAIM FOR:**<br>**(1) BREACH OF CONTRACT**<br>**(2) FRAUDULENT INDUCEMENT**<br><br>Judge:    Hon. Stephen V. Wilson |

Defendant DAVID C. SILVER (hereinafter "Defendant" or "Attorney Silver"), by and through undersigned counsel, hereby files his Answer and Affirmative Defenses to the Complaint brought against him by Plaintiffs NANO FOUNDATION, LTD. and COLIN LeMAHIEU ("Plaintiffs"); and states as follows:

1. The "allegations" contained in Paragraph 1 of the Complaint do not require a response; however, to the extent Plaintiffs *purport* to assert any valid claims stemming from Attorney Silver's May 24, 2018 comments at the Blockchain Law Summit in Los Angeles, California, Attorney Silver denies that any such claims are validly stated -- specifically denying that any valid claims for defamation *per se*, defamation *per quod*, trade libel, or intentional interference with prospective economic advantage are stated against Attorney Silver.

2. The allegations contained in Paragraph 2 of the Complaint are denied.

## THE PARTIES

3. Attorney Silver is without sufficient knowledge to admit or deny the allegations contained in Paragraph 3 of the Complaint; and he demands strict proof thereof.

4. Attorney Silver is without sufficient knowledge to admit or deny the allegations contained in Paragraph 4 of the Complaint; and he demands strict proof thereof.

5. The allegations contained in Paragraph 5 of the Complaint are denied.

6. The allegations contained in Paragraph 6 of the Complaint are admitted.

## JURISDICTION

7. The allegations contained in Paragraph 7 of the Complaint are denied.

8. The allegations contained in Paragraph 8 of the Complaint are denied.

## VENUE

9. The allegations contained in Paragraph 9 of the Complaint are denied.

10. The allegations contained in Paragraph 10 of the Complaint are denied.

## BLOCKCHAIN, CRYPTOCURRENCY, NANO, AND THE BLOCKCHAIN LAW SUMMIT

### Cryptocurrency and Blockchain Fundamentals

11. Attorney Silver is without sufficient knowledge to admit or deny the allegations contained in Paragraph 11 of the Complaint; and he demands strict proof thereof.

12. The "allegations" contained in Paragraph 12 of the Complaint do not require a response; however, to the extent Plaintiffs have misrepresented any of the underlying principles stated therein, Attorney Silver hereby denies those misrepresented facts.

13. The "allegations" contained in Paragraph 13 of the Complaint do not require a response; however, to the extent Plaintiffs have misrepresented any of the underlying principles stated therein, Attorney Silver hereby denies those misrepresented facts.

**The Blockchain Summit Gathered the Major Players in the Cryptocurrency Space in Los Angeles**

14. As to the allegations contained in Paragraph 14 of the Complaint, Attorney Silver admits that the Blockchain Law Summit took place, at least in part, on May 24, 2018 in Los Angeles, California. With regard to the remaining allegations contained in Paragraph 14 of the Complaint, Attorney Silver is without sufficient knowledge to admit or deny those allegations; and he demands strict proof thereof.

**Cryptocurrency, ICOs, and How It Operates**

15. The allegations contained in Paragraph 15 of the Complaint are denied. Contrary to Plaintiffs' allegations, the acronym "ICO" in the cryptocurrency world commonly refers to an event known as an Initial Coin Offering. The event is just that: an event. The tokens/coins disseminated through an Initial Coin Offering are not commonly referred to as "ICOs"; rather, they are referred to as tokens/coins.

16. The allegations contained in Paragraph 16 of the Complaint are denied.

17. The "allegations" contained in Paragraph 17 of the Complaint do not require a response; however, to the extent Plaintiffs have misrepresented any of the underlying principles stated therein, Attorney Silver hereby denies those misrepresented facts.

18. The "allegations" contained in Paragraph 18 of the Complaint do not require a response; however, to the extent Plaintiffs have misrepresented any of the underlying principles stated therein, Attorney Silver hereby denies those misrepresented facts.

19. The "allegations" contained in Paragraph 19 of the Complaint do not require a response; however, to the extent Plaintiffs have misrepresented any of the underlying principles stated therein, Attorney Silver hereby denies those misrepresented facts.

20. The "allegations" contained in Paragraph 20 of the Complaint do not require a response; however, to the extent Plaintiffs have misrepresented any of the underlying principles stated therein, Attorney Silver hereby denies those misrepresented facts.

21. The "allegations" contained in Paragraph 21 of the Complaint do not require a response; however, to the extent Plaintiffs have misrepresented any of the underlying principles stated therein, Attorney Silver hereby denies those misrepresented facts.

22. The "allegations" contained in Paragraph 22 of the Complaint do not require a response; however, to the extent Plaintiffs have misrepresented any of the underlying principles stated therein, Attorney Silver hereby denies those misrepresented facts.

