Bridget B. Hirsch, Esq. (State Bar No. 257015)
E-Mail: bhirsch@andersonkill.com
**ANDERSON KILL CALIFORNIA L.L.P.**
355 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 943-1444

Stephen D. Palley, Esq. (*pro hac vice*)
*spalley@andersonkill.com*
**ANDERSON KILL L.L.P.**
1717 Pennsylvania Ave., NW, Suite 200
Washington, DC 20006
Telephone: (202) 416-6500
Facsimile: (202) 416-6555

*Attorneys for Defendant David C. Silver*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

NANO FOUNDATION, LTD., a New York non-profit corporation; and COLIN LEMAHIEU, an individual

Plaintiffs

vs.

DAVID C. SILVER, an individual,

Defendant.

Case no.: 2:19-cv-04237-SVW-PJW
Hon. Michael R. Wilner

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO STAY**

**Date Action Filed: May 15, 2019**

**Hearing Date: January 8, 2020**
**Hearing Time: 9:30 a.m.**
**Courtroom: 550**



**ANDERSON KILL CALIFORNIA L.L.P.**
Wells Fargo Plaza
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071

ANDERSON KILL CALIFORNIA L.L.P.
Wells Fargo Plaza
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071

# TABLE OF CONTENTS

I. Preliminary Statement....................1

II. Introduction....................1

III. Factual and Procedural Background....................4

A. The First Nano Class Action Lawsuit....................4

B. The Second Nano Class Action Lawsuit....................5

C. The Presentation....................7

D. This Lawsuit....................8

IV. Why the Motion Should Be Granted....................8

V. Conclusion....................11

ANDERSON KILL CALIFORNIA L.L.P.
Wells Fargo Plaza
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071

# TABLE OF AUTHORITIES

## Cases

*CMAX, Inc. v. Hall*, 300 F. 2d 265, 268 (9th Cir. 1962) .......... 9

*Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) .......... 8

*Fabian v. Nano, et. al.,* Case No.: 4-19-cv-00054-YRG (N.D. Cal. 2019) .......... 9

*Keating v. Office of Thrift Supervision*, 45 F. 3d 322, 324 (9th Cir. 1995) .......... 9

*Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) .......... 8, 9

*Leyva v. Certified Grocers of Calif., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979) .......... 8, 9

*Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) .......... 9

ANDERSON KILL CALIFORNIA L.L.P.
Wells Fargo Plaza
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071

## I. Preliminary Statement

This is a tale of two overlapping lawsuits, only one of which needs to be tried now. Fortunately, this Court has the power to simplify things and stay **this** case so that a related, earlier-filed lawsuit[1] can be resolved before the Court and the parties expend their limited resources and turn to this related lawsuit. If needed, following the conclusion of the first-filed lawsuit, the parties can revisit Plaintiffs' claims at that time if grounds for doing so remain. For this reason (and as set forth in greater detail below), Defendant David C. Silver ("Mr. Silver") respectfully requests that this Court enter an Order staying this cause.

## II. Introduction

The lawsuit presently before this Court concerns statements made by Mr. Silver at an industry conference on May 24, 2018 related to a lawsuit against Plaintiffs Nano Foundation, Ltd. ("Nano") and Colin LeMahieu ("Mr. LeMahieu"), against whom Mr. Silver had filed suit on behalf of clients in a putative class action. Plaintiffs responded by suing Mr. Silver for defamation, trade libel, and intentional interference with a prospective economic advantage. They say Mr. Silver's statements about the Nano crypto token and the circumstance of its theft from an Italian crypto exchange were wrong, actionable, and damaging. Mr. LeMahieu also says that inaccurate statements by Mr. Silver about Nano in connection with the circumstances of his divorce defamed him.

What makes this lawsuit unusual is not the causes of action alleged: Plaintiffs object to things that Defendant said about them, which (whatever the legal merits of Plaintiffs' claims, which Defendant disputes) is the kind of thing that one sees in lawsuits every day. The unusual aspect of this lawsuit is that the Plaintiffs in **this** case are defendants in a pending (and earlier-filed) class action

---

[1] *Fabian v. Nano, et al.*, U.S. District Court - N.D. Cal. - Case No.: 4-19-cv-00054-YRG (the "First Nano Class Action Lawsuit").

