DIAMOND McCARTHY LLP
Ryan M. Lapine (SBN 238216)
ryan.lapine@diamondmccarthy.com
Joshua H. Herr (SBN 301775)
joshua.herr@diamondmccarthy.com
333 South Hope Street, Suite 1800
Los Angeles, California 90071
Telephone: (424) 278-2335
Facsimile: (424) 278-2339

Attorneys for Plaintiffs, NANO FOUNDATION, LTD. and COLIN LeMAHIEU

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NANO FOUNDATION, LTD., a New York non-profit corporation; and COLIN LeMAHIEU, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>DAVID C. SILVER, an individual,<br><br>Defendant. | Case No. 2:19-cv-04237-MRW<br><br>**PLAINTIFFS NANO FOUNDATION, LTD. AND COLIN LeMAHIEU'S OPPOSITION TO DEFENDANT'S MOTION TO STAY**<br><br>Date: January 8, 2020<br>Time: 9:30 a.m.<br>Location: Courtroom 550<br><br>Action Filed: May 15, 2019 |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................... 1

II. STATEMENT OF RELEVANT FACTS ....................................................... 2

III. THE NINTH CIRCUIT EXPRESSLY PROHIBITS ISSUING THE TYPE OF STAY MR. SILVER REQUESTS GIVEN THE ISSUES AT BAR ............................................................................................. 5

    A. There is No Prospect of the *Fabian* Action Narrowing the Factual and Legal Issues to Justify the Issuance of a Stay .................. 6

        1. The Factual and Legal Issues at Bar in This Action Are Not Being Litigated in the *Fabian* Action .......................... 6

        2. Even Without The Rule 15(a) and 41 Motions, The *Fabian* Case Cannot Narrow the Legal and Factual Issues to Justify the Issuance of a Stay ........................................ 6

    B. Given the Specific Stay That Mr. Silver Requests, A Balancing of the Hardships Under Controlling Ninth Circuit Law Calls for His Request to Be Denied ................................ 9

IV. CONCLUSION ............................................................................................ 11

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Agritech, Inc. v. Resh, et al,* 138 S.Ct. 1800 (2018)...................................................3

*American Pipe & Construction v. Utah,* 414 U.S. 538 (1974) ..................................7

*California Trout, Inc. v. United States Bureau of Reclamation,* 115 F.Supp.3d 1102 (C.D. Cal. 2015)..........................................................................................................5

*Colorado River Water Conservation District v. United States,* 424 U.S. 800 (1976)...............................................................................................................................5

*Ethridge v. Harbor House Rest.,* 861 F.2d 1389 (9th Cir. 1988). ...............................4

*Harlow v. Midland Credit Mgmt., Inc.,* No. CV 07-5045ABCSHX, 2007 WL 3165669, at *1 (C.D. Cal. Sept. 5, 2007) ................................................................11

*Hines v. D'Artois,* 531 F.2d 726 (5th Cir. 1976)..................................................9, 10

*Intel Corp. v. Advanced Micro Devices, Inc.,* 12 F.3d 908 (9th Cir. 1993).................5

*Itel Corp. v. M/S Victoria U (Ex Pishtaz Iran),* 710 F.2d 199 (5th Cir. 1983)......................................................................................................8, 9, 10

*Leyva v. Certified Grocers of Cal., Ltd.,* 593 F.2d 857 (9th Cir. 1979) .....................5

*Lockyer v. Mirant Corp.,* 398 F.3d 1098 (9th Cir. 2005) ........................................5, 7

*Planned Parenthood Foundation of America, Inc. v. Center for Medical Progress,* 890 F.3d 828, *amended* 897 F.3d 1224 (9th Cir. 2018) ...........................................2

*Tucker v. Pac. Bell Mobile Servs.,* 208 Cal.App.4th 201 (2012).............................3, 6

*Yong v. INS,* 208 F.3d 1116 (9th Cir. 2000).......................................................5, 9, 10

**Other Authorities**

Securities Act of 1933 ................................................................................................3

**Rules**

Rule 15(a) .................................................................................................. 2, 4, 6, 8

Rule 41 .............................................................................................................. 6, 8

Rule 41(a) ............................................................................................................. 4

Rule 41(a)(2) ........................................................................................................ 2

