DIAMOND McCARTHY LLP
Ryan M. Lapine (SBN 238216)
*ryan.lapine@diamondmccarthy.com*
Joshua H. Herr (SBN 301775)
*joshua.herr@diamondmccarthy.com*
333 South Hope Street, Suite 1800
Los Angeles, California 90071
Telephone:  (424) 278-2335
Facsimile:   (424) 278-2339

Attorneys for Plaintiff, COLIN LeMAHIEU

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NANO FOUNDATION, LTD., a New York non-profit corporation; and COLIN LeMAHIEU, an individual,<br><br>        Plaintiffs,<br><br>    vs.<br><br>DAVID C. SILVER, an individual,<br><br>        Defendant. | Case No. 2:19-cv-04237-MRW<br><br>**[PROPOSED] FIRST AMENDED COMPLAINT FOR:**<br><br>**(1)    DEFAMATION PER SE;**<br>**(2)    DEFAMATION PER QUOD;**<br>**(3)    INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Action Filed:       May 15, 2019<br><br>Assigned For All Purposes To The Hon. Michael R. Wilner |

Plaintiff Colin LeMahieu complains and alleges as follows:

1.      This lawsuit results from statements Defendant David C. Silver made during a panel speech at any industry convention, the Blockchain Law Summit, in Los Angeles, California on May 24, 2018, statements now published for public access on YouTube.

2.      Opening his remarks by raving that "there is a ton of fraud in the space right now," Mr. Silver made inflammatory, false statements about Plaintiff Colin LeMahieu to an audience of LeMahieu's industry colleagues and peers.  Among those statements, Mr. Silver falsely stated that Mr. LeMahieu committed crimes and he made a series of false statements regarding Mr. LeMahieu's marital divorce.  Mr. Silver's false statements have gravely damaged Mr. LeMahieu, have caused Mr. LeMahieu shame and embarrassment, and have harmed Mr. LeMahieu's reputation within his industry and among his peers.

## THE PARTIES

3.      Mr. LeMahieu is the founder and chief executive of Nano Foundation, a non-profit corporation organized under the laws of and in good standing with the State of New York.  He is a permanent resident and citizen of Texas, though at present he lives in Europe.

4.      Mr. LeMahieu is a private citizen and not in any way a public figure.

5.      Mr. Silver is an individual who, on information and belief, resides in or around Broward County, Florida and is a citizen of Florida.

## JURISDICTION

6.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332.  The matter in controversy exceeds $75,000, exclusive of costs. Mr. LeMahieu is a resident of Texas, and Mr. Silver, on information and belief, is a resident of Florida.

DIAMOND McCARTHY LLP

Case No. 2:19-CV-04237-MRW                                    [PROPOSED] FIRST AMENDED COMPLAINT

7.      This Court has personal jurisdiction over Mr. Silver.  He travelled to this forum and made the defamatory statements at issue in this matter in Los Angeles, California.

## VENUE

8.      Venue in the United States District Court for the Central District of California is proper pursuant to 28 USC § 1391(b)(2).  The events giving rise to the claim – Mr. Silver's false and defamatory statements – took place in Los Angeles, California.

9.      This is the most convenient forum in which to adjudicate this matter. The statements at issue were witnessed by a room full of people in Los Angeles, California.  While undoubtedly some of those witnesses may have travelled to attend this industry conference, on information and belief, the largest constellation of witnesses, including the event producers, reside in or near this district.

## THE BLOCKCHAIN LAW SUMMIT

### The Blockchain Summit Gathered The Major Players in the Cryptocurrency Space in Los Angeles

10.     The Blockchain Law Summit 2018 (the "Blockchain Summit") took place on May 24, 2018 in Los Angeles, California.  Its stated intent was "connecting leading blockchain legal experts with the most promising blockchain startups and investors."  Given that at present blockchains are overwhelmingly utilized in the cryptocurrency industry, the Blockchain Summit gathered cryptocurrency startups, investors, collectors, scholars, and journalists for a day of presentations and networking.