23. The "allegations" contained in Paragraph 23 of the Complaint do not require a response; however, to the extent Plaintiffs have misrepresented any of the underlying principles stated therein, Attorney Silver hereby denies those misrepresented facts.

24. The "allegations" contained in Paragraph 24 of the Complaint do not require a response; however, to the extent Plaintiffs have misrepresented any of the underlying principles stated therein, Attorney Silver hereby denies those misrepresented facts.

### **Nano Foundation, Nano, and Colin LeMahieu**

25. As to the allegations contained in Paragraph 25 of the Complaint, Attorney Silver is without sufficient knowledge to admit or deny the allegations concerning an article published on Medium (by an author who may, or may not, have been directly compensated by Plaintiffs for writing the article); and he demands strict proof thereof. Moreover, Attorney Silver denies Plaintiffs' self-flattering comments about the purported greatness of RaiBlocks (XRB).

26. Attorney Silver is without sufficient knowledge to admit or deny the allegations contained in Paragraph 26 of the Complaint; and he demands strict proof thereof.

27. Attorney Silver is without sufficient knowledge to admit or deny the allegations contained in Paragraph 27 of the Complaint; and he demands strict proof thereof.

28. Attorney Silver is without sufficient knowledge to admit or deny the allegations contained in Paragraph 28 of the Complaint; and he demands strict proof thereof.

**Nano is Traded on Cryptopia and Then on BitGrail Where a Hack Occurred**

29. Attorney Silver is without sufficient knowledge to admit or deny the allegations contained in Paragraph 29 of the Complaint; and he demands strict proof thereof.

30. As to the allegations contained in Paragraph 30 of the Complaint, Attorney Silver is without sufficient knowledge to admit or deny the balance of the allegations in that Paragraph; and he demands strict proof thereof. However, Attorney Silver denies Plaintiffs' self-flattering comments about the "reliability and characteristics" of RaiBlocks (XRB).

31. Attorney Silver is without sufficient knowledge to admit or deny the allegations contained in Paragraph 31 of the Complaint; and he demands strict proof thereof.

32. Attorney Silver is without sufficient knowledge to admit or deny the allegations contained in Paragraph 32 of the Complaint; and he demands strict proof thereof.

33. Attorney Silver is without sufficient knowledge to admit or deny the allegations contained in Paragraph 33 of the Complaint; and he demands strict proof thereof.

34. Attorney Silver is without sufficient knowledge to admit or deny the allegations contained in Paragraph 34 of the Complaint; and he demands strict proof thereof.

35. Attorney Silver is without sufficient knowledge to admit or deny the allegations contained in Paragraph 35 of the Complaint; and he demands strict proof thereof. Moreover, Attorney Silver denies Plaintiffs' suggestion that Nano "is objectively the best pure cryptocurrency."

36. As to the allegations contained in Paragraph 36 of the Complaint, Attorney Silver admits that more than $150,000,000 worth of XRB were stolen from customer accounts at BitGrail. However, Attorney Silver is without sufficient knowledge to admit or deny the allegations that the third-party hacker or group of hackers are unrelated in any way to NANO FOUNDATION or LEMAHIEU; and he demands strict proof thereof.

37. Attorney Silver is without sufficient knowledge to admit or deny the allegations contained in Paragraph 37 of the Complaint; and he demands strict proof thereof.

38. As to the allegations contained in Paragraph 38 of the Complaint, Attorney Silver is without sufficient knowledge to admit or deny the allegations that: (1) NANO FOUNDATION immediately reported the hack to the U.S. Federal Bureau of Investigation, (2) Plaintiffs did not profit

from the hack, and (3) Plaintiffs "have taken all steps within their power to assist law enforcement in attempting to remedy the hack"; and he demands strict proof thereof. However, Attorney Silver denies Plaintiffs' allegations that they "had nothing do wo with the hack" and "were not in any way the cause of it."

39. As to the allegations contained in Paragraph 39 of the Complaint, Attorney Silver is without sufficient knowledge to admit or deny the balance of the allegations in that Paragraph; and he demands strict proof thereof. However, Attorney Silver denies Plaintiffs' self-flattering comments about the "sterling reputation" of RaiBlocks (XRB).

**DEFENDANT DAVID C. SILVER MAKES A SERIES OF DAMAGING FALSE STATEMENTS ABOUT NANO FOUNDATION AND MR. LEMAHIEU IN A PANEL SPEECH AT THE BLOCKCHAIN SUMMIT TO THEIR INDUSTRY PEERS**

40. The allegations contained in Paragraph 40 of the Complaint are admitted.

41. Attorney Silver is without sufficient knowledge to admit or deny the allegations contained in Paragraph 41 of the Complaint; and he demands strict proof thereof.