ANDERSON KILL CALIFORNIA L.L.P.
Wells Fargo Plaza
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071

in which the Defendant in **this** lawsuit is counsel for the class action plaintiffs. What makes this lawsuit even more unusual – and the reason for this motion – is that most of the statements of fact at issue in **this** lawsuit are directly related to the merits of that related pending class action lawsuit. Stated simply, Plaintiffs are suing Defendant for statements he made about them, the merits of which are already being litigated in a separate lawsuit where the Defendant here is counsel for the class action Plaintiffs and the Plaintiffs here are Defendants. It makes little, if any, sense to proceed with the instant lawsuit while the factual determinations underpinning this matter -- primarily, the truthfulness of Mr. Silver's statements -- are being addressed, examined, and resolved in an earlier-filed yet still pending related lawsuit involving Nano and Mr. LeMahieu.

This Court should exercise its inherent authority to stay this case. Requiring Defendant to litigate the merits of this case while simultaneously litigating the same or similar claims and issues in parallel litigation with Nano and Mr. LeMahieu where Mr. Silver is counsel would cause damage to both himself and his clients and would result in significant and needless hardship. Moreover, such duplicative labor is not a good use of judicial resources. Ordering a stay would be consistent with the orderly course of justice measured in terms of simplifying or complicating issues, proof, and questions of law, which could be expected to result from a stay. It makes no sense to litigate in this case whether or not the Nano token is a "real cryptocurrency" nor the circumstances of its theft from the BitGrail exchange for purposes of dignitary tort claims when those very issues are already being litigated in a separate lawsuit.

Mr. LeMahieu will likely assert that Mr. Silver also made statements about Mr. LeMahieu's divorce that were inaccurate and that those statements are at best tangentially related to the parallel litigation. To the extent Mr. LeMahieu makes a viable assertion in that regard, the underlying facts are nevertheless intertwined and arise out of the same speech, all of which have to do with the value of and

ANDERSON KILL CALIFORNIA L.L.P.
Wells Fargo Plaza
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071

creation of Nano. Even if there were no such relationship between the two sets of statements at issue, there is little reason to separately litigate two types of statements that took place within thirty seconds of the same presentation by Mr. Silver.

Mr. Silver does not anticipate disputing the fact that his statements about the circumstances of Mr. LeMahieu's divorce were incorrect. The evidence will show that when Mr. Silver was talking about the misdeeds in which Mr. LeMahieu and Nano had engaged, Mr. Silver, without malice, simply misspoke and confused within one statement the circumstances of Mr. LeMahieu's divorce and that of another defendant in one of Mr. Silver's other cryptocurrency fraud lawsuits. If there were to be a trial simply on Mr. Silver's statements regarding Mr. LeMahieu's divorce, it would not last long; because Mr. Silver acknowledges that the statements he made about Mr. LeMahieu's divorce were incorrect and actually applied to a separate cryptocurrency defendant/matter Mr. Silver was litigating at that time. It makes no sense to litigate the same speech twice.

It is also important to note that the **only** damages alleged by either Mr. LeMahieu or Nano is the loss in value of the Nano crypto token. Whether that is even a permissible damage in a defamation case will be litigated in due course. However, the related, earlier-filed class action lawsuit asserts that Nano and Mr. LeMahieu (among other members of Nano's core team) are responsible for the loss in value of their token and that internal squabbling amongst members of that Nano team (including Mr. LeMahieu) exposed fundamental and fatal flaws in the token that fomented its diminution. U.S. District Judge Yvonne Gonzalez Rogers -- who is presiding over the related action -- recognized that last month when she denied the Nano parties' motion to dismiss the lawsuit against them and wrote: "Further, it is plausible that Nano Defendants' alleged conduct, if true, could be viewed as morally reprehensible and this type of action could further the goal of

preventing future harm."[2] What is most interesting is that the language cited was carefully chosen by Judge Rogers herself, as the plaintiff in the Second Nano Class Action Lawsuit did not even make an allegation of moral reprehensibility.

## III. Factual and Procedural Background

### A. The First Nano Class Action Lawsuit

In a class action lawsuit commenced in April 2018 and concluded in October 2018, the law firms Silver Miller -- of which Mr. Silver is a Founding Partner -- and The Braunstein Law Firm, PLLC represented the plaintiffs and the putative plaintiff class against cryptocurrency start-up company Nano[3] and certain key members of Nano's core team of developers and executives[4] including, among others, Colin LeMahieu.