> *Uhhh, he got divorced from his wife last year.  He decided that he was ready.  He deserved better because he was now rich.  She took all the money.  And then, the financial affidavit, she, they, argued about how much the Nano was worth and what the Nano was.  But I will tell you this: he said it had value and he said that he believed it was going up and he believed it was a security cause [sic] he put it on the security side of the affidavit.*
>
> --David Silver

## I.  INTRODUCTION

This is an open and shut case.  David Silver, in a keynote address at the Blockchain Law Summit, told a fantastic series of lies about Colin LeMahieu's divorce before an audience of his industry peers.  As Mr. LeMahieu expressly alleged in his presently operative complaint in Paragraphs 67, 84, 99, and 101, Silver's false statements damaged him by humiliating him, causing him emotional distress, chilling his business relationships, and tarnishing his good name. (Dkt. 1.)  Mr. Silver's attempt to mislead the Court in his Motion by arguing "[i]t is important to note that the **only** damages alleged by either Mr. LeMahieu or Nano is the loss in value of the Nano" does not withstand scrutiny.  (Dkt. 67-2 3:16-17.)

Silver now admits his statements were untrue. (Dkt. 67-2 3:5-6.)  He takes the remarkable position that he "confused" "the circumstances of Mr. LeMahieu's divorce and that of another defendant in one of Mr. LeMahieu's other cryptocurrency fraud lawsuits" (*Id.* at 3: 9-11) when he said: "*He deserved better because he was now rich.  She took all the money.  And then, the financial affidavit, she, they, argued about how much the Nano was worth and what the Nano was.*"  That defense has as much factual veracity as Mr. Silver's false statements at issue.  Nonetheless, even Mr. Silver concedes a trial on this "would not last long" as he concedes his statements were incorrect. (*Id.* at 3: 12-13).

Perhaps that is why this is Mr. Silver's *fourth* attempt to stall or derail this litigation and delay the inevitable.  He filed a frivolous motion to dismiss, arguing that

a release which, on its face, did not apply to him released the claims in this matter. (Dkt. 15.) He filed a frivolous motion to strike under the anti-SLAPP statute that failed to cite, much less address or comply with the Ninth Circuit's recent holding in *Planned Parenthood Foundation of America, Inc. v. Center for Medical Progress*, 890 F.3d 828, *amended* 897 F.3d 1224 (9th Cir. 2018) that details how such motions must proceed in Federal Court. (Dkt. 17.) He filed a frivolous Rule 11 Motion. (Dkt. 18.) None of those motions were successful. (Dkt. 45.)

And, now, having failed thrice before to avoid litigation on the merits of Mr. LeMahieu's claims, Mr. Silver requests not just a stay of this action, but a stay until all appeals in an ongoing and unrelated Federal action are exhausted. As the Court is well-aware, that delay could last years. Make no mistake, by seeking this extraordinary relief, Mr. Silver really seeks the opportunity for a case in which he concedes liability to die on the vine. The Court should decline to abet such injustice.

Out of an abundance of caution, and expressly to ensure a timely day in Court in light of the pending Motion to Stay, Mr. LeMahieu concomitantly moves the Court under Rule 15(a) to amend his complaint to remove all claims except those related to Mr. Silver's statements regarding his marital dissolution and the size of his Nano holdings. Similarly, and for the same reason to ensure Mr. LeMahieu a timely day in Court in light of the pending Motion to Stay, Plaintiff Nano Foundation Ltd. ("Nano Foundation") concomitantly moves the Court under Rule 41(a)(2) to dismiss its affirmative claims. This renders Mr. Silver's motion moot. There simply is no relationship between Mr. Silver's statements remaining at issue and the pending Federal litigation to warrant a stay of this action. Mr. Silver's motion should be denied.

## II. STATEMENT OF RELEVANT FACTS

The law firm Levi & Korsinsky LLP filed United States District Court Case No. 19-cv-54-YGR on behalf of an individual named James Fabian (the *"Fabian Action.")* (Dkt 67-3.) In 2018, the United States Supreme Court held in *China*

*Agritech, Inc. v. Resh, et al,* 138 S.Ct. 1800 (2018) that upon the denial of class certification, a putative class member, in lieu of promptly filing an individual action, may not commence a class action anew beyond the time allowed by the statute of limitations. Accordingly, the Court in the *Fabian* Action dismissed each of the Federal securities claims asserted therein on statute of limitations grounds with prejudice. (Dkt. 67-3.) Absent the United States Supreme Court immediately reversing itself on *China Agritech, Inc.* or Congress retroactively amending the 1933 Act after a close to a century to expand its limitations period, all Federal securities claims regarding the alleged Bit Grail failure, which took place in early 2018, have expired.