### Nano and Colin LeMahieu

11.     Mr. LeMahieu created a next-generation cryptocurrency called RaiBlocks.  It allows for nearly instantaneous transactions and carries with it no fees. It utilizes block-lattice technology to decentralize processing without sacrificing

[PROPOSED] FIRST AMENDED COMPLAINT

DIAMOND McCARTHY LLP

1    security. (In layman's terms, at present, it is the Cadillac of cryptocurrency.) On

2    January 31, 2018, the periodical Medium declared that it "is objectively the best pure

3    cryptocurrency". It wrote "[o]f the pure cryptocurrencies (coins like Bitcoin, Bitcoin

4    Cash and Litecoin that operate solely as currencies) it has no equal."

5         12.    In January of 2018, the name RaiBlocks was changed to Nano. Within

6    the blockchain and crytocurrency industries and communities, Nano is known to refer

7    to both the crytocurrency, itself, and to Nano Foundation and its subsidiary. For

8    purposes of simplicity, Nano is used in this complaint to refer to the cryptocurrency

9    currently known as Nano, formerly known as RaiBlocks.

10        13.    Nano is now traded and continues to be traded on dozens of exchanges.

11   Additional new exchanges, included ones dedicated solely to Nano, have begun to

12   appear given the coin's sterling reputation.

13

14   **DEFENDANT DAVID C. SILVER MAKES A SERIES OF DAMAGING**

15   **FALSE STATEMENTS ABOUT MR. LEMAHIEU IN A PANEL SPEECH AT**

16   **THE BLOCKCHAIN SUMMIT TO HIS INDUSTRY PEERS**

17        14.    Defendant David C. Silver presented at the Blockchain Summit at 5:25

18   p.m. He gave a twenty-minute speech, followed by a five-minute question and

19   answer session. He was the only presenter at the Blockchain Summit during this time.

20   His presentation was entitled "Cryptocurrency, Blockchain and US Litigation -

21   Yesterday, Today and Tomorrow".

22        15.    In attendance for this presentation were Mr. LeMahieu's industry peers,

23   investors in cryptocurrency, and press who report on the industry.

24        16.    During his presentation, Mr. Silver stated "Uhhhhh Nano, the CEO and

25   the head guy at Nano who holds 90% of the Nano at like $15 it was worth $1.4

26   billion, I think it's down to like $4, so I think it's only worth like $400,000,000 now.

27   Uhhh, he got divorced from his wife last year. He decided that he was ready. He

28   deserved better because he was now rich. She took all the money. And then, the

1   financial affidavit, she, they, argued about how much the Nano was worth and what
2   the Nano was.  But I will tell you this: he said it had value and he said that he believed
3   it was going up and he believed it was a security cause [sic] he put it on his security
4   side of the affidavit."

5        17.    Mr. Silver's statements were not truthful.

6        18.    Mr. LeMahieu does not own 90% of the Nano coins in circulation.  At
7   the time those statements were made, he owned and/or held a small fraction of the
8   Nano coins.  He owns less than 0.4% of the Nano in circulation.

9        19.    Mr. LeMahieu did not divorce his wife because he was rich.  He did not
10  believe that he deserved better because he was rich, as he was not rich.  In fact, at the
11  time of their divorce, Nano lacked any value at all and was not traded on any
12  exchange.

13       20.    The Nano was not discussed in any financial affidavit in their divorce.
14  Mr. Silver's claims to the contrary are false.

15       21.    It was not listed anywhere in any affidavits, much less on the "security
16  side" of the affidavit.

17       22.    Mr. LeMahieu did not say that the Nano had value in his divorce filings.
18  At the time, it did not.

19       23.    Mr. LeMahieu did not say that he believed the Nano was going up in his
20  divorce filings.  At the time of his divorce, he did not believe that, nor did he have any
21  reason to believe that.  It was not even on an exchange, yet.

22       24.    Mr. LeMahieu did not say that it was a security.  It is a cryptocurrency,
23  not an ICO.