**The Defamatory Statements at Issue**

**DEFAMATORY STATEMENT #1**

42. As to the allegations contained in Paragraph 42 of the Complaint, Attorney Silver states that the transcript and video of Attorney Silver's presentation memorialized his comments and speaks for itself. To the extent Plaintiffs have mischaracterized, misrepresented, or misquoted the factual content of Attorney Silver's presentation, Attorney Silver hereby denies any such mischaracterized, misrepresented and/or misquoted facts.

43. The allegations contained in Paragraph 43 of the Complaint are denied.

44. The allegations contained in Paragraph 44 of the Complaint are denied.

**DEFAMATORY STATEMENT #2**

45. As to the allegations contained in Paragraph 45 of the Complaint, Attorney Silver states that the transcript and video of Attorney Silver's presentation memorialized his comments and speaks for itself. To the extent Plaintiffs have mischaracterized, misrepresented, or misquoted the factual content of Attorney Silver's presentation, Attorney Silver hereby denies any such mischaracterized,

1  misrepresented and/or misquoted facts.  For example, Attorney Silver denies any of the statements he
2  made were false.

3  46.  The allegations contained in Paragraph 46 of the Complaint are denied.

4  47.  The allegations contained in Paragraph 47 of the Complaint are denied.

5  48.  The allegations contained in Paragraph 48 of the Complaint are denied.

6  49.  As to the allegations contained in Paragraph 49 of the Complaint, Attorney Silver is without sufficient knowledge to admit or deny the allegations Plaintiffs never gave Mr. Firano or BitGrail any XRB; and he demands strict proof thereof.  However, Attorney Silver admits Plaintiffs' allegations that third-party XRB owners traded their coins at BitGrail.

10  50.  The allegations contained in Paragraph 50 of the Complaint are denied.

11  51.  The allegations contained in Paragraph 51 of the Complaint are denied.

12  52.  The allegations contained in Paragraph 52 of the Complaint are denied.

**DEFAMATORY STATEMENT #3**

14  53.  As to the allegations contained in Paragraph 53 of the Complaint, Attorney Silver states that the transcript and video of Attorney Silver's presentation memorialized his comments and speaks for itself.  To the extent Plaintiffs have mischaracterized, misrepresented, or misquoted the factual content of Attorney Silver's presentation, Attorney Silver hereby denies any such mischaracterized, misrepresented and/or misquoted facts.

19  54.  The allegations contained in Paragraph 54 of the Complaint are denied.

20  55.  As to the allegations contained in Paragraph 55 of the Complaint, Attorney Silver is without sufficient knowledge to admit or deny the allegations that: (1) NANO FOUNDATION immediately reported the hack to the U.S. Federal Bureau of Investigation, and (2) Plaintiffs "have assisted law enforcement in its efforts to investigate this third-party criminal act"; and he demands strict proof thereof.  However, Attorney Silver denies Plaintiffs' allegations that the Nano developers and executives never stated or implied that it was against their ethos to institute an adequate remedy to the disappearance of the more than $150,000,000 worth of XRB from customer accounts at BitGrail.

27  56.  The allegations contained in Paragraph 56 of the Complaint are denied.

28  57.  The allegations contained in Paragraph 57 of the Complaint are denied.

**DEFAMATORY STATEMENT #4**

58. As to the allegations contained in Paragraph 58 of the Complaint, Attorney Silver states that the transcript and video of Attorney Silver's presentation memorialized his comments and speaks for itself. To the extent Plaintiffs have mischaracterized, misrepresented, or misquoted the factual content of Attorney Silver's presentation, Attorney Silver hereby denies any such mischaracterized, misrepresented and/or misquoted facts.

59. The allegations contained in Paragraph 59 of the Complaint are denied.

60. Attorney Silver is without sufficient knowledge to admit or deny the allegations contained in Paragraph 60 of the Complaint; and he demands strict proof thereof.

61. Attorney Silver is without sufficient knowledge to admit or deny the allegations contained in Paragraph 61 of the Complaint; and he demands strict proof thereof.

62. As to the allegations contained in Paragraph 62 of the Complaint, Attorney Silver states that the referenced documents speak for themselves. To the extent Plaintiffs have mischaracterized, misrepresented, or misquoted the factual content of any of those documents, Attorney Silver hereby denies any such mischaracterized, misrepresented and/or misquoted facts.

63. As to the allegations contained in Paragraph 63 of the Complaint, Attorney Silver states that the referenced documents speak for themselves. To the extent Plaintiffs have mischaracterized, misrepresented, or misquoted the factual content of any of those documents, Attorney Silver hereby denies any such mischaracterized, misrepresented and/or misquoted facts.