The action (the "First Nano Class Action Lawsuit") alleged violations of Sections 12(a)(1) and 15(a) [15 U.S.C. §§ 77l(a)(1), 77o(a)] of the Securities Act of 1933 (the "Securities Act") stemming from the alleged sale of unregistered securities in the form of a cryptocurrency called Nano (f/k/a RaiBlocks) [XRB], which was developed and promoted by the Nano Core Team but never registered with, nor exempted from registration by, any regulatory authority.[5]

As alleged in the First Nano Class Action Lawsuit, the harm flowing to certain XRB investors from the Nano Core Team's acts and omissions from January 1, 2015 to March 31, 2018 arose from, *inter alia*:

---

[2] Second Nano Class Action Lawsuit at DE 20.

[3] Nano f/k/a Raiblocks f/k/a Hieusys, LLC, a Texas company.

[4] Collectively, "the Nano Core Team".

[5] A copy of the First Nano Class Action Lawsuit is attached as Exhibit A to the Declaration of David C. Silver filed with this Court on June 12, 2019 (Doc. 17-2).

ANDERSON KILL CALIFORNIA L.L.P.
Wells Fargo Plaza
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071

ANDERSON KILL CALIFORNIA L.L.P.
Wells Fargo Plaza
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071

- The Nano Core Team's failure to register XRB (or secure exemption from registration) with any securities regulatory authority;
- The Nano Core Team's work in conceiving, developing, promoting, and selling XRB to the public, while withholding for themselves millions if not tens of millions of XRB, most of which are owned by Mr. LeMahieu;
- The Nano Core Team publicly promoting Italian cryptocurrency exchange BitGrail as a safe and reliable place for XRB holders to stake and exchange their XRB, and XRB holders relying on that endorsement in choosing the exchange;
- BitGrail announcing in February 2018 that it had "lost" $170 Million worth of XRB from its exchange; and
- The fact is that the most direct solution to the XRB investors' problems resides squarely within the Nano Core Team's hands, yet the Nano Core Team refused to rewrite the XRB code and restore ownership to the investors. In crypto terms, the Nano Core Team could have created a "rescue fork" to protect investors, but the Nano Core Team refused to implement that strategy because it is not in their own best interests.

### B. The Second Nano Class Action Lawsuit

Within a few months after it had been filed, the First Nano Class Action Lawsuit was settled. Shortly thereafter, on or about January 3, 2019, the Second Nano Class Action Lawsuit was filed in the U.S. District Court for the Northern District of California. The current operative Complaint in the Second Nano Class Action Lawsuit is a First Amended Class Action Complaint that was filed on July 25, 2019.[6] Just as in the First Nano Class Action Lawsuit, securities claims were pleaded along with a number of other common law claims. The Court in that case

[6] A copy of the First Amended Complaint in the Second Nano Lawsuit is attached as Exhibit A to the Declaration of David C. Silver, filed herewith.

ANDERSON KILL CALIFORNIA L.L.P.
Wells Fargo Plaza
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071

entered an order granting in part and denying in part the Defendants' Motion to Dismiss on October 4, 2019.[7] That order (which remains interlocutory, as no final judgment has been entered and no appeal taken) dismissed a number of the plaintiff's causes of action (including securities claims, on limitations grounds) but left in place claims for negligence, fraud and negligent misrepresentation. Specifically, it remains to be determined in the Second Nano Class Action Lawsuit whether the Nano Defendants breached their legal duties of care relating to their management of XRB when they failed to, *inter alia*:

a. Implement idempotence into the XRB Protocol thereby permitting the theft of the Class' XRB by the use of Double Withdrawal Transactions;

b. Disclose material information related to the XRB Protocol and the BitGrail Exchange's operation while discussing information, knowledge, and exercising authority on all things XRB-related at panels, conferences, and online social networks;

c. Permit Defendant Firano to shut down the BitGrail Exchange online despite having actual knowledge, or recklessly disregarding, the ongoing theft of XRB from accountholders on the BitGrail Exchange from July 2017 through January 2018;

d. Disclose to Plaintiff and the Class the fact that the Class' XRB was being stolen through use of Double Withdrawal Transactions from July 2017 through January 2018;

e. Take reasonable measures to ensure that the exchanges upon which XRB was bought, sold, and traded employed, utilized, and followed adequate security measures and protocols;

---

[7] A copy of the Order is attached as Exhibit B is attached as Exhibit B to the Declaration of David C. Silver, filed herewith.