The *Fabian* Court further dismissed with prejudice the breach of implied contract claim, the breach of fiduciary duty claim, the aiding and abetting breach of fiduciary duty claim, the constructive fraud claim, and the unjust enrichment claim asserted therein. (Dkt. 67-3.) What remains in that action are a negligence claim, a fraud claim, and a negligent misrepresentation claim. (*Id.*) It is unlikely under California law that the surviving common law fraud and negligent misrepresentations claims can be certified on a class basis. See, *Tucker v. Pac. Bell Mobile Servs.*, 208 Cal.App.4th 201, 228 (2012) ("[I]f the issue of materiality or reliance is a matter that would vary from consumer to consumer, the issue is not subject to common proof, and the action is properly not certified as a class action").

In the operative complaint, plaintiffs assert that Mr. Silver made four (4) defamatory statements at an industry conference to an audience of Mr. LeMahieu's colleagues and peers. (Dkt. 1 at ¶¶ 42, 45, 53, 58.) Concomitant with filing this opposition, Mr. LeMahieu moves the Court pursuant to Rule 15(a) to amend his complaint to seek redress only on Defamatory Statement #4. The Ninth Circuit recognizes amendment under Rule 15(a) should be permitted "[w]here a plaintiff desires to eliminate an issue, or one or more but less than all of several claims, but without dismissing as to any of the defendants." *Ethridge v. Harbor House Rest.*, 861

F.2d 1389, 1392 (9th Cir. 1988). Similarly, Plaintiff Nano Foundation, to avoid any chance for a stay and to allow prompt resolution of this matter, concomitantly moves to dismiss its claims pursuant to Rule 41(a) as they are not premised on Defamatory Statement #4.

In Defamatory Statement #4, which remains at issue, Silver stated:

> "Uhhhhh Nano, the CEO and the head guy at Nano who holds 90% of the Nano at like $15 it was worth $1.4 billion, I think it's down to like $4, so I think it's only worth like $400,000,000 now. Uhhh, he got divorced from his wife last year. He decided that he was ready. He deserved better because he was now rich. She took all the money. And then, the financial affidavit, she, they, argued about how much the Nano was worth and what the Nano was. But I will tell you this: he said it had value and he said that he believed it was going up and he believed it was a security cause [sic] he put it on his security side of the affidavit."

(Dkt. 1 at ¶ 58.)

Silver now concedes these statements were untrue and, accordingly, a trial on this will not last long. (Dkt. 67-2 3:5-6, 12-13.) His new defense to these false statements is that they were not malicious as he was mistakenly speaking about another cryptocurrency defendant's divorce. (*Id.* at 3: 9-11) The Court will learn in this litigation that like the statements at issue themselves, Mr. Silver's latest defense is also not truthful and lacks factual merit. That Mr. Silver is a licensed attorney appearing presently *pro hac vice* before a Federal Court in this state renders his estranged relationship with the truth and his lack of candor particularly troubling.

Mr. Silver made Defamatory Statement #4 in May of 2018. (Dkt. 47 at ¶14.) The *Fabian* Action was filed the following year, in 2019. (Dkt 67-3.) None of the surviving claims in the *Fabian* Action at all concern Mr. LeMahieu's divorce, the reasons for that divorce, the scope of LeMahieu's Nano holdings, or any statements made in his divorce filings. (*Id, passim.*) Indeed, the same is true of the claims in that

action that have been dismissed with prejudice. (*Id.*) Accordingly, the two actions share no common questions of fact and no common questions of law. Similarly, the suit filed by Alex Brola that settled last year bore no relationship factually or legally to Mr. LeMahieu's divorce, the reasons for that divorce, the scope of LeMahieu's Nano holdings, or any statements made in his divorce filings. (See, Dkt. 67-2 at Section III.A.)