24       25.    Mr. Silver's false statements regarding Mr. LeMahieu's divorce to a
25  convention full of his industry peers and colleagues have caused him considerable
26  emotional distress, have greatly damaged his reputation, and have caused him
27  considerable shame.

28

DIAMOND McCARTHY LLP

26.   Further, Mr. Silver's false statement that Mr. LeMahieu horded Nano at a 90% clip caused the value of Nano to drop.  This caused a reduction in the value of Mr. LeMahieu's modest Nano holdings, damaging him.

**FIRST CLAIM**

**Defamation Per Se – By Plaintiff Colin LeMahieu**

**(Against Defendant Silver)**

27.   Plaintiffs re-allege and incorporate paragraphs 1-26 of the Complaint as if fully stated herein.

28.   Mr. LeMahieu is a private citizen.  He is the chief developer and chief executive of Nano Foundation, a widely known fact to people within his industry. The Blockchain Convention was attended by Mr. LeMahieu's industry peers and colleagues.

29.   Mr. Silver made the following statements about Mr. LeMahieu in a panel speech at the Blockchain Convention:

A.   "Uhhhhh Nano, the CEO and the head guy at Nano who holds 90% of the Nano at like $15 it was worth $1.4 billion, I think it's down to like $4, so I think it's only worth like $400,000,000 now.  Uhhh, he got divorced from his wife last year.  He decided that he was ready.  He deserved better because he was now rich. She took all the money.  And then, the financial affidavit, she, they, argued about how much the Nano was worth and what the Nano was.  But I will tell you this: he said it had value and he said that he believed it was going up and he believed it was a security cause [sic] he put it on his security side of the affidavit."

30.   None of Mr. Silver's statements were true.  They were categorically false and highly inflammatory.

31.   Mr. Silver failed to use any care, much less reasonable care to determine the truth or falsity of the statements he made.  Mr. Silver's statements lack a basis in fact and have no evidentiary support.

5

DIAMOND McCARTHY LLP

32.    Mr. Silver's false statements have caused Mr. LeMahieu significant emotional distress, have greatly damaged his reputation, and have caused him considerable shame, damaging him in an amount to be proven at trial.  Further, Mr. Silver's false assertion that Mr. LeMahieu hoarded Nano at a 90% clip caused the value of Nano to fall, damaging Mr. LeMahieu who held a small amount of Nano. These damages, in sum, exceed the $75,000 jurisdictional limits

33.    As these statements were made to a convention full of Mr. LeMahieu's industry peers and colleagues, he has suffered considerable harm to his professional reputation, damaging him in an amount to be proven at trial, but that in any event exceeds jurisdictional limits.

34.    Mr. Silver's statements were malicious and vindictive such that punitive damages should be issued against him.

## SECOND CLAIM

### Defamation Per Quod – By Plaintiff Colin LeMahieu

### (Against Defendant Silver)

35.    Plaintiff re-allege and incorporate paragraphs 1-34 of the Complaint as if fully stated herein.

36.    Mr. LeMahieu is a private citizen.  He is the chief developer and chief executive of Nano Foundation, a widely known fact to people within his industry. The Blockchain Convention was attended by Mr. LeMahieu's industry peers and colleagues.

37.    Mr. Silver made the following statements about Mr. LeMahieu in a panel speech at the Blockchain Convention:

> "Uhhhhh Nano, the CEO and the head guy at Nano who holds
> 90% of the Nano at like $15 it was worth $1.4 billion, I think it's
> down to like $4, so I think it's only worth like $400,000,000 now.
> Uhhh, he got divorced from his wife last year.  He decided that he
> was ready.  He deserved better because he was now rich.  She took

DIAMOND McCARTHY LLP

all the money.  And then, the financial affidavit, she, they, argued about how much the Nano was worth and what the Nano was.  But I will tell you this: he said it had value and he said that he believed it was going up and he believed it was a security cause [sic] he put it on his security side of the affidavit."