64. The allegations contained in Paragraph 64 of the Complaint are denied.

65. Attorney Silver is without sufficient knowledge to admit or deny the allegations contained in Paragraph 65 of the Complaint; and he demands strict proof thereof.

66. As to the allegations contained in Paragraph 66 of the Complaint, Attorney Silver denies that XRB is not a security.

67. The allegations contained in Paragraph 67 of the Complaint are denied.

## FIRST CLAIM
### Defamation Per Se - by Plaintiff Colin LeMahieu

68. Attorney Silver re-asserts and re-alleges his responses to the allegations contained in Paragraphs 1-67 of the Complaint as if fully set forth herein.

69. The allegations contained in Paragraph 69 of the Complaint are denied.

70. As to the allegations contained in Paragraph 70 of the Complaint, Attorney Silver states that the transcript and video of Attorney Silver's presentation memorialized his comments and speaks for itself. To the extent Plaintiffs have mischaracterized, misrepresented, or misquoted the factual content of Attorney Silver's presentation, Attorney Silver hereby denies any such mischaracterized, misrepresented and/or misquoted facts.

71. The allegations contained in Paragraph 71 of the Complaint are denied.

72. As to the allegations contained in Paragraph 72 of the Complaint, Attorney Silver states that the transcript and video of Attorney Silver's presentation memorialized his comments and speaks for itself. To the extent Plaintiffs have mischaracterized, misrepresented, or misquoted the factual content of Attorney Silver's presentation, Attorney Silver hereby denies any such mischaracterized, misrepresented and/or misquoted facts.

73. The allegations contained in Paragraph 73 of the Complaint are denied.

74. The allegations contained in Paragraph 74 of the Complaint are denied.

75. The allegations contained in Paragraph 75 of the Complaint are denied.

76. The allegations contained in Paragraph 76 of the Complaint are denied.

77. The allegations contained in Paragraph 77 of the Complaint are denied.

78. The allegations contained in Paragraph 78 of the Complaint are denied.

## SECOND CLAIM
### Defamation Per Quod - by Plaintiff Colin LeMahieu

79. Attorney Silver re-asserts and re-alleges his responses to the allegations contained in Paragraphs 1-79 of the Complaint as if fully set forth herein.

80. The allegations contained in Paragraph 80 of the Complaint are denied.

81. As to the allegations contained in Paragraph 81 of the Complaint, Attorney Silver states that the transcript and video of Attorney Silver's presentation memorialized his comments and speaks

for itself.  To the extent Plaintiffs have mischaracterized, misrepresented, or misquoted the factual content of Attorney Silver's presentation, Attorney Silver hereby denies any such mischaracterized, misrepresented and/or misquoted facts.

82. The allegations contained in Paragraph 82 of the Complaint are denied.

83. The allegations contained in Paragraph 83 of the Complaint are denied.

84. The allegations contained in Paragraph 84 of the Complaint are denied.

85. The allegations contained in Paragraph 85 of the Complaint are denied.

86. The allegations contained in Paragraph 86 of the Complaint are denied.

### THIRD CLAIM
**Trade Libel - by Plaintiff Nano Foundation**

87. Attorney Silver re-asserts and re-alleges his responses to the allegations contained in Paragraphs 1-86 of the Complaint as if fully set forth herein.

88. The allegations contained in Paragraph 88 of the Complaint are denied.

89. As to the allegations contained in Paragraph 89 of the Complaint, Attorney Silver states that the transcript and video of Attorney Silver's presentation memorialized his comments and speaks for itself.  To the extent Plaintiffs have mischaracterized, misrepresented, or misquoted the factual content of Attorney Silver's presentation, Attorney Silver hereby denies any such mischaracterized, misrepresented and/or misquoted facts.

90. The allegations contained in Paragraph 90 of the Complaint are denied.

91. The allegations contained in Paragraph 91 of the Complaint are denied.

92. The allegations contained in Paragraph 92 of the Complaint are denied.

93. The allegations contained in Paragraph 93 of the Complaint are denied.

94. The allegations contained in Paragraph 94 of the Complaint are denied.

### FOURTH CLAIM
**Intentional Interference with Prospective Economic Advantage - by Plaintiff Colin LeMahieu**

95. Attorney Silver re-asserts and re-alleges his responses to the allegations contained in Paragraphs 1-94 of the Complaint as if fully set forth herein.

96. Attorney Silver is without sufficient knowledge to admit or deny the allegations contained in Paragraph 96 of the Complaint; and he demands strict proof thereof.

97. As to the allegations contained in Paragraph 97 of the Complaint, Attorney Silver states that the transcript and video of Attorney Silver's presentation memorialized his comments and speaks for itself. To the extent Plaintiffs have mischaracterized, misrepresented, or misquoted the factual content of Attorney Silver's presentation, Attorney Silver hereby denies any such mischaracterized, misrepresented and/or misquoted facts.