ANDERSON KILL CALIFORNIA L.L.P.
Wells Fargo Plaza
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071

f. Promote secure exchanges that had adequate security measures and protocols for buying, selling, and trading XRB;

g. Refrain from encouraging buying, selling, and trading XRB on exchanges that lacked adequate security;

h. Know or confirm that the material representations and statements regarding BitGrail's safety and security were accurate;

i. Make material representations and statements to Plaintiff and the Class about the lack of safety and security measures and protocols utilized by the exchanges on which XRB was bought, sold and traded;

j. Dissuade the further buying, selling, and trading of XRB on BitGrail after multiple red flags and other issues arose; and

k. Conduct a security audit of the XRB Protocol.

In connection with the fraud claim still pending against the Nano Core Team (including Mr. LeMahieu), the Court denied the motion to dismiss because the "argument ignores plaintiff's allegation that he relied on Nano Defendant's false statement and representations in "staking" or *holding* his XRB on the BitGrail exchange." (Order at 21). **Similarly, in connection with the negligence claim, the Court ruled that "it is plausible that the Nano Defendants' alleged conduct, if true, could be viewed as morally reprehensible[.]"** (Order at 20).

**C. <u>The Presentation</u>**

While the First Nano Class Action Lawsuit was pending, but before the Second Nano Class Action Lawsuit was filed, Mr. Silver had been asked to be a featured speaker at the May 24, 2018 Blockchain Law Summit in Los Angeles, California. At the conference, he discussed before an audience of approximately thirty (30) people numerous cryptocurrency lawsuits on which his law firm was working, including the then-pending First Nano Class Action Lawsuit. About a

ANDERSON KILL CALIFORNIA L.L.P.
Wells Fargo Plaza
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071

third of the way into his presentation, Mr. Silver specifically stated: "*What's another lawsuit we are doing? NANO, I forgot about NANO. NANO is one of my favorites.*" Mr. Silver then proceeded to talk about the First Nano Class Action Lawsuit. In the course of his presentation, Mr. Silver also posed some hypothetical questions and presented some factual statements that were an outgrowth of his law firm's PSLRA-required press release and the allegations in the publicly-filed Complaint in the First Nano Class Action Lawsuit.

### D. <u>This Lawsuit</u>

On May 15, 2019 -- nearly nine months after settling the First Nano Class Action Lawsuit, and five-and-a-half months after the Second Nano Class Action Lawsuit was filed -- Nano and Mr. LeMahieu initiated this lawsuit against Mr. Silver for the statements he made during the conference referenced above. Plaintiffs are suing Mr. Silver for: (1) defamation, (2) trade libel, and (3) intentional interference with a prospective economic advantage. Again, these claims all relate to comments Mr. Silver made at the May 24, 2018 Blockchain Law Summit, and many of the factual merits of these comments are currently being litigated in the Second Nano Class Action Lawsuit.

## IV. <u>Why The Motion Should Be Granted</u>

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *accord Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007). For the sake of judicial economy, such a stay may be granted pending the outcome of other legal proceedings related to the case. *Leyva v. Certified Grocers of Calif., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979). In determining whether to grant a stay, courts

ANDERSON KILL CALIFORNIA L.L.P.
Wells Fargo Plaza
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071

generally consider the following competing interests: (1) the possible damage which may result from the granting of a stay, (2) the hardship or inequity which a party may suffer in being required to go forward, and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (citation omitted); *CMAX, Inc. v. Hall*, 300 F. 2d 265, 268 (9th Cir. 1962).

Courts have the inherent power and discretion to stay civil proceedings "when the interests of justice seem[] to require such action." *Keating v. Office of Thrift Supervision*, 45 F. 3d 322, 324 (9th Cir. 1995); *see Landis v. North American Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). "A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear on the case." *Leyva*, 593 F. 2d at 863.