### III. THE NINTH CIRCUIT EXPRESSLY PROHIBITS ISSUING THE TYPE OF STAY MR. SILVER REQUESTS GIVEN THE ISSUES AT BAR

In denying a request for a stay, citing *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979), the Honorable Fernando M. Olguin noted "a stay may be appropriate 'pending resolution of independent proceedings which bear upon the case.'" *California Trout, Inc. v. United States Bureau of Reclamation*, 115 F.Supp.3d 1102, 1117 (C.D. Cal. 2015). However, when, like here, that is not the case, the Ninth Circuit calls for trial courts to deny such requests for a stay.

The Ninth Circuit calls for stays to be vacated where "neither the balance of hardships between the parties, nor the prospect of narrowing the factual and legal issues in the other proceeding, justifies a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005). In so acting, the Ninth Circuit noted it "review[s] a district court's stay order for abuse of discretion, but this standard is 'somewhat less deferential' than the abuse of discretion standard used in other contexts." *Id.* at 1105; *see also*, *Yong v. INS,* 208 F.3d 1116, 1119 (9th Cir. 2000) (vacating a five month stay as improper); *Intel Corp. v. Advanced Micro Devices, Inc.,* 12 F.3d 908, 912 (9th Cir. 1993) (vacating a stay order under *Colorado River Water Conservation District v. United States,* 424 U.S. 800 (1976)).

### A. There is No Prospect of the *Fabian* Action Narrowing the Factual and Legal Issues to Justify the Issuance of a Stay

#### 1. The Factual and Legal Issues at Bar in This Action Are Not Being Litigated in the *Fabian* Action

This action will proceed on narrow legal grounds given the concomitantly filed Rule 15(a) and 41 motions. This case asks simply whether Defamatory Statement #4 regarding Mr. LeMahieu's divorce and his personal Nano holdings was defamatory, whether it damaged him, and whether Mr. Silver acted maliciously to justify a punitive damages award.

By contrast, Mr. Silver is not a party to the *Fabian* Action. That case asks whether Nano Foundation negligently referred individuals to utilize BitGrail, an Italian exchange, whether it made certain negligent misrepresentations regarding BitGrail, whether those representations were fraudulent, and whether Fabian, himself, detrimentally relied on those statements. Only the surviving negligence claim is ripe, absent extraordinary circumstance, to be certified on a class basis given the reliance element at issue in the remaining claims. *Tucker, supra*, 208 Cal.App.4th at 228. As such, that case primarily probes into an individual investor's relationship with Nano. Even were class certification to result notwithstanding clear authority to the contrary, those class issues would still not involve Mr. LeMahieu's divorce and personal Nano holdings or Mr. Silver's false and inflammatory statements regarding them. The litigation of that matter will not bear on the litigation of this case, nor can it possibly narrow the factual or legal issues herein to justify the issuance of a stay.

#### 2. Even Without The Rule 15(a) and 41 Motions, The *Fabian* Case Cannot Narrow the Legal and Factual Issues to Justify the Issuance of a Stay

Mr. Silver's motion is threadbare. He does not even reference Defamatory Statements #1, #2, and #3, much less explain how the limited scope of the surviving negligence, fraud, and negligent misrepresentation in the *Fabian* Action could narrow

the legal issues or the factual issues regarding those statements at bar herein. He simply argues that they touch upon the same subject matters which would somehow put Silver in a bind. Under *Lockyer*, that is not nearly enough to issue a stay.

As a preliminary matter, Mr. Silver presents a false hypothetical to the Court to argue that the dismissed securities and related claims in the *Fabian* Action should bear upon this analysis. He contends "the Order denying the Motion to Dismiss in that case is interlocutory, not final, and could be reversed and vacated by the Ninth Circuit on appeal after a decision that resolves the entire case. Thus, the securities issues are not finally resolved." (Dkt. 67-2, 10: 8-11.) That is simply not true – the Ninth Circuit can do no such thing.

The *Fabian* Court dismissed those claims because the statute of limitations expired prior to them being filed. The sole issue preserved for appeal was whether the dismissal of the *Brola* Action tolled the statute of limitations under the *American Pipe* Rule and allowed the filing of the subsequent putative class action to relate back to the filing of *Brola* to avoid the statute of limitations. (Dkt. 67-3 at, *inter alia*, Section III.A.)