38.    None of Mr. Silver's statements were true.

39.    Mr. Silver failed to use any care, much less reasonable care to determine the truth or falsity of the statements he made.  Mr. Silver's statements lack evidentiary support.

40.    These statements, made to an audience of his professional colleagues and peers, harmed Mr. LeMahieu.  They caused him significant emotional distress, have greatly damaged his reputation, and have caused him considerable shame.  His professional reputation has taken an irreparable hit as a result of these statements.   He has been damaged in an amount to be proven at trial, but that in any event exceeds the $75,000 jurisdictional limits.

41.    Moreover, Mr. Silver's allegation that Mr. LeMahieu made false statements in an affidavit filed in court amounts to an accusation that he committed a crime, perjury.

42.    Mr. Silver's entirely fabricated statements regarding Mr. LeMahieu's divorce made to an audience of his professional colleagues and peers caused him considerable pain and embarrassment.   They were an unseemly, gratuitous, and particularly personal attack, that included a *de facto* allegation that Mr. LeMahieu committed perjury.

43.    Mr. Silver's statements were malicious and vindictive such that punitive damages should be issued against him.

## THIRD CLAIM

**Intentional Interference with Prospective Economic Advantage – By Plaintiff**

**Colin LeMahieu**

**(Against Defendant Silver)**

44.     Plaintiffs re-allege and incorporate paragraphs 1-43 of the Complaint as if fully stated herein.

45.     Mr. LeMahieu worked and has for some time worked in the cryptocurrency industry.

46.     Mr. Silver was aware of this relationship, a fact he confirmed in his statements at issue.

47.     As detailed herein, Mr. Silver made false, defamatory, and highly inflammatory remarks regarding Mr. LeMahieu as part of a panel speech to an audience of Mr. LeMahieu's peers at the Blockchain Convention, including inflammatory statements regarding his marital dissolution and that he hoarded 90% of the Nano.

48.     In so doing, Mr. Silver intended to disrupt Mr. LeMahieu's business relationship with his industry peers and knew or reasonably should have known that this outcome would result, which did result.

49.     Mr. LeMahieu was harmed by Mr. Silver's defamatory statements, which directly caused and were intended to cause that harm.  He has lost professional credibility and his good name has been destroyed in his industry by Mr. Silver's intentional acts.

50.     Mr. Silver's actions were malicious, intentional, and vindictive such that punitive damages should issue against him.  He has been damaged in an amount to be proven at trial, but that in any event exceeds the $75,000 jurisdictional limits.

DIAMOND McCARTHY LLP

Case No. 2:19-CV-04237-MRW                                    [PROPOSED] FIRST AMENDED COMPLAINT

1

**PRAYER FOR RELIEF**

2

WHEREFORE, Plaintiff demands judgment as follows:

3

1.      For all actual, compensatory, and consequential damages for an amount

4

to be proven at trial, but which in any event exceeds $100,000.

5

2.      For punitive and exemplary damages.

6

3.      For the costs of suit incurred herein.

7

4.      For such other and further relief that the Court may deem just and proper.

8

9

DATED: _____          RYAN M. LAPINE, ESQ.

10

JOSHUA HERR, ESQ.
DIAMOND MCCARTHY LLP

11

12

By: _____ */s/ Ryan M. Lapine* _____

13

Ryan M. Lapine
Attorneys for Plaintiff COLIN LEMAHIEU

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# DEMAND FOR JURY TRIAL

Plaintiff COLIN LeMAHIEU demands a trial by jury for all claims.

DATED: _____

RYAN M. LAPINE, ESQ.
JOSHUA HERR, ESQ.
DIAMOND MCCARTHY LLP


By: _____ /s/ Ryan M. Lapine _____
Ryan M. Lapine
Attorneys for Plaintiff COLIN LeMAHIEU

944401v1

DIAMOND McCARTHY LLP

Case No. 2:19-CV-04237-MRW                    [PROPOSED] FIRST AMENDED COMPLAINT