98. The allegations contained in Paragraph 98 of the Complaint are denied.

99. The allegations contained in Paragraph 99 of the Complaint are denied.

100. The allegations contained in Paragraph 100 of the Complaint are denied.

101. The allegations contained in Paragraph 101 of the Complaint are denied.

102. The allegations contained in Paragraph 102 of the Complaint are denied.

Any allegations contained in the Complaint not otherwise specifically admitted or responded to are hereby denied.

## AFFIRMATIVE DEFENSES

1. As his First Affirmative Defense, Attorney Silver states that the Complaint fails to state a valid cause of action against him. Specifically, no cause of action is properly stated against Attorney Silver for Defamation Per Se, Defamation Per Quod, Trade Libel, or Intentional Interference with Prospective Economic Advantage.

2. As his Second Affirmative Defense, Attorney Silver states that Plaintiffs suffered no damages as a result of the conduct alleged in the Complaint.

3. As his Third Affirmative Defense, Attorney Silver states that the damages alleged to have been suffered by Plaintiffs were caused, if at all, by Plaintiffs' own misconduct, negligence, errors, and omissions.

4. As his Fourth Affirmative Defense, Attorney Silver states that Plaintiffs' claims are barred by the doctrine of waiver, ratification, and/or estoppel -- including the waiver of rights contained in the September 2018 Settlement Agreement executed in connection with the action styled *Brola v. Nano, et al.*, U.S. District Court - E.D.N.Y. - Case No: 1:18-cv-02049-NG-RML.

5. As his Fifth Affirmative Defense, Attorney Silver states that Plaintiffs' claims are barred by the doctrine of unclean hands.

6. As his Sixth Affirmative Defense, Attorney Silver states that Plaintiffs failed to mitigate their own damages and/or minimize any losses they allegedly sustained; and any recovery against Attorney Silver must be reduced by that amount.

7. As his Seventh Affirmative Defense, Attorney Silver states that Plaintiffs' claims are barred by Cal. Civil Code § 47(b)'s litigation privilege.

8. As his Eighth Affirmative Defense, Attorney Silver states that Plaintiffs' claims are barred by the First Amendment of the United States Constitution.

9. As his Ninth Affirmative Defense, Attorney Silver states that Plaintiffs' claims are barred because his May 24, 2018 comments at the Blockchain Law Summit in Los Angeles, California were true.

10. As his Tenth Affirmative Defense, Attorney Silver states that Plaintiffs' claims are barred because his May 24, 2018 comments at the Blockchain Law Summit in Los Angeles, California were mere hypotheticals or statements of opinion.

11. As his Eleventh Affirmative Defense, Attorney Silver states that Plaintiffs' claims are barred because Plaintiffs have not suffered any "special damages" as that term is defined in Cal. Civ. Code § 48a(d)(2) and differentiated from "general damages" which are defined in Cal. Civ. Code § 48a(d)(1).

12. As his Twelfth Affirmative Defense, Attorney Silver states that Plaintiffs' claims are barred because LEMAHIEU is a "public figure" and Attorney Silver did not his May 24, 2018 comments at the Blockchain Law Summit in Los Angeles, California with actual malice toward LEMAHIEU.

13. As his Thirteenth Affirmative Defense, Attorney Silver states that Plaintiffs' claims are barred because no particular purchasers have refrained from dealing with NANO FOUNDATION, LTD. and NANO FOUNDATION, LTD. has not been deprived of specific transactions as a direct result of Attorney Silver's May 24, 2018 comments at the Blockchain Law Summit in Los Angeles, California.

14. As his Fourteenth Affirmative Defense, Attorney Silver states that Plaintiffs' claims are barred because there is no identifiable individual or entity with whom LeMAHIEU's prospective economic advantage was purportedly interfered. LeMAHIEU's assertion that his relationship with the cryptocurrency community at-large was purportedly interfered is not actionable.

15. As his Fifteenth Affirmative Defense, Attorney Silver specifically reserves the right to amend this Answer to incorporate facts not yet known to him which may be discovered during the course of this litigation.

WHEREFORE, Defendant, DAVID C. SILVER, an individual, respectfully requests this Honorable Court enter a judgment in his favor, with costs, attorneys' fees, and such other relief as the Court deems just and proper awarded to Defendant, on the claims asserted in Plaintiffs' Complaint.