There is no need to belabor this argument. All of these well-established factors favor a stay. No damage would result from granting the stay because, as noted above, the key substantive issues about the nature of the Nano token and its theft from the Italian cryptocurrency exchange BitGrail are already being litigated in the pending Second Nano Class Action Lawsuit. Conducting discovery in **this** case (which counsel has suggested might involve travelling to Italy and deposing multiple people involved) makes no sense and is plainly duplicative of the efforts being undertaken in the Second Nano Class Action Lawsuit. Parallel litigation also presents the risk of inconsistent adjudications, where factual issues in this case might be resolved differently than in the Second Nano Class Action Lawsuit. The instant lawsuit also presents thorny issues of attorney-client privilege and

ANDERSON KILL CALIFORNIA L.L.P.
Wells Fargo Plaza
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071

work product, as Plaintiffs seem determined to depose Mr. Silver about the factual and legal basis of the claims now being asserted in the pending parallel class action lawsuit. The only way to avoid this complication is to stay this case and allow the issues in the Second Nano Class Action Lawsuit to be resolved first.

Plaintiffs in **this** case may also correctly note that the securities law allegations at issue in the Second Nano Class Action Lawsuit have been dismissed. That is of no moment to this motion. First, the Order denying the Motion to Dismiss in that case is interlocutory, not final, and could be reversed and vacated by the Ninth Circuit on appeal after a decision that resolves the entire case. Thus, the securities issues are not finally resolved. Second, and just as importantly, critical to the Second Nano Class Action Lawsuit are issues related to the creation of the Nano token, which go to the type of token it is – the type of asset it is, whether or not it is a "pure cryptocurrency" (a phrase Plaintiffs like to use), an altcoin, or something else, and the obligations that Plaintiffs have to people who acquired it. In the same way, questions of fact related to the loss and theft of the Nano token are directly at issue in and will be litigated in the Second Nano Class Action Lawsuit. Plaintiffs (in **this** lawsuit) inexplicably want to try those issues first here. One can appreciate the anger that Plaintiffs in this case might feel about having been sued by Mr. Silver, not once but twice. However, it does not make sense to litigate in this lawsuit the factual merits of allegations made by the class action plaintiffs in the Second Nano Class Action Lawsuit. That is what will happen without a stay. And there is already a pending lawsuit in which Plaintiffs are class action defendants where those issues can be resolved.

Finally, it is true that Mr. Silver's comments about Mr. LeMahieu's divorce were inaccurate. Mr. Silver acknowledges his statements were incorrect and more accurately describe another defendant in an unrelated cryptocurrency fraud lawsuit. Mr. Silver has attempted to apologize for them (through counsel), made

an offer of judgment reflecting this, and publicly reiterates that apology here. Respectfully, while he is still entitled to a trial on the legal merits (or lack thereof) of Plaintiffs' claims and a determination of whether Plaintiffs can prove any damages for the wrongs they have alleged, a trial on this matter can wait without any great prejudice to any party involved.

## V. Conclusion

For the reasons set forth herein, Defendant David C. Silver respectfully requests that this cause be stayed and placed on the Court's inactive docket until such time as there is a final judgment (and all appeals have been exhausted) in the Second Nano Class Action Lawsuit.

Dated: November 26, 2019

Respectfully Submitted,

By: /s/ Bridget B. Hirsch
Bridget B. Hirsch, Esq. (State Bar No. 257015)
E-Mail: bhirsch@andersonkill.com
**ANDERSON KILL CALIFORNIA L.L.P.**
355 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 943-1444

Stephen D. Palley, Esq. (*pro hac vice*)
*spalley@andersonkill.com*
**ANDERSON KILL L.L.P.**
1717 Pennsylvania Ave., NW, Suite 200
Washington, DC 20006
Telephone: (202) 416-6500
Facsimile: (202) 416-6555

ANDERSON KILL CALIFORNIA L.L.P.
Wells Fargo Plaza
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071

Certificate of Service

I certify that a copy of the above and forgoing was served on November 26, 2019 by means of the Court's ECF service to **RYAN M. LAPINE, ESQ. and JOSHUA H. HERR, ESQ.**, DIAMOND MCCARTHY LLP, *Counsel for Plaintiffs*, 333 S. Hope St., 18th Floor, Los Angeles, CA 90071; E-mail:ryan.lapine@diamondmccarthy.com; joshua.herr@diamondmccarthy.com.

By: /s/ Stephen D. Palley