The United States Supreme Court, in a 9-0 decision, addressed that precise issue in its most recent term. In *China Agritech, Inc., supra,* 138 S.Ct at 1800 it held directly that the *American Pipe* Rule does not apply to subsequently filed putative class actions and, instead, the limitations period relates to the filing date of that action. As such, contrary to Mr. Silver's contention, the Ninth Circuit may not reverse and vacate that holding because United States Supreme Court precedent directly on point prohibits that. Accordingly, absent the United States Supreme Court granting *cert.* to directly reverse its unanimous holding just a year plus later, which would be as extraordinary and likely as the moon suddenly turning into a glazed donut with incandescent jade sprinkles that vibrate to the beat of Rebbie Jackson's hit song *Centipede,* the securities issues in *Fabian* are finally and fully resolved.

As such, absent the Rule 15(a) and 41 Motions, the Court must assess whether

the surviving negligence, fraud, and negligent misrepresentation claims surviving in the *Fabian* Action could narrow the legal and factual issues at bar regarding Statements #1, #2, and #3 to justify the issuance of a stay herein. They simply cannot.

Defamatory Statement #1 regards Mr. Silver's false statement that Nano (1) could not get recognition on Coinbase, Kraken, Poloniex, Bitfinex, Gemini (2) because "they were not a real coin". The negligence, fraud, and negligent misrepresentations claims at bar in *Fabian* touch upon many issues, but none of them involve the nature of the Nano or its listing on that series of domestic exchanges.

Defamatory Statement #2 regards Mr. Silver's false statement that Mr. LeMahieu participated in an exit scam, a specific type of Federal crime. The surviving *Fabian* negligence, fraud, and negligent misrepresentation claims do not assert, much less relate to whether Mr. LeMahieu participated in an exit scam.

Defamatory Statement #3 regards whether subsequent to the Bit Grail incident, Mr. LeMahieu and Nano Foundation refused to assist in investigations and remediation efforts as Mr. Silver falsely claimed. The surviving *Fabian* negligence, fraud, and negligent misrepresentation claims do not address these post-incident activities.

As such, while the *Fabian* Action may touch upon a similar set of related actors as this matter and the Bit Grail exchange, it cannot, because the surviving claims at bar address entirely different acts and allegations, narrow the legal and factual issues herein to justify the issuance of a stay under controlling Ninth Circuit precedent. That *Fabian* court on the surviving negligence, fraud, and negligent misrepresentation claims certainly does not have the power render an effective judgment on issues that are necessary to the disposition of this action, which itself compels that Mr. Silver's requested stay be denied. *Itel Corp. v. M/S Victoria U (Ex Pishtaz Iran),* 710 F.2d 199, 203 (5th Cir. 1983) ("A stay pending adjudication in another tribunal should not be granted unless that tribunal has the power to render an effective judgment on issues that are necessary to the disposition of the stayed action").

Indeed, that Mr. Silver, an attorney himself, and his counsel from an esteemed national law firm failed to even detail, much less analyze Defamatory Statements #1, #2, and #3 to determine whether a stay could issue under controlling Ninth Circuit precedent given the claims remaining in *Fabian* is likely not the result of sloppy or negligent lawyering, but is instead a deliberate smoke and mirrors presentation to avoid detailed analysis of the specific nature of the claims at issue in the two cases. That should not be rewarded.

### B. Given the Specific Stay That Mr. Silver Requests, A Balancing of the Hardships Under Controlling Ninth Circuit Law Calls for His Request to Be Denied

Mr. Silver requests that "this cause [sic] be stayed and placed on the Court's inactive docket until such time as there is a final judgment (and all appeals have been exhausted) in the Second Nano Class Action Lawsuit." (Dkt. 67-2 11:9-10.) As the Court is aware, given the Ninth Circuit's remarkably large geographic and population scope, that is likely to take years, and is indefinite in any light.

Indefinite or lengthy stay requests like the one Mr. Silver seeks are strongly disfavored in the Ninth Circuit and require a heightened justification. In the Ninth Circuit, trial courts are to "balance the length of the stay against the strength of the justification given for it". *Yong, supra*, 208 F.3d at 1119. "If a stay is especially long or its term is indefinite, we require a greater showing to justify it." *Id.; see also Itel Corp, supra,* 710 F.2d at 202–03 (5th Cir. 1983) ("We respect the trial court's inherent power 'to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel and for litigants and we give deference to the district court's judgment that the stay will avoid hardship and inequity, but we 'cannot abdicate our [role] ... to prevent the ossification of rights which attends inordinate delay.' ") (citations and footnote omitted, alteration in original); *Hines v. D'Artois*, 531 F.2d 726, 737 (5th Cir. 1976) ("If plaintiffs were not to be permitted forthwith to tell their story to the court, the tale might be stale indeed by the time it reached

judicial ears").