# COUNTERCLAIM

Counter-Plaintiff DAVID C. SILVER, an individual (hereafter referred to as "Attorney Silver"), by and through undersigned counsel, sues Counter-Defendants NANO FOUNDATION, LTD., a New York non-profit corporation ("NANO FOUNDATION") and COLIN LEMAHIEU, an individual ("LEMAHIEU"), for damages. As grounds therefor, Counter-Plaintiff alleges the following:

## PRELIMINARY STATEMENT

1. In a class action lawsuit commenced in April 2018 and concluded in October 2018 -- the law firms Silver Miller -- of which Attorney Silver is a Founding Partner -- and The Braunstein Law Firm, PLLC represented the plaintiff and putative plaintiff class against NANO f/k/a RAIBLOCKS f/k/a HIEUSYS, LLC, a Texas company ("NANO") and the following key members of NANO's core team of developers and executives: COLIN LEMAHIEU, an individual; MICA BUSCH, an individual; ZACH SHAPIRO, an individual; and TROY RETZER, an individual (collectively, "the NANO Core Team"). The action (the "First NANO Lawsuit")[1] was brought under the Private Securities Litigation Reform Act of 1995, as amended (the "PSLRA"), and alleged violations of Sections 12(a)(1) and 15(a) [15 U.S.C. §§ 77l(a)(1), 77o(a)] of the Securities Act of 1933 (the "Securities Act") stemming from the alleged sale of unregistered securities in the form of Nano (f/k/a RaiBlocks) [XRB], which was developed and promoted by the NANO Core Team but never registered with, or exempted from registration by, any regulatory authority.

2. On April 9, 2018, a PSLRA-required press release was issued to notify members of the putative class of the First NANO Lawsuit, inform them of the allegations, and to advise them of their opportunity to serve as the lead plaintiff in the lawsuit.

3. As alleged in the First NANO Lawsuit, the harm flowing to certain XRB investors from the NANO Core Team's acts and omissions arose from, *inter alia*:

➢ The NANO Core Team's failure to register XRB (or secure exemption from registration) with any securities regulatory authority;

---

[1] *Brola v. Nano, et al.*, U.S. District Court - E.D.N.Y. - Case No: 1:18-cv-02049-NG-RML.

- The NANO Core Team's work in conceiving, developing, promoting, and selling XRB to the public, while withholding for themselves millions if not tens of millions of XRB, most of which are owned by LEMAHIEU;

- The NANO Core Team publicly promoting BitGrail as a safe and reliable place for XRB holders to stake and exchange their XRB, and XRB holders relying on that endorsement in choosing the exchange;

- BitGrail announcing in February 2018 that it had "lost" $170 Million worth of XRB from its exchange; and

- The fact that the most direct solution to the XRB investors' problems resides squarely within the NANO Core Team's hands, yet the NANO Core Team refused to rewrite the XRB code and simply restore ownership to the investors. In crypto terms, the NANO Core Team could have created a "rescue fork" to protect investors, but the NANO Core Team refused to implement that strategy because it is not in their own best interests.

4. In August 2018, the Parties began discussing the parameters of a potential settlement of the First NANO Lawsuit.

5. Specifically, on August 24, 2018, Peter Scoolidge -- counsel for the defendants in the First NANO Lawsuit ("Mr. Scoolidge") -- sent Attorney Silver an e-mail making a list of demands and offering financial compensation to be paid to Attorney Silver's client to satisfy his claim.

6. On August 29, 2018, Attorney Silver sent Mr. Scoolidge an e-mail with the first draft of the *Brola* Settlement Agreement, containing the exact language in the release at issue in this lawsuit.

7. On September 6, 2018, Mr. Scoolidge sent an e-mail to Attorney Silver, stating:

> *The last piece, from my clients' perspective, is necessary because of the presentation you gave at the Blockchain Law Summit in LA back in May [2018]. Colin LeMahieu took issue with all of the factual representations you made during that talk, particularly the assertions that Nano was splitting profits 50/50 with BitGrail and that he had listed the coin as a security in his divorce papers. As a result of his perception that you are out there making statements with no basis in reality[,] he wants you explicitly bound to the confidentiality provision as a signatory to the agreement. If you prefer to have a side agreement where only you and Colin are signatories[,] that is fine.*

8. In an e-mail the same day, Attorney Silver rejected all of the edits Mr. Scoolidge requested related to the Settlement Agreement and warned Mr. Scoolidge that "they teeter on the unethical[,] by the way."

9. Later that day, Mr. Scoolidge e-mailed Attorney Silver and requested an opportunity to discuss the unethical nature of his requests and why his edits were rejected.