The Ninth Circuit cited and relied upon *Itel Corp.* in *Yong*. *Itel Corp.* held that:

> because what relieves unfairness for one litigant may impose hardship on the other, inevitably both the district and the appellate courts must consider which side will bear the greater and the less remediable burden from delay.

*Itel Corp., supra*, 710 F.2d at 203.

Here, as the *Yong, Hines,* and *Itel Corp.* courts recognized, Mr. LeMahieu will suffer considerable hardship if the multi-year, indefinite stay that Mr. Silver requests is issued. That procedural hardship born of inordinate, indefinite delay calls for Mr. Silver's request to be denied. Full stop.

However, this hardship is not merely procedural as the outrageous statements that Mr. Silver made to the vast majority of Mr. LeMahieu's professional peers have caused him considerable emotional distress and have sullied his good name. He requires his day in court to rehabilitate his reputation and to move beyond this issues that continues to harm his mental well-being. Requiring him to wait years to resolve this matter would further harm Mr. LeMahieu.

By contrast, the only hardship Mr. Silver faces if a stay is not granted is not enjoying the fruits of Mr. LeMahieu's claims ossifying with inordinate delay, a consideration that *Itel Corp.* and *Hines* held favors *denying* a requested lengthy, indefinite stay. Mr. Silver has not presented evidence of any personal hardship beyond defending an action *where he has admitted liability in his moving papers* to justify issuance of the stay he requests. Certainly, the adjudication of the claims at issue herein do not impact his role as counsel in the *Fabian* matter as they involve factual and legal issues wholly distinct from the negligence, fraud and negligent misrepresentation claims that survive in *Fabian*. He cannot make outlandish and false statements about Mr. LeMahieu's family, wealth and marriage to a room full of his peers and then hide behind an action wholly unrelated to those issues to avoid being called into Court for his misconduct as he now requests.

This is indeed the fourth time Mr. Silver has come before this Court seeking to avoid facing the claims brought by Mr. LeMahieu. This has run up the costs of this litigation quite considerably and wasted judicial resources needlessly. This has been done while Mr. Silver makes insultingly low ball offers of judgment, evidently hoping that if he wastes enough money through frivolous and costly boondoggles, Mr. LeMahieu will walk away for pennies and an "I'm sorry". *See, Harlow v. Midland Credit Mgmt., Inc.,* No. CV 07-5045ABCSHX, 2007 WL 3165669, at *1 (C.D. Cal. Sept. 5, 2007) ("Defendant then low-balled Plaintiff with a settlement offer far below the small claims judgment, in the apparent hope that Plaintiff, a pro se litigant, would go away. Plaintiff did not."). Enough. The fourth time should not be the charm. What this matter requires is not endless law and motion escapades from Mr. Silver or endless delay as he now requests, but a trial. Mr. Silver admits in his moving papers it "will not last long". There does not exist legal justification for the relief that Mr. Silver seeks, the Ninth Circuit prohibits it on our facts and law, particularly considering that Mr. Silver wants an endless, multi-year delay, and it would harm Mr. LeMahieu. The Court should deny Mr. Silver's motion and allow this case to proceed to a timely resolution at the trial currently scheduled.

## IV. CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that the Court deny Mr. Silver's Motion to Stay.

DATED: December 18, 2019                DIAMOND McCARTHY LLP

                                        By: _____/s/ Ryan M. Lapine_____
                                        Ryan M. Lapine
                                        Attorneys for Plaintiffs, NANO
                                        FOUNDATION, LTD. and
                                        COLIN LeMAHIEU

# CERTIFICATE OF SERVICE

I certify that a copy of the above and forgoing was served on December 18, 2019 by means of the Court's ECF service to BRIDGET B. HIRSCH, ESQ., ANDERSON CALIFORNIA KILL L.L.P., 355 South Grand Avenue, Los Angeles, CA 90071; STEPHEN D. PALLEY, ESQ., ANDERSON KILL L.L.P., 1717 Pennsylvania Ave., NW, Suite 200, Washington, DC 20006; Email: bhirsch@andersonkill.com; spalley@andersonkill.com.

By: _____/s/ Ryan M. Lapine_____

943281v2