10. In that conversation, Attorney Silver and Mr. Scoolidge discussed that Attorney Silver was an intended third party beneficiary of the Settlement Agreement and agreed that even though Attorney Silver was not signing the Settlement Agreement, he was bound by it and included within the Mutual General Release, *to wit*:

> *4. **Mutual General Release:** Each Party hereby remises, releases, acquits, satisfies, and forever discharges each and every other Party (including: (i) with regard to each Party who is a natural person, that Party's guardians, successors, assigns, heirs, executors, administrators, trustees, accountants, and insurers, and (ii) with regard to each Party which is not a natural person, each such Party's past and present parent, subsidiary, affiliated, related, or predecessor entities, their successors and assigns, and any and all of each such Party's past and present officers, directors, agents, accountants, insurers, servants, employees, shareholders, members, and partners, all of the foregoing in (i) and (ii) hereinafter collectively referred to as the "Releasees"), of and from any and all, and all manner of, claims, actions, causes of action, suits, debts, sums of money, accounts, reckonings, contracts, controversies, agreements, promises, damages, and demands whatsoever, in law or in equity, which each Party had or now has, or which any successor or assign of each Party hereafter can, shall or may have, against any of the Releasees for, upon, or by reason of any matter, cause or thing whatsoever, from the beginning of the world to the date of this Agreement, whether known or unknown, direct or indirect, vested or contingent. * * ***

11. Attorney Silver offered to adopt the language Mr. Scoolidge requested related to the comments made by Mr. Silver at the Blockchain Law Summit as long as Attorney Silver did not need to sign the Settlement Agreement and it was agreed that Attorney Silver would be a third-party intended beneficiary of language in the Mutual General Release.

12. The following day, Mr. Scoolidge agreed that Attorney Silver did not need to be a signatory and that by including the additional language related to the statements made by Attorney Silver at the Blockchain Law Summit, the issue would be behind Attorney Silver, LEMAHIEU and the NANO Foundation.

13. Specifically, Mr. Scoolidge, on his clients' behalf, further agreed that the release contained in the Settlement Agreement -- as written and unedited by Mr. Scoolidge -- would include the NANO Core Team's release of any and all claims against Attorney Silver relating to Attorney Silver's speech at the Blockchain Law Summit.

14. On September 17, 2018, utilizing the language from September 7, 2018 verbatim, the language that Mr. Scoolidge represented covered the statements made at the Blockchain Law Summit were incorporated into the finalized Settlement Agreement.

15. The First NANO Lawsuit was thereby settled; and the parties to that dispute memorialized their negotiated settlement in the Settlement Agreement.

16. As memorialized in the Mutual General Release of the Settlement Agreement, the NANO Core Team (including their parent, subsidiary, affiliated, related, or predecessor entities) released the plaintiff as well as his past and present agents from any and all claims, actions, causes of action, and suits whatsoever.

17. The language in the Mutual General Release was never altered by counsel for NANO except to add a sentence stating: "*Brola covenants and agrees to withdraw any claims he has filed with the Securities Exchange Commission concerning NANO and to the extent permissible under law to cease any further action with that agency regarding such claims*."

18. As noted above, Attorney Silver was one of the plaintiff's agents in the First NANO Lawsuit -- having represented the plaintiff's interests in the First NANO Lawsuit.

19. Counter-Plaintiff has duly performed all of his duties and obligations, and any conditions precedent to Plaintiff bringing this action have occurred, have been performed, or else have been excused or waived.

20. To enforce his rights, Plaintiff has retained undersigned counsel and is obligated to pay counsel a reasonable fee for its services, for which Counter-Defendants are liable as a result of their bad faith and otherwise.

### THE PARTIES

#### Counter-Plaintiff

21. Counter-Plaintiff DAVID C. SILVER ("Attorney Silver") is a natural person domiciled in Broward County, Florida and is *sui juris*.

#### Counter-Defendants

22. Counter-Defendant NANO FOUNDATION is a non-profit corporation organized and existing under the laws of the State of New York. Upon information and belief, NANO

FOUNDATION is an alter ego of Hieusys LLC d/b/a Nano f/k/a RaiBlocks ("NANO"), a Texas company which lists its principal place of business in Austin, Texas.

23. Counter-Defendant LeMAHIEU is an individual domiciled in Austin, Texas and is *sui juris*. According to NANO's own published promotional materials, LeMAHIEU founded NANO in 2014 and serves as the Company's Lead Developer, "spearheading development of the core protocol."

## COUNT I - BREACH OF CONTRACT
### (against Counter-Defendant LeMahieu and Nano Foundation)

Counter-Plaintiff re-alleges, and adopts by reference herein, Paragraphs 1-23 above, and further alleges:

24. The Settlement Agreement in the First NANO Lawsuit is a binding contract.

25. Attorney Silver is an intended third-party beneficiary under the Settlement Agreement.

26. At the time the Settlement Agreement was negotiated and executed in September 2018, LeMAHIEU and NANO FOUNDATION were aware of Attorney Silver's presentation at the May 2018 Blockchain Law Summit; and they knowingly released Attorney Silver from any and all claims, actions, causes of action, and suits whatsoever arising out of, or relating to, Attorney Silver's presentation at the Blockchain Law Summit.

27. Counsel for LeMAHIEU and NANO FOUNDATION specifically included in the Settlement Agreement language related to the statements made by Attorney Silver and agreed that the confidentiality and release sections applied to Attorney Silver as an intended third-party beneficiary.

28. LeMAHIEU and NANO FOUNDATION breached the Settlement Agreement -- and the release provision therein -- when they filed against Attorney Silver the Complaint in the instant matter.

29. As a direct and proximate result of LeMAHIEU/NANO FOUNDATION's breach of the Settlement Agreement, Attorney Silver has suffered damage.

WHEREFORE, Counter-Plaintiff DAVID C. SILVER, an individual, demands entry of a judgment against Counter-Defendants NANO FOUNDATION, LTD., a New York non-profit corporation, and COLIN LeMAHIEU, an individual; for damages, including compensatory damages, interest, expenses, and any other relief the Court deems just and proper.

## COUNT II – FRAUDULENT INDUCEMENT
### (against Counter-Defendant LeMahieu)

Counter-Plaintiff re-alleges, and adopts by reference herein, Paragraphs 1-23 above, and further alleges:

30. Between August 15, 2018 and October 25, 2018, Mr. Scoolidge -- at the direction of, and with authorization by, Counter-Defendant LEMAHIEU -- provided Attorney Silver with intentionally false and misleading information.

31. Between August 15, 2018 and October 25, 2018, Mr. Scoolidge -- at the direction of, and with authorization by, Counter-Defendant LEMAHIEU -- addressed the issues between Attorney Silver and Counter-Defendants and stated that adding additional language to the Settlement Agreement for the First NANO Lawsuit would release Attorney Silver from any further actions by Counter-Defendants.

32. Specifically, on September 6, 2018, Mr. Scoolidge informed Attorney Silver -- at the direction of, and with authorization by, Counter-Defendant LEMAHIEU -- that the parties to the First NANO Lawsuit had agreed that Mr. Silver was an intended third-party beneficiary of the Settlement Agreement and that in return for Mr. Silver agreeing to to abide by the provisions of the Settlement Agreement, Attorney Silver would be released of any and all claims related to statements made by Mr. Silver at the Blockchain Law Summit.

33. LEMAHIEU intended that Attorney Silver would be induced into action by relying upon the statements of fact made to him by and on behalf of LEMAHIEU.

34. In accepting the conditions in the Settlement Agreement and ceasing further prosecution of the First NANO Lawsuit, Attorney Silver reasonably and justifiably relied on the statements of fact made to him by and on behalf of LEMAHIEU.

35. As a direct and proximate result of Attorney Silver's reliance on the statements made to him by Mr. Scoolidge as an agent of LEMAHIEU, Attorney Silver has suffered damage.

36. At the August 12, 2019 hearing on the Motion to Dismiss the Complaint in this case, counsel for LEMAHIEU stated that Mr. Scoolidge had specifically negotiated the Settlement Agreement and release in the First NANO Lawsuit to bifurcate the releases so that they did not include Mr. Silver as a releasee.

37. The above-cited representation to the Court on behalf of LeMAHIEU is demonstrably false.

WHEREFORE, Counter-Plaintiff DAVID C. SILVER, an individual, demands entry of a judgment against Counter-Defendant COLIN LeMAHIEU, an individual, for damages, including compensatory damages, interest, expenses, and any other relief the Court deems just and proper.

Respectfully submitted,

By: /s/ Brandon S. Reif
Brandon S. Reif, Esq. (State Bar No. 214706)
E-Mail: BReif@ReifLawGroup.com
**REIF LAW GROUP, P.C.**
1925 Century Park East - Suite 1700
Los Angeles, California 90067
Telephone: (310) 494-6500

F. Jason Seibert, Esq. (*Pro Hac Vice - DE 40*)
E-Mail: Jason@seibert-law.com
**SEIBERT LAW**
6007 Greenway Manor Lane
Spring, Texas 77373
Telephone: (971) 235-5764

*Attorneys for Defendant David C. Silver*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing was electronically filed with the Clerk of Court on this __3rd__ day of September 2019 by using the CM/ECF system and that a true and correct copy will be served via electronic mail to: **RYAN M. LAPINE, ESQ. and JOSHUA H. HERR, ESQ.**, DIAMOND MCCARTHY LLP, *Attorneys for Plaintiffs Nano Foundation, Ltd. and Colin LeMahieu*, 1999 Avenue of the Stars - 11th Floor, Los Angeles, California 90067; E-mail: Ryan.Lapine@diamondmccarthy.com, Joshua.Herr@diamondmccarthy.com.

　　　　　　　　　　　　　　　　　　　 /s/ Brandon S. Reif
　　　　　　　　　　　　　　　　　　　　 BRANDON S. REIF